Lawrence J. Gornick (SBN 136290)
Debra DeCarli (SBN 237642)
**LEVIN SIMES KAISER & GORNICK LLP**
44 Montgomery Street, 36th Floor
San Francisco, CA 94104
Telephone: (415) 646-7160
Fax: (415) 981-1270
lgornick@lskg-law.com
ddecarli@lskg-law.com


Bruce W. Blakely (SBN 106832)
**FLAXMAN & BLAKELY, AN ASSOCIATION**
591 Redwood Highway, Suite 2275
Mill Valley, CA 94941
Telephone: (415) 381-6650
Fax: (415) 381-4301
bruce@brucewblakely.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER JAY GERBER AND MIRIAM GOLDBERG,<br><br>           Plaintiffs,<br><br>   vs.<br><br>BAYER CORPORATION AND BAYER HEALTHCARE PHARMACEUTICALS, INC.; BMC DIAGNOSTICS, INC.; CALIFORNIA PACIFIC MEDICAL CENTER; GENERAL ELECTRIC COMPANY; GE HEALTHCARE, INC.; GE HEALTHCARE BIO-SCIENCES CORP.; McKESSON CORPORATION; MERRY X-RAY CHEMICAL CORP.; and DOES 1 through 35<br><br>          Defendants. | Case No: 3:07-cv-05918-JSW<br><br><br>**PLAINTIFFS' MOTION FOR REMAND**<br><br>Date:        January 11, 2008<br>Time:      9:00 a.m.<br>Courtroom:  2 |

# TABLE OF CONTENTS

NOTICE ....................................................................................................................................1

RELIEF REQUESTED ...........................................................................................................1

STATEMENT OF ISSUES .....................................................................................................1

RELEVANT FACTS................................................................................................................2

LEGAL ANALYSIS ...............................................................................................................3

   A.  Plaintiffs' Claims Are Not Time-Barred ....................................................................4

   B. Plaintiffs' C LRA Claim Meets All Procedural Prerequisites......................................6

   C. Plaintiffs' Claims Agains t the Distributor Defendants Are Viable California Causes of Action . 8

   D.  Plaintiffs' Claims Against the Imaging Facility Defendants Are Viable California Causes of

       Action ......................................................................................................................9

CONCLUSION ......................................................................................................................11

PLAINTIFFS' MOTION FOR REMAND

# **TABLE OF AUTHORITIES**

**Cases**

*Anderson v. Owens-Corning Fiberglass Corp.*, 53 Cal. 3d 987, 994, 281 Cal. Rptr. 528, 810 P.2d 549

(1991) ........................................................................................................................ 8

*Black v. Merck Company, Inc.*, 2004 U.S. Dist. Lexis 29860, *6 (Case No. 038730 C.D. Cal. 2004) 4,

7, 8

*Bostick v. Flex Equipment Co.*, 147 Cal. App. 4th 80, 88, 54 Cal. Rptr. 3d 28 (2007).......................... 8

*Burgess v. Superior Court*, 2 Cal. 4th 1064, 1077 (1992) ................................................... 10

*Daly v. General Motors Corp.*, 20 Cal. 3d 725, 739, 144 Cal. Rptr. 380, 575 P.2d 1162 (1978) .......... 8

*Edwards v. Superior Court*, 93 Cal App 4th 172, 112 Cal Rptr. 2d 838 (2001, 2nd Dist) ................. 11

*Maher v. Novartis Pharmaceuticals Corp.*, 2007 U.S. Dist. Lexis 58984, *6 (Case No. 07852,

S.D.Cal. 2007) ................................................................................................... 3, 8, 9

*McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987 ................................................. 9

*Plute v. Roadway Package Sys., Inc.* 141 F.Supp.2d 1005, 1008 (N.D. Cal. 2001) ...................... 3, 4, 7

*Ritchey v. Upjohn Drug Co.*, 189 F.3d 1318, 1318 (9th Cir. 1998) ...................................................... 4

*Vandermark v. Ford Motor Co.*, 61 Cal. 2d 256, 262-63, 37 Cal. Rptr. 896, 391 P.2d 168 (1964)) ..... 8

**Statutes**

28 U.S.C. §1447(c) ............................................................................................................. 1

Cal. Civ. Code § 1782(a) ................................................................................................... 7

Cal. Civ. Code § 1783 ........................................................................................................ 4

Cal. Civ. Proc. Code § 340.8 ............................................................................................. 4

Cal. U. Com. Code § 2725 ................................................................................................. 4

PLAINTIFFS' MOTION FOR REMAND

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 11, 2008, at 9:00 a.m., or as soon thereafter as the parties may be heard, at 450 Golden Gate Avenue, San Francisco, California, in Courtroom 2, pursuant to 28 U.S.C. §1447(c), plaintiffs will and hereby do move this Court for remand of the action to San Francisco Superior Court.

## RELIEF REQUESTED

Plaintiffs seek a remand of this action to San Francisco Superior Court pursuant to 28 U.S.C. § 1447 (c). Bayer and GE ("Removing Defendants") removed on the basis of diversity but Plaintiffs, who are each California residents, alleged causes of action against California residents McKesson Corporation and Merry X-Ray Chemical Corporation for strict liability failure to warn, negligence, and violations of the California Consumers Legal Remedies Act ("CLRA"). Plaintiffs also alleged causes of action against California residents California Pacific Medical Center and BMC Diagnostics, Inc. for negligence, breach of express warranty, breach of implied warranty, and violations of the CLRA. The four California resident defendants are legitimate defendants. Therefore, diversity jurisdiction does not exist and this case should be remanded.

## STATEMENT OF ISSUES

This Court must determine whether the Removing Defendants have established that the in-state defendants, McKesson Corporation, Merry X-Ray Chemical Corporation, California Pacific Medical Center and BMC Diagnostics, Inc., are fraudulently-joined defendants so that their California residencies should be ignored for purposes of determining diversity jurisdiction.

Removing Defendants bear the heavy burden of proving that Plaintiffs have no possibility of recovery on any basis against any of the four California defendants. They cannot do so, and Plaintiffs' case should be remanded, for the following reasons:

PLAINTIFFS' MOTION FOR REMAND

- None of Plaintiffs' claims are time-barred. This is evident on the face of the complaint. Mr. Gerber suffers from Nephrogenic Systemic Fibrosis ("NSF"), an incurable and life-threatening disease. He filed his complaint within weeks of a letter from GE and Bayer warning healthcare providers of the risk of NSF to patients who had been subjected to GE's and Bayer's MRI contrast agent.

- Plaintiffs' request for injunctive relief against all defendants pursuant to the CLRA is a properly pled state court cause of action for which all necessary prerequisites were met.

- California resident defendants McKesson Corporation and Merry X-Ray Chemical Corporation ("Distributor Defendants") distributed GE's and Bayer's MRI contrast agents. Mr. Gerber's allegations against the Distributor Defendants for strict liability and negligence are viable causes of action in California state court.

- California resident defendants California Pacific Medical Center and BMC Diagnostics, Inc. ("Imaging Facility Defendants") are the facilities where Mr. Gerber received MRAs and MRIs using GE's and Bayer's MRI contrast agents. Plaintiffs' allegations against the Imaging Facility Defendants for negligence and breach of express and implied warranties are viable causes of action in California state court.

## RELEVANT FACTS

Mr. Gerber suffers from Nephrogenic Systemic Fibrosis, an incurable, painful and life-threatening disease. He developed the disease as a direct result of receiving MRIs and MRAs using injections of gadolinium based contrast agents. The agents were manufactured by GE and Bayer and used in conjunction with machinery manufactured by GE, distributed by McKesson and Merry X-Ray, and administered by California Pacific Medical Center and BMC Diagnostics, Inc. Complaint, ¶¶43-59.

On September 12, 2007, GE and Bayer sent a letter to healthcare professionals informing them that the FDA was requiring all manufacturers of gadolinium based contrast agents to include a black-box warning on their package inserts. The warning states that use of gadolinium based contrast agents "increases the risk of the development of a serious medical condition called Nephrogenic

1   Systemic Fibrosis (NSF)[,] in patients with acute or chronic severe renal insufficiency." Ex. B to

2   Decl. of Debra DeCarli; see also Complaint ¶62.

3          Mr. Gerber and his wife Miriam Goldberg filed suit in San Francisco Superior Court on

4   October 26, 2007 against Bayer, GE, McKesson Corporation, Merry X-Ray Chemical Corporation,

5   California Pacific Medical Center and BMC Diagnostics, Inc.

6          All Defendants were served and proofs of service filed in San Francisco Superior Court on or

7   before November 7, 2007. Ex. A to Decl. of Debra DeCarli.

8          Defendants GE and Bayer removed this matter on November 21, 2007. Defendants

9   McKesson Corporation, Merry X-Ray Chemical Corporation, California Pacific Medical Center and

10  BMC Diagnostics, Inc. were not signatories to the removal and apparently were not asked to consent

11  to the removal. Notice of Removal, ¶12.

12         Simultaneous with filing their removal, Defendants GE and Bayer filed a motion to stay all

13  proceedings pending transfer decision by the Judicial Panel on Multidistrict Litigation ("JPML").

14         The JPML has not yet created an MDL, and has not yet even scheduled a hearing on the

15  creation of a gadolinium MDL. Decl. of Debra DeCarli, ¶5.

16                                    **LEGAL ANALYSIS**

17         GE and Bayer have the burden of establishing that Mr. Gerber has *no possible claim* against

18  *any of the four* California defendants. The presumption is against fraudulent joinder, and defendants

19  asserting it have a "heavy burden of persuasion." *Plute v. Roadway Package Sys., Inc.* 141

20  F.Supp.2d 1005, 1008 (N.D. Cal. 2001). Any disputed factual issues, any ambiguities in state law,

21  and any doubts arising from inartful, ambiguous or technically defective pleading must be resolved in

22  favor of remand. *Id.; Maher v. Novartis Pharmaceuticals Corp.*, 2007 U.S. Dist. Lexis 58984, *6

23  (Case No. 07852, S.D.Cal. 2007).

24         The Removing Defendants assert that the four California Defendants have been fraudulently

25  joined because Plaintiffs claims are time-barred and otherwise have no reasonable basis in fact.

26  These arguments fail on multiple levels, but this Court need only find that Plaintiff has *one valid*

27  *cause of action* against *one of the California defendants* in order to remand this case back to San

28

3

Francisco Superior Court. *See Plute,* 141 F.Supp.2d at 1008; *Black v. Merck Company, Inc.,* 2004 U.S. Dist. Lexis 29860, *6 (Case No. 038730 C.D. Cal. 2004) (remanding a pharmaceutical products liability case in which McKesson Corp. was a defendant); *Maher* at *7-8 (remanding a pharmaceutical products liability case in which McKesson Corp. was a defendant).

### A.    Plaintiffs' Claims Are Not Time-Barred

Plaintiffs' claims against the non-diverse defendants are based on strict liability, negligence, breach of warranty and violations of the Consumers Legal Remedies Act ("CLRA"). The statute of limitations for personal injury actions based on exposure to toxic substances is two years from the date of discovery. Cal. Civ. Proc. Code § 340.8. The statute of limitations for breach of warranty is four years. Cal. U. Com. Code § 2725. CLRA actions must be commenced within three years from the date of the violation. Cal. Civ. Code § 1783.

Defendants' actions in violation of the CLRA are ongoing, and therefore, the claims against them cannot be time-barred.

With respect to statutes of limitations for their personal injury claims, Plaintiffs pled that the "nature of Plaintiffs' injuries and damages, and their relationship to gadolinium-based contrast agents used in conjunction with MRIs and MRAs, was not discovered, and through reasonable care and due diligence could not have been discovered, by Plaintiffs, until a time less than two years before the filing of this Complaint." Complaint ¶67; *see* Cal. Civ. Proc. Code § 340.8(a) (statute begins to run when plaintiffs put on inquiry notice as to cause of injury). This has to be true given the fact that there was no report of the link in the world's published literature until 2006, (see Ex. C. pp. 3-4, to Decl. of Debra DeCarli (GE Position Paper)), and the Removing Defendants did not warn of the link until September 2007. Id.; Complaint ¶ 62; Ex. B to Decl. of Debra DeCarli (9/12/2007 warning letter).

Any doubts concerning the sufficiency of a cause of action due to inartful, ambiguous, or technically defective pleading must be resolved in favor of remand. *Plute,* 141 F. Supp. 2d at 1008.[1]

---

[1] GE and Bayer rely heavily upon *Ritchey v. Upjohn Drug Co.,* 189 F.3d 1318, 1318 (9th Cir. 1998) for the proposition that fraudulent joinder occurs when the running of the statute of limitations against non-diverse defendants is apparent on

PLAINTIFFS' MOTION FOR REMAND

1   Clearly, any statute of limitations issue in Plaintiffs' complaint can be cured easily by amendment.

2   Disingenuously, Removing Defendants make the erroneous assertion that "Plaintiffs have pled that

3   the alleged injury occurred in 1997 with no facts to show that Plaintiff failed to discover the injury in

4   1997 and *no facts to show how or why the alleged late discovery is excused.*" Notice of Removal

5   ¶9(g). Plaintiffs did ***not*** plead that Mr. Gerber's injury occurred in 1997. Plaintiffs alleged that:

6   • "Mr. Gerber has nephrogenic systemic fibrosis ("NSF"). NSF is an incurable, painful and

7   potentially fatal disease." Complaint ¶43.

8   • "NSF is a man-made disease. It only occurs in patients who have received a gadolinium-

9   based contrast agent for an MRI or an MRA." *Id.* ¶45.

10   • "Gadolinium is eliminated from the body by the kidneys. Gadolinium-based contrast

11   solutions are not safe if the chelate separates from the gadolinium, which is what happens

12   over time if kidneys are not functioning properly. The Manufacturing Defendants never

13   tested the safety of their gadolinium-based contrast agents in individuals with kidney

14   impairment." *Id.* ¶48.

15   • "Mr. Gerber had impaired kidney function at the time he received his first injection of

16   gadolinium-based contrast agent in 1997 and continued to have impaired kidney function

17   at the time he received each subsequent injection of gadolinium-based contrast agent." *Id.*

18   ¶55.

19   • "As a direct and proximate result of receiving injections of gadolinium-based contrast

20   agents manufactured, distributed, sold and/or administered by Defendants, Mr. Gerber

21   developed NSF." *Id.* ¶59.

22   • "Defendants have repeatedly and consistently failed to advise consumers and/or their

23   doctors of the causal relationship between gadolinium-based contrast agents and NSF in

24   _____

the face of the complaint. In *Ritchey* the expiration of the statute of limitations was obvious on the face of the complaint

25   and could not be refuted. The same cannot be said of this complaint. Paragraph 67 alleges that "nature of Plaintiffs'

injuries and damages, and their relationship to gadolinium-based contrast agents used in conjunction with MRIs and

26   MRAs, was not discovered, and through reasonable care and due diligence could not have been discovered, by Plaintiffs,

until a time less than two years before the filing of this Complaint." Paragraphs 119-123 also allege ongoing violations of

27   the CLRA.

28

PLAINTIFFS' MOTION FOR REMAND

1  patients with renal insufficiency. Defendants knew or should have known of the risk of

2  NSF posed by gadolinium-based contrast agents to individuals with impaired kidney

3  function years before they finally issued warnings." *Id.* ¶61.

4  • "It was not until ***September 2007*** that Bayer and GE sent letters to healthcare providers

5  warning them of the risk of NSF to kidney impaired individuals who received MRIs using

6  gadolinium-based contrast agents." *Id.* ¶62 (emphasis added).

7  It is apparent on the face of Plaintiffs' complaint that his injury occurred sometime after 1997

8  but the nature of the cause of the injury was not discoverable until recently. Even if there is an

9  ambiguity, it is a mere pleading defect curable by amendment.

**B.     Plaintiffs' CLRA Claim Meets All Procedural Prerequisites**

Plaintiffs' ninth cause of action is a claim against all defendants for violations of California

Civil Code section 1750 *et seq.*, commonly referred to as the Consumers Legal Remedy Act

("CLRA"). Complaint ¶¶119-123. Plaintiffs' complaint alleges that all defendants engaged in

conduct in violation of California Civil Code sections 1770(5), 1770(7) and 1770(9):

> "Defendants' conduct is in violation of California Civil Code section
> 1770(5), 1770(7) and 1770(9). Defendants' acts and business practices
> constitute unlawful methods of competition and unfair or deceptive acts
> within the meaning of California Civil Code section 1750, et seq,
> including but not limited to the following:
>
> a.    Marketing, promoting or selling Magnevist or Omniscan
> for use with MRAs by impliedly representing that such products are
> approved for use with MRAs, when in fact there is no such approval;
>
> b.    Marketing, promoting or selling Magnevist or Omniscan as
> safer or superior to other brands of gadolinium-based contrast agents;
>
> c.    Marketing, promoting or selling Magnevist or Omniscan as
> inert or with words to that effect; and
>
> d.    Marketing, promoting or selling Magnevist or Omniscan
> for use with MRAs by expressly or impliedly representing that they are
> safe for such use."

Complaint ¶121.

6

1    Defendants' notice of removal asserts that Plaintiffs' failure to comply with the notice

2  provisions of the CLRA requires dismissal of the cause of action, rendering Mr. Gerber with no

3  reasonable basis for liability pursuant to the CLRA.  Notice of Removal ¶11.  However, the CLRA's

4  thirty-day notice provision applies only to an action for damages.  Cal. Civ. Code § 1782(a).

5  Plaintiffs' CLRA cause of action is pled only for injunctive relief.  Complaint. ¶¶120, 122.  An

6  action for injunctive relief pursuant to the Consumer Legal Remedies Act may be commenced

7  without providing notice.  Cal. Civ. Code § 1782(d) ("An action for injunctive relief brought under

8  the specific provisions of Section 1770 may be commenced without compliance with subdivision

9  (a)").[2]  The first paragraph of the Prayer in Mr. Gerber's complaint reads as follows:

10           "WHEREFORE, Plaintiffs pray for relief as follows:

11           1.       For an *injunction* prohibiting Defendants from engaging in the following

12       conduct which violates the CLRA:

13                              a.  Marketing, promoting or selling Magnevist or Omniscan for use with

14                                  MRAs;

15                              b.  Marketing, promoting or selling Magnevist or Omniscan in any way

16                                  which implies that those products are safer or superior to other brands

17                                  of gadolinium-based contrast agents.

18                              c.  Marketing, promoting or selling Magnevist or Omniscan as inert or

19                                  with words to that effect."

20  Complaint at pp.18-19 (emphasis added).

21           If there is any possibility that a plaintiff may prevail on a cause of action against an in-state

22  defendant, the claim of fraudulent joinder should be denied and the case remanded.  *Plute,* 141

23  F.Supp.2d at 1008; *Black v. Merck* at *6, 14.  In this case, the in-state defendants were distributors

24  and sellers of GE's and Bayer's dangerous gadolinium based contrast agents and were distributing

25  ---

26  [2]  Section 1782 subdivision (d) goes on to state: "Not less than 30 days after the commencement of an action for
     injunctive relief, and after compliance with subdivision (a), the consumer may amend his or her complaint without leave

27  of court to include a request for damages."  Thus Plaintiffs have a right to amend their complaint to request damages
     pursuant to the CLRA *after* their complaint is filed seeking only injunctive relief.

28

1    and selling the gadolinium for a use not approved by the FDA. Defendants' assertion that Plaintiffs

2    have no valid CLRA cause of action because they did not provide notice is disingenuous at best. If

3    Defendants bothered to read the complaint and the relevant provisions of the CLRA, they could not

4    in good faith have asserted that Plaintiffs have no reasonable expectation of prevailing on their cause

5    of action. Plaintiffs' CLRA claim complied with all procedural prerequisites.

6    **C.    Plaintiffs' Claims Against the Distributor Defendants Are Viable California Causes of Action**

7

8    Both McKesson Corporation ("McKesson") and Merry X-Ray Chemical Corporation ("Merry

9    X-Ray") are California residents. McKesson and Merry X-Ray distributed the GE and Bayer

10   products at issue in this suit. Removing Defendants assert that McKesson and Merry X-Ray

11   ("Distributor Defendants") are fraudulently joined because their liability is derivative of the claims

12   against GE and Bayer and the Distributor Defendants could not communicate warnings to consumers.

13   Notice of Removal ¶10(d) and (i).

14   The general rule under California law is that both a manufacturer and a distributor can be

15   strictly liable for injuries caused by a defective product. *Maher v. Novartis Pharmaceuticals Corp.*,

16   2007 U.S. Dist. Lexis 58984 at *7-8 (citing *Bostick v. Flex Equipment Co.*, 147 Cal. App. 4th 80, 88,

17   54 Cal. Rptr. 3d 28 (2007); *Anderson v. Owens-Corning Fiberglass Corp.*, 53 Cal. 3d 987, 994, 281

18   Cal. Rptr. 528, 810 P.2d 549 (1991); *Daly v. General Motors Corp.*, 20 Cal. 3d 725, 739, 144 Cal.

19   Rptr. 380, 575 P.2d 1162 (1978); *Vandermark v. Ford Motor Co.*, 61 Cal. 2d 256, 262-63, 37 Cal.

20   Rptr. 896, 391 P.2d 168 (1964)); *see also Black v. Merck* at *10 (strict liability for failure to warn

21   extends beyond manufacturers to retailers and wholesalers).

22   In the context of fraudulent joinder, a number of federal district courts have addressed

23   whether a California distributor can be liable in a prescription drug case for failure to warn, and

24   concluded that distributor defendants were not fraudulently joined because a distributor could

25   possibly be liable for failure to warn in prescription drug cases under California law. *Maher v.*

26   *Novartis* at *10-11 (citing numerous California District Court cases); *see also Black v. Merck*

27   *Company, Inc.* at *11 (holding that McKesson was not fraudulently joined and remanding case).

28

1    In *Maher*, the plaintiff filed a product liability suit in state court against a pharmaceutical

2  manufacturer and McKesson. The pharmaceutical manufacturer removed the case on the basis of

3  diversity, alleging that the plaintiff's claims against McKesson were not viable because McKesson

4  had no duty to warn. Judge Hayes concluded that "This Court has been unable to find, nor has either

5  party cited, a case under California law which creates an exception in strict liability for distributors in

6  prescription drug cases. This Court cannot conclude that it is obvious that the general rule of

7  distributor liability does not apply under the allegations in this case." *Maher* at *12 (citing *McCabe*

8  *v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987) (referring to *McCabe's* requirement

9  that, for a removing party to meet its burden of proof for fraudulent joinder, plaintiff's failure to state

10  a claim must be "obvious" according to settled rules of the state)). Judge Hayes then held that it was

11  not "obvious" that the plaintiff failed to state a claim against McKesson under settled California law

12  and that the removing party, the pharmaceutical manufacturer, had failed to meet its heavy burden to

13  show that McKesson had been fraudulently joined. *Id.* at 12-13.

14    In this case, the Removing Defendants do not, and cannot, cite any California cases holding

15  that a distributor cannot be held liable for a failure to warn. Removing Defendants have failed to

16  satisfy the heavy burden of demonstrating that Plaintiffs have ***no possible claim*** against McKesson

17  and Merry X-Ray and have therefore failed to demonstrate that either McKesson or Merry X-Ray

18  was fraudulently joined. Accordingly, this matter must be remanded because complete diversity of

19  citizenship is lacking.

**D.    Plaintiffs' Claims Against the Imaging Facility Defendants Are Viable California
Causes of Action**

21    Mr. Gerber received MRIs and MRAs using GE's and Bayer's contrast dye at the Imaging

22  Facility Defendants. Both defendants are California residents, and Mr. Gerber bases his allegations

23  upon their conduct within California, specifically negligence, breach of express and implied warranty

24  and violations of the CLRA. Complaint ¶¶80-97, 119-123. Mr. Gerber pleads that the Imaging

25  Facility Defendants knew or should have known that gadolinium-based contrast agents and the MRI

26  and MRA machines designed to be used in conjunction with gadolinium-based contrast agents posed

27  a serious risk of bodily harm to consumers. Yet they continued to promote and sell their MRI and

28

9

1    MRA services, which utilized gadolinium-based contrast agents, to patients with renal insufficiency

2    when the Imaging Facility Defendants knew or should have known that consumers such as Mr.

3    Gerber, who have renal insufficiency, would suffer injury as a result of their failure to exercise

4    ordinary care.  Complaint ¶¶86-87.

5         Defendants' Notice of Removal focuses on Mr. Gerber's professional negligence claim

6    against the Imaging Facility Defendants.  The elements of a cause of action in tort for professional

7    negligence are: (1) the duty of the professional to use such skill, prudence and diligence as other

8    members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate

9    causal connection between the negligent conduct and the resulting injury; and (4) actual loss or

10   damage resulting from the professional's negligence.  *Burgess v. Superior Court*, 2 Cal. 4th 1064,

11   1077 (1992).  Mr. Gerber's complaint alleges that the Imaging Facility Defendants (1) provided

12   professional medical services to Mr. Gerber, knew or should have known that administering MRIs

13   and MRAs using gadolinium-based contrast agents to patients with impaired renal function, such as

14   Plaintiff, posed a serious risk of bodily harm to such patients and held themselves out to be

15   knowledgeable in the safety, efficacy and use of MRIs and MRAs (Complaint ¶¶81-83); (2) failed to

16   exercise the proper degree of knowledge and skill in examining, treating, and caring for Plaintiff and

17   failed to correctly ascertain, assess and account for Plaintiff's renal function prior to subjecting

18   Plaintiff to MRIs and MRAs and failed to adequately communicate to Plaintiff the warnings,

19   instructions, risks, dangers and side effects of receiving MRIs and MRAs using gadolinium-based

20   contrast agents (Complaint ¶¶84-85); (3) Mr. Gerber developed NSF as a direct and proximate result

21   of receiving gadolinium-based contrast agents; and (4) Mr. Gerber has suffered significant damage as

22   a result (Complaint ¶¶64-66).

23        Removing Defendants claim that the negligence claim should be dismissed based on a failure

24   to provide notice pursuant to Code Civ. Pro. § 364 is also without merit.  As Removing Defendants

25   concede, a failure to provide notice pursuant to section 364 is not jurisdictional.  Notice of Removal

26   ¶9(h).  A total failure to comply with the statute does not invalidate an action against a provider.

PLAINTIFFS' MOTION FOR REMAND

1  *Edwards v. Superior Court*, 93 Cal App 4th 172, 112 Cal Rptr. 2d 838 (2001, 2nd Dist).  Therefore,

2  any failure to provide notice by Mr. Gerber provides no support for removal.

3         Mr. Gerber adequately pleaded all elements to maintain negligence claims against California

4  Pacific Medical Center and BMC Diagnostics, Inc.  Removing Defendants have failed to satisfy the

5  heavy burden of demonstrating that Plaintiffs have no possible claim against California Pacific

6  Medical Center and BMC Diagnostics, Inc. and have therefore failed to demonstrate that either

7  California Pacific Medical Center or BMC Diagnostics, Inc. was fraudulently joined.  Accordingly,

8  this matter must be remanded because complete diversity of citizenship is lacking.

**CONCLUSION**

9         Removing Defendants did not and cannot establish that Plaintiffs have ***no possible claim***

10  against ***any of the four*** California defendants and have therefore failed to demonstrate that either

11  McKesson, Merry X-Ray, BMC Diagnostics, Inc. or California Pacific Medical Center were

12  fraudulently joined.  Accordingly, this matter must be remanded because complete diversity of

13  citizenship is lacking.

Dated:  December 3, 2007                          LEVIN SIMES KAISER & GORNICK LLP


                                                 By:   s/ Debra DeCarli
                                                       Debra DeCarli, Esq.

LEXSEE

**TIMOTHY BLACK, et. al., Plaintiffs, v. MERCK & COMPANY, INC., a corporation; MCKESSON CORPORATION, a corporation; and DOES 1-100, inclusive, Defendants.**

CASE NO. CV 03-8730 NM (AJWx)

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

*2004 U.S. Dist. LEXIS 29860*

March 3, 2004, Decided
March 3, 2004, Filed

**COUNSEL:** [*1] For Timothy Black, Fred Brusso, Imelda Clark, Patricia Conklin, Gary Daley, Barbara Green, Timothy Green, Bea Harrington, Willie Beatrice Harris, Connie Hess, Bobby Home, Glenda Jacobs, Michael Limberg, Kim McIntosh, Jack Melton, William Morgan, Elaine Morgan, Frank Mosley, Marcia Napoli, Paul Sader, Roque Salcedo, Ageline Self, Shelli Shaw, Ronnie Lee Smith, Joanne Sumler, Gregory Teasley, Tracy Thacker, Richard Tracy, Danny Warren, Charlotte Wooten, Paulette Wessel, Shirley Wilson-Trass, Jamie Worstell, Richard Yost, Ursula A Yost, an individual, Plaintiffs: Joy Lynn Robertson, Walter J Lack, Engstrom Lipscomb & Lack, Los Angeles, CA; Thomas V Girardi, Girardi & Keese, Los Angeles, CA.

For Merck & Company Inc, a corporation, Defendant: Michael K Brown, Thomas J Yoo, Reed Smith Crosby & Heafey, Los Angeles, CA; Norman C Kleinberg, Theodore V H Mayer, Hughes Hubbard & Reed, New York, NY.

**JUDGES:** Nora M. Manella, United States District Judge.

**OPINION BY:** Nora M. Manella

**OPINION**

**ORDER GRANTING PLAINTIFFS' MOTION TO REMAND**

**I. INTRODUCTION**

On November 25, 2003, 35 plaintiffs residing in 20 states, including California but not including New Jersey ("Plaintiffs"), sued Merck & Company, [*2] Inc.

("Merck"), McKesson Corporation ("McKesson"), and Does 1-100, inclusive (collectively, "Defendants"), in Los Angeles Superior Court. [1] Thirty-two of the Plaintiffs allege they were injured by taking VIOXX, a prescription drug; the remaining three plaintiffs allege loss of consortium. Compl. PP 13-47. [2]

> 1   *Local Rule 19-1* provides that "[n] o complaint or petition shall be filed that includes more than ten (10) Doe or fictitiously named parties."

> 2   Plaintiffs allege thirteen claims: (1) strict liability for failure to warn; (2) negligence; (3) negligence per se; (4) breach of implied warranty; (5) breach of express warranty; (6) deceit by concealment; (7) negligent misrepresentation; (8) violation of *Cal. Bus. & Prof. Code § 17200*; (9) violation of *Cal. Bus. & Prof. Code § 17500*; (10) violation of *Cal. Civ. Code § 1750*; (11) wrongful death; (12) survival action; and (13) loss of consortium.

On December 1, 2003, Merck [*3] removed the case based on diversity. Merck is incorporated in and has its principal place of business in New Jersey. Id. P 49. McKesson is incorporated in Delaware and has its principal place of business in California. Notice of Removal P 12; Mot. at 1. Merck asserts that diversity jurisdiction exists because the only non-diverse defendant named in the Complaint, McKesson, was fraudulently joined. Notice of Removal P 8; Mot. at 1. In the alternative, Merck argues the court should extend the doctrine of fraudulent joinder to apply where plaintiffs were misjoined. Mot. at 11-12. Merck contends that because the four California plaintiffs were misjoined, the court should disregard their citizenship and sever them from the case. Id. Now pending is Plaintiffs' Motion to Remand on the grounds that:

(1) diversity jurisdiction is lacking, and (2) Merck's request to sever the California plaintiffs is contrary to law and to standards of efficiency.

## II. FACTS

Merck, a pharmaceutical company, tested, manufactured, marketed, labeled, and distributed VIOXX. Compl. PP 48-49. Merck sells VIOXX to wholesale distributors, hospitals, pharmacies, and other suppliers of prescription drugs. Layton [*4] Decl. PP 2-3. McKesson, a wholesale distributor, promoted and distributed VIOXX. *Id.* P 3; Compl. P 50. Currently, Merck sells VIOXX to approximately 33 wholesalers (including McKesson), 1,000 hospitals, 1,500 small pharmacies, and three warehouse chain pharmacies. Layton Decl. P 3.

VIOXX is a prescription drug used for the treatment of painful menstrual cramps, the management of acute pain in adults, and the relief of signs and symptoms of osteoarthritis. Compl. P 55. VIOXX has allegedly been linked to several severe and life threatening medical disorders including, but not limited to, edema, changes in blood pressure, heart attacks, strokes, seizures, kidney and liver damage, pregnancy complications, and death. *Id.* P 58. Plaintiffs allege these risks were not disclosed to them. *Id.* Plaintiffs further allege Defendants aggressively marketed their product through advertisements and other promotional materials while misleading potential users and failing to protect consumers from serious dangers of which Defendants knew or should have known. *Id.* PP 59-64.

## III. DISCUSSION

### A. Fraudulent Joinder

For removal based on diversity, *28 U.S.C. § 1332* [*5] requires complete diversity of citizenship. *Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1067 (9th Cir. 2001)* (citation omitted). Even if the complete diversity requirement is met, removal is not allowed where one of the defendants is a "citizen of the State in which such action is brought." *28 U.S.C. § 1441(b).* [3] But if the plaintiff "fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." *McCabe v. Gen. Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987)* (citation omitted). "Fraudulent joinder" is a term of art and does not impugn the integrity of plaintiffs or their counsel and does not refer to an intent to deceive. *Id.; DaCosta v. Novartis AG, 180 F. Supp. 2d 1178, 1181 (D. Or. 2001)* (citation omitted). Where joinder of a non-diverse defendant is deemed fraudulent, the defendant's presence in the lawsuit is ignored for purposes of determining diversity. *Morris, 236 F.3d at 1067.*

[3]   A corporation is deemed a citizen of its state of incorporation and its principal place of business. *See 28 U.S.C. § 1332(c)(1).*

[*6]   "There is a presumption against finding fraudulent joinder, and defendants who assert that [the] plaintiff has fraudulently joined a party carry a heavy burden of persuasion." *Plute v. Roadway Package Sys., Inc., 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001)* (citations omitted); *see also, Nishimoto v. Federman-Bachrach & Assoc., 903 F.2d 709, 712 n. 3 (9th Cir. 1990)* ("removal statute is strictly construed against removal jurisdiction"); *Emrich v. Touche Ross & Co., 846 F.2d 1190, 1195 (9th Cir. 1988)* (same). Courts have denied claims of fraudulent joinder when there is any possibility that a plaintiff may prevail on the cause of action against the in-state defendant. *Plute, 141 F. Supp. 2d at 1008, 1012; see Cavallini v. State Farm Mut. Auto Ins. Co., 44 F.3d 256, 259 (5th Cir. 1995)* ("The burden of proving a fraudulent joinder is a heavy one. The removing party must prove that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the in-state defendant in state court.") (citation and internal quotations omitted). "In determining whether a defendant [*7] was joined fraudulently, the court must resolve 'all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party.'" *Plute, 141 F. Supp. 2d at 1008* (quoting *Dodson v. Spiliada Maritime Corp., 951 F.2d 40, 42-43 (5th Cir. 1992)); Little v. Purdue Pharma, LP, 227 F. Supp. 2d 838, 849 (S.D. Ohio 2002)* ("a federal court should hesitate before pronouncing a state claim frivolous, unreasonable, and not even colorable in an area yet untouched by the state courts").

Furthermore, any doubts concerning the sufficiency of a cause of action due to inartful, ambiguous, or technically defective pleading must be resolved in favor of remand; a lack of clear precedent does not render the joinder fraudulent. *Plute, 141 F. Supp. 2d at 1008* (citation omitted); *see Peloza v. Capistrano Unified Sch. Dist., 37 F.3d 517, 521 (9th Cir. 1994)* (courts must interpret general allegations to "embrace whatever specific facts might be necessary to support them"); *Little, 227 F. Supp. 2d at 847 n. 12* ("in light of the heavy burden on defendants to show the non-diverse [*8] defendants were fraudulently joined, it seems to this Court that a finding of fraudulent joiner should not be based on factual deficiencies within the pleadings which are correctable by amendment").

Merck contends that McKesson was fraudulently joined on two grounds: (1) Plaintiffs have failed to allege an actual connection between their purported injuries and McKesson's conduct, and (2) Plaintiffs have failed to state a viable claim against McKesson. With respect to

the first ground, Merck argues Plaintiffs must allege the VIOXX they ingested was distributed by McKesson to the pharmacies from which Plaintiffs purchased VIOXX. Opp. at 5-6. Merck argues that McKesson is one of numerous distributors and Plaintiffs have failed to plead that McKesson received a benefit from the sale of the product, that its role was integral to the business of the manufacturer, or that McKesson had control over or ability to influence the manufacturing or distribution process. *Id.* at 7.

Plaintiffs, however, allege McKesson "was in the business of promoting and distributing the pharmaceutical Vioxx." Compl. P 50. Plaintiffs also allege they have "been prescribed and supplied with, received, and [have] [*9] taken and ingested and consumed the prescription drug Vioxx, as . . . distributed, marketed, labeled, promoted, packaged . . . or otherwise placed in the stream of interstate commerce by Defendants Merck & Company, Inc., McKesson, and Defendants Does 1 through 100." Id. P 1. [4]

> 4   Most of the remaining allegations are against "Defendants," including McKesson. General allegations against "Defendants" are sufficient to charge McKesson with the alleged wrongful conduct. *See Plute, 141 F. Supp. 2d at 1007, 1010 n. 4* (any doubts concerning the sufficiency of a cause of action due to inartful, ambiguous, or technically defective pleading must be resolved in favor of remand); *Peloza, 37 F.3d at 521* (courts must interpret general allegations to "embrace whatever specific facts might be necessary to support them").

Next, Merck contends Plaintiffs have failed to state a viable claim against McKesson. Plaintiffs argue they have stated a claim against McKesson for strict liability for failure [*10] to warn. Under California law, manufacturers can be held strictly liable for failure to warn. *Brown v. Superior Court, 44 Cal. 3d 1049, 1065, 245 Cal. Rptr. 412, 751 P.2d 470 (1988).* Generally, such liability extends beyond manufacturers to retailers and wholesalers. *Johnson v. Standard Brands Paint Co., 274 Cal. App. 2d 331, 337, 79 Cal. Rptr. 194 (1969); Soule v. Gen. Motors Corp., 8 Cal. 4th 548, 560, 34 Cal. Rptr. 2d 607, 882 P.2d 298 (1994).* A retailer includes anyone involved in the sale of a product short of "the housewife who, on occasion, sells to her neighbor a jar of jam or a pound of sugar." *Pan-Alaska Fisheries. Inc. v. Marine Constr. & Design Co., 565 F.2d 1129, 1135 (9th Cir. 1977)* (citations omitted).

In contrast to manufacturers of prescription drugs who are subject to strict liability for failure to warn, pharmacists cannot be held strictly liable for failure to warn. *See Murphy v. E. R. Squibb & Sons. Inc., 40 Cal.*

*3d 672, 679, 221 Cal. Rptr. 447, 710 P.2d 247 (1985); Carlin v. Superior Court, 13 Cal. 4th 1104, 1117, 56 Cal. Rptr. 2d 162, 920 P.2d 1347 (1996).* "Courts have traditionally maintained a distinction between those rendering services and those selling products, holding that those providing services are not subject [*11] to strict liability [.] " *San Diego Hospital Assn. v. Superior Court, 30 Cal. App. 4th 8, 13, 35 Cal. Rptr. 2d 489 (1994).* As the California Supreme Court has explained: "A key factor is that the pharmacist who fills a prescription is in a different position from the ordinary retailer because he cannot offer a prescription for sale except by order of the doctor. . . . [H] e is providing a service to the doctor." *Murphy, 40 Cal. 3d at 679.*

Although California case law has carved out an exception for service providers such as pharmacists, it has not addressed whether distributors of prescription drugs can be strictly liable for failure to warn. Because state law is unsettled as to whether a distributor of prescription drugs could be strictly liable for failure to warn, the court cannot rule that there is "absolutely no possibility" Plaintiffs could prevail on this claim against McKesson. *See Plute, 141 F. Supp. 2d at 1008, 1012; Cavallini, 44 F.3d at 259.* Thus, Merck has not met its "heavy burden" of demonstrating that a non-diverse defendant was fraudulently joined. *See Plute, 141 F. Supp. 2d at 1012; Little, 227 F. Supp. 2d at 849.* [*12]

Merck argues the rationale for exempting pharmacists from strict liability applies equally to distributors. Citing case law from Pennsylvania, Maryland, and Mississippi, Merck contends courts have not held pharmacists strictly liable because to do so would interfere with the doctor-patient relationship. Obviously, McKesson is not a pharmacist, and there is no potential for interference with any doctor-patient relationship. Moreover, the California Supreme Court has distinguished pharmacists from others in the chain of distribution on the ground that pharmacists provide services. *See Murphy, 40 Cal. 3d at 679.* Unlike a pharmacist, McKesson provides no service.

Next, Merck argues that under the "learned intermediary" doctrine, distributors have no duty to warn and thus cannot be held strictly liable, citing two unpublished district court cases where the court concluded that a distributor of a prescription drug is not subject to liability. See *Barlow v. Warner-Lambert Co.,* CV 03-1647-R, [slip op.] at 2 (C.D. Cal. 2003); *Skinner v. Warner-Lambert Co.,* CV 03-1643-R, slip op. at 2 (C.D. Cal. 2003). [5] However, both cases relied solely on comment k of the Restatement [*13] (Second) of Torts, which does not exempt distributors from strict liability. Rather, comment k states that a seller of pharmaceuticals is not strictly liable if the products are properly prepared and marketed, and proper warning is given. [6]

5   Under the "learned intermediary" doctrine, a drug manufacture has no duty to warn the ultimate consumer, the patient, so long as adequate warnings are given to the doctor. *Carlin, 13 Cal. 4th at 1108-09, 1116; Carmichael v. Reitz, 17 Cal. App. 3d 958, 994, 95 Cal. Rptr. 381 (1971).*

6   A "seller" of a product is "any person engaged in the business of selling products for use or consumption. It therefore applies to any . . . wholesale or retail dealer or distributor [.]" *Restatement (Second) Torts § 402A, cmt. f.*

Finally Merck argues that "Plaintiffs cite no case holding a pharmaceutical supplier like McKesson liable for distributing an FDA-approved medication [.]" Opp. at 10. However, it is Merck's "heavy burden" [*14] to show "absolutely no possibility" that Plaintiffs could prevail on their strict liability claim against McKesson. *See Plute 141 F. Supp. 2d at 1008; Cavallini, 44 F.3d at 259; Little, 227 F. Supp. 2d at 849.* As Merck has not meet this burden, it has failed to demonstrate that McKesson was fraudulently joined. [7] Thus, this matter must be remanded because complete diversity of citizenship is lacking. *See Morris, 236 F.3d at 1067.*

7   In light of the court's determination that Plaintiffs may have a cause of action against McKesson based on strict liability for failure to warn, the court need not address the viability of the remaining claims against McKesson.

### B. Misjoinder of Plaintiffs

The Eleventh Circuit has held that misjoinder of plaintiffs may be just as fraudulent as the fraudulent joinder of a defendant against whom a plaintiff has no claim. *Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1360 (11th Cir. 1996),* [*15] *overruled on other grounds, Cohen v. Office Depot. Inc., 204 F.3d 1069,*

*1072 (11th Cir. 2000).* In *Tapscott,* the court explained that while "mere misjoinder" is not fraudulent joinder, a party's attempt to misjoin parties may be "so egregious as to constitute fraudulent joinder." *Tapscott, 77 F.3d at 1360.* [8] However, the Ninth Circuit "has not found occasion to address *Tapscott,* and no other circuit has adopted its rationale." *Brazina v. Paul Revere Life Ins. Co., 271 F. Supp. 2d 1163, 1172 (N.D. Cal. 2003).* Because the Ninth Circuit has not adopted this novel theory, the court declines to do so here. [9]

8   *Tapscott* "concerned two groups of plaintiffs that sued separate groups of defendants on almost entirely separate legal grounds." *Brazina v. Paul Revere Life Ins. Co., 271 F. Supp. 2d 1163, 1172 (N.D. Cal. 2003)* (citing *Tapscott, 77 F.3d at 1360*).

9   Even under the *Tapscott* theory, it is unclear whether the joinder of the California plaintiffs is "so unrelated as to constitute egregious misjoinder." *See Brazina, 271 F. Supp. 2d at 1172; Tapscott, 77 F.3d at 1360; In re Norplant Contraceptive Prods. Liab. Litig., 168 F.R.D. 579, 581 (E.D. Tex. 1996)* (finding joinder of plaintiffs proper where defendants failed to adequately warn plaintiffs of risks and severity of side effects of prescription contraceptives, even though plaintiffs had different doctors).

### [*16] IV. CONCLUSION

Accordingly, the court **GRANTS** Plaintiffs' Motion to Remand.

IT IS SO ORDERED.

DATED: March 3, 2004

Nora M. Manella

United States District Judge

117MCD

********** Print Completed **********

Time of Request: Tuesday, November 27, 2007   13:20:59 EST

Print Number:    1823:61937382
Number of Lines: 239
Number of Pages:

Send To:  DECARLI, DEBRA
          LEVIN SIMES KAISER & GORNICK LLP
          44 MONTGOMERY STREET, 36TH FLOOR
          SAN FRANCISCO, CA 94104

FOCUS - 1 of 2 DOCUMENTS

**ELIZABETH MAHER, Plaintiff, vs. NOVARTIS PHARMACEUTICALS COR-PORATION, et al., Defendants.**

**CASE NO. 07CV852 WQH (JMA)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

*2007 U.S. Dist. LEXIS 58984*

**August 10, 2007, Decided**
**August 10, 2007, Filed**

**COUNSEL:** [*1] For Elizabeth Maher, a single woman, Plaintiff: Martin Schmidt, LEAD ATTORNEY, San Diego Trial Group, La Jolla, CA; Lowell W. Finson, Robert F Clarke, LEAD ATTORNEY, Phillips & Associates, Phoenix, AZ.

For Novartis Pharmaceuticals Corporation, a Delaware corporation, Defendant: John Peter Cooley, Karen Shichman Crawford, LEAD ATTORNEY, Duane Morris, San Diego, CA.

For Novartis Corporation, a New York corporation, Defendant: Karen Shichman Crawford, LEAD ATTORNEY, Duane Morris, San Diego, CA.

McKesson Corporation, a Delaware corporation, Defendant: Mark D Petersen, LEAD ATTORNEY, Farella Braun & Martel LLP, San Francisco, CA.

**JUDGES:** WILLIAM Q. HAYES, United States District Judge.

**OPINION BY:** WILLIAM Q. HAYES

**OPINION**

ORDER GRANTING PLAINTIFF'S MOTION TO REMAND

HAYES, Judge:

Pending before the Court is Plaintiff's motion to remand to state court. (Does. # 11). The Court finds this matter suitable for submission on the papers without oral argument pursuant to Civil Local Rule 7.1(d)(1).

**BACKGROUND**

On March 23, 2007, Plaintiff Elizabeth Maher (Plaintiff) filed a Complaint in the Superior Court of California against Defendants Novartis Pharmaceuticals Corporation (Novartis), Novartis Corporation [1] and McKesson Corporation (McKesson). [*2] Notice of Removal (Doc. # 1), P 1. The Complaint alleges state law claims against Novartis and McKesson for injuries sustained by Plaintiff when Plaintiff ingested the prescription drug Tegretol, an anti-seizure medication. Notice of Removal, Ex. 1 (Complaint), P 3. Specifically, the Complaint alleges state law claims for (1) strict products liability, (2) common law fraud, (3) negligence, (4) negligent misrepresentation, (5) misrepresentation, (6) express warranty, (7) implied warranty, and (8) violations of the California Business & Professions Code. Compl., PP 42-70.

> 1 Plaintiff voluntarily dismissed Defendant Novartis Corporation on June 11, 2007. (Doc. # 10).

Plaintiff is a resident of the State of California. Notice of Removal, P 4; Compl., P 2. Defendant Novartis is a Delaware corporation with its principal place of business in the State of New Jersey. Compl., P 4; Notice of Removal, P 5. Plaintiff alleges that Novartis, "[a]t all [*3] times relevant . . . was in the business of designing, testing, manufacturing, labeling, advertising, marketing, promoting, selling and distributing pharmaceuticals, including Tegretol, and other products for use by the mainstream public, including Plaintiff." Compl., P 10. Defendant McKesson is a Delaware corporation with its principal place of business in the State of California. Compl., P 7; Notice of Removal, P 7. Plaintiff alleges that McKesson, "[a]t all times relevant . . . was in the business of labeling, advertising, marketing, promoting, selling and distributing pharmaceuticals, including Te-

gretol, and other products for use by the mainstream public, including Plaintiff." Compl., P 11.

Plaintiff alleges that Defendants Novartis and Mckesson, or their representatives, "manufactured, marketed, distributed and sold" Tegretol to Plaintiff. Compl., P 13. Plaintiff further alleges that Defendants Novartis and McKesson knew that Tegretol was a dangerous drug and failed to adequately warn physicians and patients about its dangers. Compl., P 17. Plaintiff alleges that Defendants made false statements about Tegretol and improperly promoted the Tegretol taken by Plaintiff for off-label [*4] uses. Compl., P 19.

On April 11, 2007, Plaintiff served Defendant Novartis with the Complaint. Notice of Removal, P 2. On May 11, 2007, Novartis filed Notice of Removal pursuant to *28 U.S.C. § 1441(b)*. Notice of Removal (Doc. # 1). The Notice of Removal asserts diversity jurisdiction and contends that the citizenship of Defendant McKesson is irrelevant because McKesson is a sham Defendant fraudulently joined. Notice of Removal, P 7. The amount in controversy exceeds $ 75,000. Notice of Removal, PP 9-10; Compl., P 75, 84, 87-88.

On June 1, 2007, Plaintiff moved to remand for lack of subject matter jurisdiction. (Does. # 8, 11).

## STANDARD OF REVIEW

"A federal court can exercise removal jurisdiction over a case only if it would have had jurisdiction over [the case] as originally brought by the plaintiff." *Snow v. Ford Motor Co., 561 F.2d 787, 789 (9th Cir. 1977); see also 28 U.S.C. § 1441*. Removal based on diversity jurisdiction under *28 U.S.C. § 1332* requires complete diversity of citizenship. *Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1067 (9th Cir. 2001); see also 28 U.S.C. § 1332*. Removal is not permitted where one of the defendants "is a citizen of the State in which such action [*5] is brought." *28 U.S.C. § 1441(b)*.

The party seeking removal has the burden of establishing federal jurisdiction, *Holcomb v. Bingham Toyota, 871 F.2d 109, 110 (9th Cir. 1989)*, and there is a "strong presumption against removal jurisdiction." *Abrego Abrego v. Dow Chem. Co., 443 F.3d 676, 685 (9th Cir. 2006), citing Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992)*. In determining the existence of removal jurisdiction, a court may ignore a "fraudulently joined" defendant. *Morris v. Princess Cruise Lines, 236 F.3d 1061, 1067-68 (9th Cir. 2001)*. "Fraudulent joinder is a term of art"--when a "plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." *McCabe v. General Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987)*.

A district court evaluating fraudulent joinder properly considers the allegations of the complaint and any evidence submitted by the parties showing the joinder is fraudulent. *Ritchey v. UpJohn Drug Co., 139 F.3d 1313, 1318 (9th Cir. 1998); McCabe, 811 F.2d at 1339*. "All disputed questions of fact and all ambiguities in the controlling [*6] state law" must be resolved in favor of the non-removing party, and "any doubts concerning the sufficiency of a cause of action due to inartful, ambiguous, or technically defective pleading must be resolved in favor of remand." *Aaron, CV 05-4073-JFW (MANx), 2005 U.S. Dist. LEXIS 40745, *5-6 (C.D. Cal. July 26, 2005); see also Little v. Purdue Pharma, LP, 227 F. Supp. 2d 838, 849 (S.D. Ohio 2002)* ("a federal court should hesitate before pronouncing a state claim frivolous, unreasonable, and not even colorable in an area yet untouched by the state courts.").

## DISCUSSION

Plaintiff moves for remand to state court for lack of federal subject matter jurisdiction. Plaintiff, a citizen of the State of California, contends that there is no diversity jurisdiction because Defendant McKesson is a legitimate defendant with its place of business in the State of California. Plaintiff contends that a distributor such as Defendant McKesson is liable under California law if it fails to properly warn physicians and patients of a prescription drug's dangerous propensities.

Defendant Novartis contends that Plaintiff has not and cannot state a claim against Defendant McKesson under California law. Defendant [*7] Novartis asserts that Defendant McKesson is fraudulently joined in this action to defeat diversity and that removal is proper based on diversity jurisdiction when one ignores Defendant McKesson's citizenship. Defendant Novartis contends that Defendant McKesson is "fraudulently joined to this action as a 'sham' defendant" and "there is no possible way that Plaintiff can prove a cause of action against McKesson." Notice of Removal, P 7. Defendant Novartis contends that a distributor of prescription drugs cannot be held liable for damages in a products liability claim under California law and that the learned intermediary doctrine precludes Plaintiff from stating a claim against Defendant McKesson. Defendant Novartis explains that Plaintiff's claims of inadequate warning, negligence, fraud, negligent misrepresentation and misrepresentation against Defendant McKesson are not viable because a distributor of prescription drugs has no duty to warn under California law.

The general rule under California law is that both a manufacturer and a distributor can be strictly liable for injuries caused by a defective product. *Bostick v. Flex Equipment Co., 147 Cal. App. 4th 80, 88, 54 Cal. Rptr. 3d 28 (2007); Anderson v. Owens-Corning Fiberglass*

*Corp., 53 Cal. 3d 987, 994, 281 Cal. Rptr. 528, 810 P.2d 549 (1991)*; [*8] *see also Daly v. General Motors Corp., 20 Cal. 3d 725, 739, 144 Cal. Rptr. 380, 575 P.2d 1162 (1978); Vandermark v. Ford Motor Co., 61 Cal. 2d 256, 262-63, 37 Cal. Rptr. 896, 391 P.2d 168 (1964)*. In *Brown v. Superior Court, 44 Cal. 3d 1049, 245 Cal. Rptr. 412, 751 P.2d 470 (1988)*, the California Supreme Court examined strict liability for drug manufacturers and concluded that "a manufacturer is not strictly liable for injuries caused by a prescription drug so long as the drug was properly prepared and accompanied by warnings of its dangerous propensities that were either known or reasonably scientifically knowable at the time of distribution." *Id. at 1069*. In prescription drug cases, liability under California state law is premised on a defendant's failure to warn of knowable risks. [2] *Id.* The California Supreme Court has recognized an exception in strict liability for pharmacists in prescription drug cases, *see Murphy v. E.R. Squibb & Sons, Inc., 40 Cal. 3d 672, 681, 221 Cal. Rptr. 447, 710 P.2d 247 (1985)* [3], however, it has not addressed liability in prescription drug cases for distributors and other potential defendants in the "commercial chain." *Daly, 20 Cal. 3d at 739* ("Regardless of the identity of a particular defendant or of his position in the commercial chain the basis of his liability remains that he has [*9] marketed or distributed a defective product."). Defendant Novartis contends that Plaintiff cannot maintain her claims against Defendant McKesson because the principles that the California Supreme Court relied upon to explain liability for drug manufacturers in *Brown* and to create an exception in strict liability for pharmacists in prescription drug cases apply to prevent recovery against distributors in products liability cases involving prescription drugs. Defendant's Opp. To Mot. To Remand at 3-6.

[2] Though the rule articulated in *Brown* uses the words "strict liability," the California Supreme Court noted that the rule "rings of negligence" and distinguished the rule from pure strict liability. *Brown, 44 Cal. 3d at 1058-59*. The Court concluded that "a drug manufacturer's liability for a defectively designed drug should not be measured by the standards of strict liability." *Id. at 1061*.

[3] The California Supreme Court created the pharmacy exception articulated in *Murphy* and applicable in strict liability cases before it decided *Brown* and held that there was no pure strict liability in prescription drug cases, only a hybrid (negligence/strict liability) form of liability for failure to [*10] warn. *Brown, 44 Cal. 3d at 1058-1061*.

In the context of fraudulent joinder, a number of federal district courts have addressed whether a California distributor can be liable in a prescription drug case for failure to warn, and concluded that distributor defendants were not fraudulently joined because a distributor could possibly be liable for failure to warn in prescription drug cases under California law. *See Aaron, CV 05-4073-JFW (MANx), 2005 U.S. Dist. LEXIS 40745, *8 (C.D. Cal. July 26, 2005)* (defendant failed to meet heavy burden of demonstrating that there is no possibility that plaintiffs will be able to prevail); *Black, CV 03-8730 NM (AJWx), 2004 U.S. Dist. LEXIS 29860, *13-14 (C.D. Cal. Mar. 3, 2004)* (defendant failed to meet heavy burden to show "absolutely no possibility" that plaintiffs could prevail); *Martin, No. S-05-750, 2005 U.S. Dist. LEXIS 41232, 2005 WL 1984483, *3-4 (E.D. Cal. Aug. 17, 2005)* (defendant failed to meet heavy burden to show to a near certainty that cause of action is precluded under California law); *see also Becraft v. Ethicon, No. C 00-1474 CRB, 2000 U.S. Dist. LEXIS 17725 (N.D. Cal. Nov. 2, 2000)* (concluding that a distributor can be liable under California law for defective sutures); [*11] *but see Aronis v. Merck, NO. CIV. S-05-0486 WBS DAD, 2005 U.S. Dist. LEXIS 41531, *3 (E.D. Cal. May 3, 2005)* (plaintiff did not state claim against distributor under California law because plaintiff failed to allege causal connection); *Skinner v. Warner-Lambert Co., Case No CV-03-1643-R (Rzx) (C.D. Cal. Apr. 28, 2003)* (distributor of prescription drugs is not subject to strict liability). On or about May 22, 2006, a California State Superior Court Judge refused to exempt distributors from strict liability in a prescription drug case involving the drug Vioxx. The Superior Court Judge stated "Defendants point to no authority that makes an exception to the doctrine of strict liability for distributors in an industry analogous to the prescription pharmaceutical industry. This court will not be the first to make such an exception at the pleading stage." *See Declaration of Robert Clarke in Support of Plaintiff's Motion to Remand,* Ex. 3 at 40-49 (In re Vioxx Cases, Case No. JCCP 4247 "Revised Ruling on Request for Reconsideration," May 16, 2006)

The general rule under California law is that distributors and other "participants in the chain of distribution" are strictly liable in defective products [*12] cases. *Bostick, 147 Cal. App. 4th at 88*. This Court has been unable to find, nor has either party cited, a case under California law which creates an exception in strict liability for distributors in prescription drug cases. This Court cannot conclude that it is obvious that the general rule of distributor liability does not apply under the allegations in this case. *McCabe, 811 F.2d at 1339*. The Court further concludes that the learned intermediary doctrine does not prevent Plaintiff from stating a claim against McKesson because Plaintiff has alleged that McKesson

failed to properly warn physicians, including Plaintiff's physician. *Brown, 44 Cal. 3d at 1062; see also Carlin v. Superior Court, 13 Cal. 4th 1104, 1118, 56 Cal. Rptr. 2d 162, 920 P.2d 1347 (1996).*

In the Complaint, Plaintiff alleges that Defendant McKesson distributed, promoted, labeled, and marketed Tegretol to Plaintiff, and that Plaintiff was injured when she used Tegretol. Plaintiff further alleges that Defendant McKesson knew that Tegretol was dangerous, yet failed to warn physicians and patients of the drug's dangerous propensities. The Court concludes that it is not "obvious" that Plaintiff has failed to state a claim against Defendant McKesson under  [*13] settled California law, *McCabe, 811 F.2d at 1339,* and that Defendant Novartis has not met its "heavy burden" to show that McKesson has been fraudulently joined. *Plute v. Roadway Package Sys., Inc., 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001); see also Black, CV 03-8730 NM (AJWx), 2004 U.S. Dist. LEXIS 29860, *7 (C.D. Cal. Mar. 3, 2004), citing Purdue Pharma, LP, 227 F. Supp. 2d at 849* ("a federal court should hesitate before pronouncing a state claim frivolous, unreasonable, and not even colorable in an area yet untouched by the state courts."). Accordingly, this matter is remanded to state court.

## CONCLUSION

IT IS HEREBY ORDERED that (1) Plaintiff's motion to remand (Doc. # 11) to state court is GRANTED; (2) Defendant's evidentiary objections are DENIED as moot; and (3) this case is hereby remanded to the California Superior Court.

DATED: August 10, 2007

WILLIAM Q. HAYES

United States District Judge

117MCD

********** Print Completed **********

Time of Request: Thursday, November 29, 2007  11:28:42 EST

Print Number:   1842:62414805
Number of Lines: 202
Number of Pages:

Send To:  DECARLI, DEBRA
          LEVIN SIMES KAISER & GORNICK LLP
          44 MONTGOMERY STREET, 36TH FLOOR
          SAN FRANCISCO, CA 94104