1   Deborah C. Prosser (SBN 109856)
    Email: Deborah.Prosser@KutakRock.com
2   Stephanie A. Hingle (SBN 199396)
    Email: Stephanie.Hingle@KutakRock.com
3   KUTAK ROCK LLP
    515 South Figueroa Street, Suite 1240
4   Los Angeles, CA  90071-3329
    Telephone:   (213) 312-4000
5   Facsimile:    (213) 312-4001

6   Attorneys for Defendants
    GENERAL ELECTRIC COMPANY, GE
7   HEALTHCARE INC. and GE HEALTHCARE
    BIO-SCIENCES CORP.
8
    Kenneth P. Conour (SBN 148064)
9   Email: Kenneth.Conour@dbr.com
    Drinker Biddle & Reath LLP
10  50 Fremont Street, 20th Floor
    San Francisco, CA  94105-2235
11  Tel: 415-591-7500
    Fax: 415-591-7510
12
    Attorneys Defendants
13  BAYER CORPORATION and
    BAYER HEALTHCARE
14  PHARMACEUTICALS INC.

15              **UNITED STATES DISTRICT COURT**

16      **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

| | |
|---|---|
| 17  PETER JAY GERBER and MIRIAM GOLDBERG, | CASE NO.  CV-07-5918-JSW |
| 18                                        Plaintiffs, | **REMOVING DEFENDANTS' OPPOSITION TO MOTION FOR REMAND** |
| 19  | |
| 20              v. | **[Filed Concurrently With Request For Judicial Notice; Decl. of Vito Pulito; Decl. of Deborah C. Prosser; Decl. of Larry Lawson; Decl. of Carol Seeth; Decl. of Allan Pont; and Proposed Order]** |
| 21  BAYER CORPORATION AND BAYER HEALTHCARE PHARMACEUTICALS, INC.; BMC DIAGNOSTICS, INC.; CALIFORNIA PACIFIC MEDICAL CENTER; GENERAL ELECTRIC COMPANY; GE HEALTHCARE, INC.; GE HEALTHCARE BIO-SCIENCES CORP.; McKESSON CORPORATION; MERRY X-RAY CHEMICAL CORP.; and DOES 1 through 35 | |
| 22 | **[Jury Trial Demanded]** |
| 23 | (San Francisco County Superior Court Case No. CGC07468577) |
| 24 | |
| 25 | Reserved Hearing: |
| 26 | |
| 27              Defendants. | Date:        January 11, 2008
Time :       9:00 a.m.
Place :      Courtroom 2, 17th Floor |
| 28 | |

# TABLE OF CONTENTS

Page

SUMMARY OF ARGUMENT.................................................................vi

I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND..........1

    A.    THE DISTRIBUTOR DEFENDANTS……....….................1
    B.    THE FACILITY DEFENDANTS………………….….........1
    C.    ALTERNATIVE REQUEST TO DEFER RULING ON
        REMAND………………………………………......…..2

II.    ARGUMENT...........................................................................2

    A.    THE FRAUDULENT JOINDER STANDARD……………......…2

    B.    PLAINTIFFS' CLAIMS AGAINST THE FACILITY
        DEFENDANTS ARE NOT VIABLE BY OPERATION
        OF CALIFORNIA LAW………………………......……….3

    C.    NONE OF PLAINTIFFS' CLAIMS AGAINST
        THE DISTRIBUTOR DEFENDANTS ARE
        VIABLE…………………………………………….4

    D.    PLAINTIFFS' CLAIMS AGAINST THE
        NON-DIVERSE DEFENDANTS ARE
        TIME-BARRED……………………………………….6

    E.    PLAINTIFFS HAVE FAILED TO MEET THEIR
        BURDEN OF PROOF TO INVOKE APPLICATION
        OF THE DELAYED DISCOVERY RULE………………….7

    F.    PLAINTIFFS' CLRA CLAIMS ARE
        JURISDICTIONALLY BARRED DUE
        TO LACK OF NOTICE………………………………10

    G.    ESTABLISHED PRACTICE IN THE NORTHERN
        DISTRICT IS TO STAY THIS MATTER AND
        DEFER THE REMAND MOTION…………………………11

4838-5085-6706.1

REMOVING DEFENDANTS' OPPOSITION.................................CASE NO. CV-07-5918-JSW
TO MOTION FOR REMAND

KUTAK ROCK LLP
ATTORNEYS AT LAW
LOS ANGELES

i

1        1.     This Court Should Defer Ruling on the

2              Remand Motion………………………………………..11

3        2.     The Removing Defendants Will Be

4              Prejudiced if the Remand Motion is Heard First…………12

5      H.     PLAINTIFFS CANNOT ASSERT A VIABLE RIGHT

6          TO NON-SEVERANCE OF THEIR CLAIMS…………………..13

7        1.     Consolidation or Severance of Claims May

8              Occur in Either Forum…………………………………13

9        2.     Plaintiffs' Claim of Prejudice is Without Foundation………14

10

11    III.     CONCLUSION………………………………………………15

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

4838-5085-6706.1

28

KUTAK ROCK LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Owens-Corning Fiberglass Corp.*
    (1991) 53 Cal.3d 987 ...................................................................5

*Black vs. Merck & Company*
    2004 WL 754882 (N.D. Cal. 2007)......................................5, 6

*Cantu v. Resolution Trust Corp.*
    (1992) 4 Cal.App.4th at 857...............................................9

*Carlin v. Superior Court*
    (1996) 13 Cal.4th 1104.....................................................5

*Cattie v. Wal-Mart Stores, Inc.*
    504 F.Supp.2d 939 (S.D. Cal. 2007)...................................10

*Conroy v. Fresh Del Monte Produce, Inc.*
    325 F.Supp.2d 1049 (N.D. Cal. 2004)................................11

*Fox v. Ethicon Endo-Surgery, Inc.*
    35 Cal.4th 797.............................................................7, 8

*Graves v. Corbin*
    (1890) 132 U.S. 571 [10 S.Ct. 196, 200]............................8

*In re Food Lion, Inc.*
    73 F.3d 528, (4th Cir. 1996)..........................................13

*In re Gen. Motors Class E Stock Buyout Sec. Litig.*
    696 F.Supp1546 (J.P.M.L. 1988).....................................14

*In re Haven Indus. Inc., Sec. Litig.*
    415 F.Supp. 396 (J.P.M.L. 1976).....................................14

*In re Japanese Elec. Prods. Antitrust Litig.*
    388 F.Supp. 565 (J.P.M.L. 1975).....................................14

*In re Midwest Milk Monopolization Litig.*
    386 F.Supp. 1401 (J.P.M.L. 195).....................................14

*In re Viatron Computer Sys. Corp. Litig.*
    86 F.R.D. 431 (D.Mass. 1980).........................................14

*Johnson v. Merck & Company*
    2007 WL 754882 (N.D.Cal 2007).......................vi, 2, 11, 12

4838-5085-6706.1

REMOVING DEFENDANTS' OPPOSITION...........................CASE NO. CV-07-5918-JSW
TO MOTION FOR REMAND

KUTAK ROCK LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

*Jolly v. Eli Lilly & Co.*
(1988) 44 Cal.3d 1103……………………………………………………….6

*Krupnick v. Duke Energy Morro Bay, L.L.C.*
(2004) 115 Cal.App.4th 1026……………………………………………….6

*Laster v. T-Mobile USA, Inc.*
407 F.Supp.2d 1181 (S.D. Cal. 2005)………………………………………10

*Leeson v. Merck & Company*
2006 WL 3230047 (E.D. Cal. 2006)………………vi, 5, 6, 11, 12, 13, 15

*Local Union 598 v. J.A. Jones Constr. Co.*
(1988) 846 F.2d 1213 (9th Cir.)……………………………………………..8

*Maffei v. Allstate Ins. Co.*
412 F. Supp. 2d 1049 (E.D. Cal. 2006)…………………………………vi, 3

*Marik v. Superior Court*
(1987) 191 Cal.App.3d 1136…………………………………………………4

*Ochs v. Pacificare of California*
(2004) 115 Cal.App.4th 782…………………………………………………9

*Outboard Marine Corp. v. Superior Court*
(1975) 52 Cal.App.3d 30………………………………………….........10

*People v. Pacific Health Corp.*
(1938) 12 Cal.2d 506………………………………………………………..4

*Ritchey v. Upjohn Drug Co.*
139 F.3d 1313 (9th Cir. 1998)………………………………………………7

*Rivers v. Walt Disney Co.*
980 F.Supp. 1358, 1361 (C.D. Cal. 1997)…………………………………13

*Saliter v. Pierce Bros. Mortuaries*
(1978) 81 Cal.App.3d 292…………………………………………………..7

*Smith v. Mail Boxes, Etc.*
191 F.Supp.2d 1155 (E.D. Cal. 2002)………………………………………11

*TPS Utilicom Services, Inc.*
223 F.Supp.2d 1089 (C.D. Cal. 2002)…………………………………….2, 6

*Von Grabe v. Spring PCS*
312 F.Supp.2d 1285 (S.D. Cal. 2003)………………………………………10

*Wilson v. Republic Iron & Steel Co.*
257 U.S. 92, 97 (1921)……………………………………………………….3

4838-5085-6706.1

REMOVING DEFENDANTS' OPPOSITION……………………………CASE NO. CV-07-5918-JSW
TO MOTION FOR REMAND

KUTAK ROCK LLP
ATTORNEYS AT LAW
LOS ANGELES

**Statutes**

28 U.S.C. § 1407(a)……………………………………………………………13, 14

Cal. Business & Professions Code § 2032…………………………………………..3

Cal. Business & Professions Code § 2051…………………………………………..3

Cal. Business & Professions Code § 2052…………………………………………..3

Cal. Business & Professions Code § 2053…………………………………………..3

Cal. Business & Professions Code § 2400…………………………………………..3

Cal. Civil Code § 1782 (a)(1)………………………………………………......10

Cal. Civil Code § 1782 (d)…………………………………………………..10, 11

Cal. Code of Civil Procedure former § 340 (3)………………………………......3

Cal. Code of Civil Procedure § 340.1(a)……………………………………….6, 8

Cal. Code of Civil Procedure § 364……………………………………………6, 7

Cal. Code of Civil Procedure § 430.70…………………………………………..9

Cal. Code of Civil Procedure § 597.5……………………………………………15

Cal. Code of Regs., Title 22 § 70701 (a)(1)(D)………………………………….3

Cal. Evidence Code § 452……………………………………………………...9

Cal. Health & Safety Code § 1250(a)…………………………………………3, 4

4838-5085-6706.1

# SUMMARY OF ARGUMENT

The Remand Motion should be denied pursuant to 28 U.S.C. 1441(b). The non-diverse Distributor Defendants  McKesson Corporation ("McKesson") and Merry X-Ray Chemical Corp. ("Merry"),  and the non-diverse Facility Defendants BMC Diagnostics, Inc. ("BMC") and California Pacific Medical Center ("Pacific") were fraudulently joined. There is no reasonable basis for any of Plaintiffs' claims against these defendants.  (See *Maffei v. Allstate Ins. Co.*, 412 F. Supp. 2d 1049, 1053 (E.D. Cal. 2006).)

(1)    Plaintiffs' claims against the Facility Defendants are not viable because they are California Corporations, and thus are not health care providers against which claims for professional negligence can be brought.

(2)    Plaintiffs' claims against the Distributor Defendants are not viable because California law does not recognize strict liability or negligent failure to warn causes of action against distributors in the prescription drug context.  (See *Leeson v. Merck & Company*, 2006 WL 3230047 *3 (E.D. Cal.).)

(3)    The applicable statutes of limitation had run as to all non-diverse defendants at the time Plaintiffs' Complaint was filed.

(4)    Plaintiffs failed to meet their burden of pleading facts to support application of the delayed discovery rule and cannot cure their pleading defects.

(5)    Plaintiffs' Consumer Legal Remedies Act ("CLRA") claims are jurisdictionally barred due to violation of the statutory notice requirements.

(6)    Plaintiffs' claims of prejudice are baseless as there is no evidence that their claims will be severed or that they are entitled to preferential trial.

Alternatively, the previously filed motion for stay ("Stay Motion") should be granted, and ruling on the motion for remand ("Remand Motion") deferred, to prevent potentially inconsistent rulings, in light of the pending Multi-District Litigation ("MDL") motion involving all federal Gadolinium based contrast agents ("GBCA").  (See *Johnson v. Merck & Company*, 2007 WL 754882 (N.D.Cal)[1] (Hon. William Alsup).

---

[1] See Prosser Decl. Exhibit "D."

Defendants General Electric Company, GE Healthcare Inc., GE Healthcare Bio-Sciences Corp., Bayer Corporation and Bayer Healthcare Pharmaceuticals, Inc. (hereinafter "Removing Defendants") hereby submit their Opposition to Plaintiffs Peter J. Gerber and Miriam Goldberg's ("Plaintiffs") Motion for Remand ("Remand Motion").

## I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.    THE DISTRIBUTOR DEFENDANTS

The Complaint does not, and cannot, identify any conduct specific to the Distributor Defendants. Neither McKesson nor Merry designed, manufactured or administered GBCA, including the Magnevist™ and Omniscan™ products at issue in this case.   (Larry Lawson Declaration ¶ 2-3). (Vito Pulito Declaration ¶¶ 2-3).   Neither McKesson nor Merry designed, assembled or otherwise provided packaging, labels or warnings for any GBCA, including Magnevist™ and Omniscan™. (See *Id.*)

### B.    THE FACILITY DEFENDANTS

The Complaint alleges professional negligence claims and related breach of warranty claims against the Facility Defendants, neither of which provide professional services.   BMC is a California corporation, not a California professional corporation. (*Request for Judicial Notice* Exhibit "A.")  By operation of law, corporations do not and cannot practice medicine.   (Section III B, infra.) Likewise, Pacific is a professional corporation, not authorized to practice medicine.   It does not employ physicians and doctors who make the discretionary decisions to prescribe MRIs or MRAs with or without contrast agents, and does not employ the radiologists who conduct the MRIs and MRAs at the facilities. (Allan Pont, M.D. Declaration ¶¶ 2-5.)

Prior to learning of the removal, Pacific filed a demurrer and motion to strike relating to the Complaint in state court. This briefing sets forth the California authority requiring dismissal of the claims against Pacific.  (See Carol Sleeth Declaration ¶ 2, Exhibit "A.")  The arguments on Pacific's demurrer are equally applicable to BMC as they are both corporations improperly sued for professional negligence.

///

### C.    ALTERNATIVE REQUEST TO DEFER RULING ON REMAND

At the time of removal, the Removing Defendants filed a Stay Motion in light of the pending MDL motion filed by several plaintiff's firms across the United States. (Deborah C. Prosser Declaration ¶ 2, Exhibit "A.") The MDL petition seeks to coordinate the 38 now pending GBCA products cases throughout the various federal district courts. The hearing before the MDL Panel has been set for January 30, 2008 (See *Id*.)  None of the Removing Defendants herein, have objected to the creation of an MDL for these cases. (Prosser Decl. ¶ 3.)

Currently, remand issues are present in both this case and in *Irven S. Shelton v. General Electric Company, et al.*, Civil Action No. 07-01951 -- a case originally filed against GE Healthcare Inc. and state medical providers in Louisiana state court which has been removed to the United States District Court, Western District of Louisiana.  GE likewise contends that the non-diverse state facilities were fraudulently joined to defeat diversity jurisdiction.  (Prosser Decl. ¶ 4.)   Plaintiffs filed a motion to remand on December 11, 2007.  (See *Id*.)  In addition, in the future as other GBCA cases are filed, remand issues will be prevalent.   Absent a stay, there is a distinct possibility of inconsistent rulings by different federal district courts on virtually identical remand issues.

Plaintiffs request that their later filed Remand Motion be heard prior to the Stay Motion.  (*Plaintiffs' Opposition to Stay Motion* 1:25-27.)  This is contrary to practice in the San Francisco District.  (See *Johnson v. Merck & Company*, 2007 WL 754882 (N.D.Cal) (grant of motion to stay obviates need to rule on remand motion).)

## II.    <u>ARGUMENT</u>

### A.    THE FRAUDULENT JOINDER STANDARD

Fraudulent joinder exists "when there is no possibility of recovery against a resident defendant 'according to the settled rules of the state'." (*TPS Utilicom Services, Inc.*, 223 F.Supp.2d 1089, 1102 (C.D. Cal. 2002).) While the test for fraudulent joinder resembles a Rule 12(b)(6) analysis in that the federal court accepts non-conclusory allegations as true, the Court's inquiry is broader than Rule 12(b)(6).  (*Id.* ) A defendant is

KUTAK ROCK LLP
ATTORNEYS AT LAW
LOS ANGELES

REMOVING DEFENDANTS' OPPOSITION
TO MOTION FOR REMAND

CASE NO. CV-07-5918-JSW

2

1    fraudulently joined where there is no reasonable basis in fact for a claim against it.   (See

2    *Maffei v. Allstate Ins. Co.*, 412 F. Supp. 2d 1049, 1053 (E.D. Cal. 2006) (citing *Wilson v.*

3    *Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921) (joinder was fraudulent where

4    defendant had 'no real connection [to] the controversy' because the allegations against the

5    defendant were 'without any reasonable basis in fact').)   As set forth below, no reasonable

6    basis exists for proceeding against any of the non-diverse defendants.

7    **B.      PLAINTIFFS' CLAIMS AGAINST THE FACILITY DEFENDANTS**

8    **ARE NOT VIABLE BY OPERATION OF CALIFORNIA LAW**

9            As set forth in the demurrer filed by Pacific in state court (Sleeth Decl. Exh. "A"),

10   no professional negligence claims lie against the Facility Defendants because they are not

11   professional corporations, and thus, perform only non-discretionary services at the

12   instruction of licensed physicians (separate legal entities under California law).[2]

13           Plaintiffs allege that the Facility Defendants are California corporations.

14   (*Complaint* ¶ 36.)   California law prohibits lay corporations from practicing medicine.

15   (See Cal. Business & Professions Code §§ 2052 and 2400.)   The practice of medicine in

16   California requires a physician or surgeon's certificate.   (See Cal. Business & Professions

17   Code § 2051.)   Only natural persons may be licensed under the Medical Practice Act.

18   (See Cal. Business & Professions Code § 2032.)   It is unlawful to practice medicine

19   without a license except as authorized by law.   (See Cal. Business & Professions Code

20   §§ 2052 and 2053.)   Under Section 2400, "corporations and other artificial entities shall

21   have no professional rights, privileges or powers."

22           Pursuant to Health & Safety Code § 1250(a), Pacific is self-governing and

23   independently responsible from the hospital and does not employ either the physicians

24   who may have prescribed the MRIs and the MRAs for Mr. Gerber or the radiologists who

25   may have administered these procedures.   (Pont Decl. ¶ 2-5, see also Cal. Health & Safety

26   Code § 1250 (a); Cal. Code of Regs., Title 22 § 70701 (a)(1)(D).)   BMC is similarly

27

28

---

[2] It is not suggested that a professional negligence claim can never be brought against a medical facility. The distinction here turns on the Facility Defendants' status as corporations and the fact that Mr. Gerber's health care providers were separate legal entities, not employees of the Facility Defendants.

1    situated given their designation with the California Secretary of State as a "California

2    Corporation." (See *Request for Judicial Notice*.) As California corporations, the Facility

3    Defendants cannot practice medicine. The California Supreme Court has long held that,

4    "[i]t is an established doctrine that a corporation may not engage in the practice of such

5    professions as law, medicine or dentistry." (See *People v. Pacific Health Corp.* (1938) 12

6    Cal.2d 506, 509.) More recently, in *Marik v. Superior Court* (1987) 191 Cal.App.3d

7    1136, the court reaffirmed this prohibition. (Sleeth Decl. Exh. "A.")

8        Because Plaintiffs' claims sound in professional negligence, they are barred by

9    operation of law. Plaintiffs allege the Facility Defendants "provided professional medical

10   services," including "subject[ing] Mr. Gerber to MRIs and MRAs using Gadolinium-

11   based contrast agents." (*Complaint*  ¶ 81); they knew or should have known that these

12   imaging studies posed a serious risk to patients with impaired renal function, such as Mr.

13   Gerber. (*Complaint*  ¶ 82); they were negligent in "examining, treating and caring" for

14   Mr. Gerber. (*Complaint*  ¶ 84); they failed to "correctly ascertain, assess and account for

15   Plaintiff's renal function" and failed to communicate the warnings, instructions, risks,

16   dangers and side effects to Mr. Gerber (*Complaint* ¶ 85.)

17       California corporations cannot practice medicine. No physicians employed by the

18   Facility Defendants could examine, treat or care for Mr. Gerber, assess his renal function,

19   order the MRIs and/or MRAs, determine which contrast agent to employ, and convey risk

20   information to Mr. Gerber (See Health and Safety Code § 1250(a); See also Pont Decl. ¶¶

21   2-5). As the *Marik* court noted, these are medical considerations performed by

22   individuals with a medical license separate from business considerations performed by

23   California corporation such as the Facility Defendants. (See *Marik*, 191 Cal.App.3d at

24   1140, fn 4.) Thus, no cause of action for professional negligence exists.

25   **C.    NONE OF PLAINTIFFS' CLAIMS AGAINST THE DISTRIBUTOR**

26   **DEFENDANTS ARE VIABLE**

27       Plaintiffs' claims against the Distributor Defendants for strict liability and

28   negligent failure to warn fail as a matter of state law. In the context of prescription drugs,

1  no California state court has ever recognized a cause of action against distributors for

2  failure to warn. (See *Remand Motion* pp. 8-9, citing *Black vs. Merck & Company*, 2004

3  WL 754882 (N.D. Cal. March 8, 2007)[3] (in strict liability context, acknowledging that

4  California courts have not "addressed whether distributors of prescription drugs can be

5  strictly liable for failure to warn"); see also *Carlin v. Superior Court* (1996) 13 Cal.4[th]

6  1104, 1111-12 (citing *Anderson v. Owens-Corning Fiberglass Corp.* (1991) 53 Cal.3d

7  987, 1001) (in negligence context, "the knowledge or knowability requirement for failure

8  to warn infuses some negligence concepts into strict liability cases" such that "in the

9  failure-to-warn context, strict liability is to some extent a hybrid of traditional strict

10  liability and negligence doctrine .")[4]

11      Given this absence of state authority, the overwhelming majority of California

12  federal district courts have ruled on remand motions that there is no viable cause of action

13  against non-diverse distributor defendants, including specifically, but not limited to,

14  Defendant McKesson, and that the distributors were fraudulently joined. (See *Leeson v.*

15  *Merck & Company*, 2006 WL 3230047 *3 (E.D. Cal.).)[5]  In denying the motion to remand

16  where McKesson was joined as a non-diverse defendant, the *Leeson* Court noted that

17  fraudulent joinder of McKesson (and other similarly situated distributor defendants) has

18  been raised in numerous cases throughout California. (See *Id.*)  **"Yet only a handful of**

19  **judges have found that California law does not clearly exempt distributors from**

20  **strict liability for failure to warn."**  (*Id.* (referencing as the exception *Black*, supra.

21  (holding that Merck failed to show no possible claim against McKesson) (emphasis

22  added).)  "The **glaring exception** to this practice has been the Central District of

---

23

24  [3] See Prosser Decl. Exhibit "E."

25  [4] The *Carlin* Court distinguished negligence and strict liability as against *manufacturers* of prescription drugs on grounds not relevant to the instant Remand Motion, where the claims are for negligence and strict liability as against *distributors* of prescription drugs. (See *Carlin v. Superior Court*, 13 Cal.4[th] at 1112

26  (*citing Anderson v. Owens-Corning Fiberglass Corp.* (1991) 53 Cal.3d 987, 1001)    (the only difference between the two concepts is that in negligence, the plaintiff must also prove that the failure to warn fell

27  below the accepted standard of care).)

28  [5] See Prosser Decl. Exhibit "F."

REMOVING DEFENDANTS' OPPOSITION                CASE NO. CV-07-5918-JSW
TO MOTION FOR REMAND

1  California, where the court has routinely remanded cases involving Vioxx and

2  McKesson." (*Leeson v. Merck & Company*, 2006 WL 3230047 *3.)

3      Despite Plaintiffs' urging[6] that this Court adopt this "glaring exception" practiced

4  by the Central District, espoused in *Black v. Merck*, supra., the *Leeson* Court's reliance on

5  the great weight of contrary authority is far more reasoned.  To rule that there may be

6  viable failure to warn claims against the Distributor Defendants under state law would be

7  tantamount to fabricating state law out of thin air.  Indisputably, current state law does not

8  recognize such a claim "under the settled rules of the state." (See *TPS Utilicom*, 223

9  F.Supp.2d at 1102.)

10  **D.    PLAINTIFFS' CLAIMS AGAINST THE NON-DIVERSE**

11      **DEFENDANTS ARE TIME-BARRED**

12      On the face of the Complaint, Plaintiffs concede that, absent delayed discovery for

13  fraudulent concealment, their claims are barred. (*Complaint* ¶¶ 67-68)  Plaintiffs' causes

14  of action against the non-diverse defendants began to run in 1997, the date Plaintiffs pled

15  Mr. Gerber received his first Gadolinium-based contrast agent injection which allegedly

16  caused him to contract NSF. (*Complaint* ¶¶ 1, 49 and 55.)  The applicable statutes of

17  limitation required Plaintiffs to bring their claims against the Distributor Defendants

18  within one (1) year,[7] and against the Facility Defendants within three (3) years.[8]

19  Accordingly, all of Plaintiffs' claims against all of the non-diverse defendants had run by

20  the end of year 2000.

21      In addition, specifically as to the Facility Defendants, it can reasonably be inferred,

22  from Plaintiffs' failure to comply with the notice provisions of Section 364 of the Cal.

23  _____

24  6 See *Remand Motion* 8:19-26.
    7 See Cal. Code of Civil Procedure former § 340, subd. 3; see also *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d

25  1103, 1109.)  When Mr. Gerber received his first injection of the contrast agent in 1997, the former Cal.
    Civ. Pro. Code § 340 (3) provided a one-year statute of limitations for personal injury actions.  In 2002,

26  the California Legislature changed the limitations period for personal injury actions from one year to two.
    Stats. 2002, ch. 448, §1.  However, the two-year statute of limitations does not operate retroactively for

27  actions already time-barred by the former one-year statute of limitations. (See *Krupnick v. Duke Energy
    Morro Bay, L.L.C.* (2004) 115 Cal.App.4th 1026.)

28  8 See Cal. Code of Civil Procedure § 340.5

1    Code of Civil Procedure, that Plaintiffs lack any genuine intent to pursue claims against

2    these non-diverse defendants.  Removing Defendants readily conceded in the Notice of

3    Removal that this requirement is not a jurisdictional bar.  But the failure to provide the

4    requested notice strongly suggests that the Facility Defendants were joined solely for

5    strategic purposes to defeat diversity.

6    **E.    PLAINTIFFS HAVE FAILED TO MEET THEIR BURDEN OF**

7    **PROOF TO INVOKE APPLICATION OF THE DELAYED**

8    **DISCOVERY RULE**

9    Plaintiffs' two boilerplate allegations of delayed discovery do not pass muster

10    under California law.  (*Complaint* ¶ 67-68.)  The Complaint could only survive a

11    demurrer under state law if it contained facts to show that the delayed discovery rule

12    applied.  (See *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313 (9th Cir. 1998); see also *Fox v.*

13    *Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797.)  Conclusory allegations are not sufficient.

14    (See *Saliter v. Pierce Bros. Mortuaries* (1978) 81 Cal.App.3d 292.)  Because Plaintiffs

15    identified only 1997 as the operative date, it was incumbent upon them to assert specific

16    facts on the face of the complaint which would trigger the delayed discovery rule.

17    The California Supreme Court has expressly held that the plaintiff has the burden

18    in the complaint to plead specific facts regarding the circumstances of delayed discovery

19    in order for the complaint to survive a demurrer based on statute of limitations.  (*Fox v.*

20    *Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th at 797-98, 803.)  Under California's delayed

21    discovery rule, the limitations period begins to run on a personal injury claim when the

22    plaintiff has reason to suspect an injury and any wrongful cause "unless the plaintiff

23    pleads and proves that a reasonable investigation at that time would not have revealed a

24    factual basis for that particular cause of action."  (See *Id.* at 803.)

25    The *Fox* Court ruled  that "in order to employ the discovery rule to delay accrual of

26    a cause of action, a plaintiff must demonstrate that he or she conducted a reasonable

27    investigation of all potential causes of action of his or her injury."  The Court charged

28    plaintiffs "with knowledge of the information that would have been revealed by such an

1    investigation." (*Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th at 808 and 811.)  *Fox*

2    imposed an affirmative duty on plaintiffs to "pursue their claims diligently by making

3    accrual of a cause of action contingent on when a party discovered or *should have*

4    discovered that his or her injury had a wrongful cause." (*Id.* (citing Cal. Code of Civil

5    Procedure § 340.1(a)) (emphasis in the original).)  In *Fox*, plaintiff sued her surgeon and

6    the hospital for negligence related to a gastric bypass surgery, and two years later,

7    amended her complaint to bring strict liability claims against the manufacturer of a

8    surgical stapler used during the surgery.  The Court ruled that the first amended complaint

9    was time-barred because it did not specifically allege facts relating to delayed discovery

10   of her claim against the stapler manufacturer, and affirmed the appellate court's grant of

11   leave to amend the defective complaint.  (See *Fox*, 35 Cal.4th at 808 and 811.)

12       Under *Fox*, Plaintiffs should have pled at a minimum, the date Mr. Gerber

13   contracted NSF, the date it was discovered that his NSF was allegedly due to the wrongful

14   act(s) of any defendant, the facts showing how it was discovered that Mr. Gerber's NSF

15   was due to any alleged wrongful act, and what investigation was conducted which could

16   *not* reasonably have led to the discovery of such facts before the running of the statute of

17   limitations.  (See *Fox* 35 Cal.4th at 809.)

18       Plaintiffs fail to allege any such facts, and instead, in their Opposition, argue that

19   their failure to do so should be excused as "inartful" pleading or as a "curable defect."

20   (See *Remand Motion* at 3:20-22; 4:24-25; 6:7-9.)  To the contrary, Plaintiffs are held to

21   the allegations in their Complaint at the time of removal for purposes of determining

22   whether fraudulent joinder has occurred.  It is well-established that removability is

23   determined at the time the petition for removal is filed.  (See *Graves v. Corbin* (1890) 132

24   U.S. 571, 585 [10 S.Ct. 196, 200].)  "The case as made by the bill [complaint], and as it

25   stood at the time of the petition for removal, is the test of the right to removal." (*Id.*; see

26   also *Local Union 598 v. J.A. Jones Constr. Co.*, (1988) 846 F.2d 1213, 1215 (9th Cir.).)

27       While the *Fox* court affirmed the grant of leave to amend to add factual allegations

28   of delayed discovery, Plaintiffs in the instance case cannot cure through amendment.

Plaintiffs have inexplicably committed themselves in the Complaint to a fictional time line, to wit, that "risk of gadolinium-based contrast agents to individuals with impaired kidney function has been known since at least 1994;" that "the toxicity of gadolinium to humans has been known since at least 1965;" and that "[t]he greater stability of the ring structure [as opposed to the linear or chain chemical structure of the contrast agents in question] has been known since at least 1991." (*Complaint* at ¶¶ 52, 46 and 50.)

Notwithstanding that these allegations are without any scientific support, California law prohibits a plaintiff from "blowing hot and cold" in their pleading (i.e., from amending a complaint to plead new facts inconsistent or contradictory to original allegations in order to salvage a pleading.) (See *Ochs v. Pacificare of California* (2004) 115 Cal.App.4th 782, 797; see also *Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th at 857, 877) (a plaintiff may not avoid a demurrer by pleading facts in an amended complaint that contradict the facts pled in the original complaint or by suppressing facts that prove the pleaded facts false).) By asserting that knowledge of the toxicity of Gadolinium arose as early as 1965, and that the risk of GBCA to patients with impaired kidney function was known by 1994 – all of which predate Mr. Gerber's first symptoms in 1997 (see *Complaint* ¶¶ 44 and 50-52) - then as a matter of law and logic, plaintiff's duty to conduct a reasonable investigation into the cause of his illness commenced in 1997 at the onset of his NSF symptoms. (See *Fox*, 35 Cal.4th at 808-810.)

Plaintiffs have the burden of making a factual showing that the original pleading could be cured, and failed to meet this burden in their Remand Motion. (See *Cantu v. Resolution Trust Corp.*, 4 Cal.App.4th at 744.) To evade the statute of limitations, Plaintiffs would have to allege a flatly contradictory time line i.e., change these dates by some forty years, in order to justify the alleged delayed discovery within the last two years. (*Complaint* ¶¶ 67-68). Such a factually conflicting amendment is impermissable. (See *Ochs v. Pacificare of California*, 115 Cal.App.4th at 797; see also *Cantu v. Resolution Trust Corp.*, 4 Cal.App.4th at 877-78 (citing Cal. Evidence Code § 452 and Cal. Code of Civil Procedure § 430.70).)

In their Remand Motion, Plaintiffs incorrectly argue they were not required to undertake any investigation until September 2007 when they claim that "Bayer and GE sent letters to healthcare providers warning them of the risk of NSF to kidney impaired individuals . . . ." (*Remand Motion* 6:4-9.) Any alleged warnings given in 2006 by the Removing Defendants are irrelevant since they are *nine years* after plaintiff alleges his NSF symptoms began. Since Plaintiffs have already conceded that they did not undertake any such investigation more than two years prior to the 2007 filing of the complaint (*Complaint* ¶¶ 67-68), they cannot invoke, or plead around, the delayed discovery rule here to resurrect time-barred claims in order to defeat removal.

## F.    PLAINTIFFS' CLRA CLAIMS ARE JURISDICTIONALLY BARRED DUE TO LACK OF NOTICE

Plaintiffs' failure to comply with the notice provisions of the Consumer Legal Remedies Act ("CLRA") requires dismissal of the cause of action with prejudice. (See *Laster v. T-Mobile USA, Inc.*, 407 F.Supp.2d 1181, 1195-96 (S.D. Cal. 2005); *Von Grabe v. Spring PCS*, 312 F.Supp.2d 1285, 1304 (S.D. Cal. 2003); *Cattie v. Wal-Mart Stores, Inc.*, 504 F.Supp.2d 939 (S.D. Cal. 2007).) Section 1782 of the Cal. Civil Code mandates that 30 days before commencing a CLRA action, the plaintiff must "[n]otify the person alleged to have employed or committed methods, acts, or practices declared unlawful by Section 1770 of the particular alleged violations of 1770." (Cal. Civil Code § 1782 (a)(1).) The notice provisions of the CLRA are jurisdictional and must be applied literally. (See *Outboard Marine Corp. v. Superior Court* (1975) 52 Cal.App.3d 30.)

Plaintiffs admit they did not provide the required notice and erroneously argue that they are exempt because the Complaint seeks only injunctive relief. Plaintiffs mis-cite Section 1782 (d) for the proposition that they could amend their complaint within 30 days of commencement of the action to seek damages, thereby circumventing the notice provisions of the CLRA. (*Remand Motion* 7:1-12, fn. 2.) However, Plaintiffs filed their Complaint on October 26, 2007, making their deadline to amend pursuant to Section 1782, November 21, 2007. The time to amend has lapsed.

1    In any event, Plaintiffs' Complaint does not limit recovery under the CLRA to

2    injunctive relief.  In fact, in their Ninth Cause of Action under the CLRA, Plaintiffs

3    specifically request "injunctive relief, restitution, any other relief this Court deems proper,

4    and attorneys' fee." (*Complaint* ¶ 122.)  In addition, Prayer No. 2, applicable to all causes

5    of action, seeks "[c]ompensatory damages in excess of the jurisdictional amount,

6    including, but not limited to pain, suffering, emotional distress, loss of enjoyment of life,

7    loss of consortium, and other non-economic damages in an amount to be determined at

8    trial of this action." (*Complaint* Prayer 2.)  Because Plaintiffs expressly seek non-

9    injunctive relief, Section 1782(d) does not apply, and Plaintiffs' CLRA claims are barred.

10    **G.    ESTABLISHED PRACTICE IN THE NORTHERN DISTRICT IS TO**

11    **STAY THIS MATTER AND DEFER THE REMAND MOTION**

12    **1.    This Court Should Defer Ruling on the Remand Motion**

13    Plaintiffs and defendants across the country in the GCBA litigation generally favor

14    granting of the MDL petition.  This important factor militates in favor of this Court

15    deferring any ruling on the Remand Motion and granting the Stay Motion.  In contrast,

16    Plaintiffs' ill-advised request to have their Remand Motion ruled upon prior to the Court

17    considering the earlier filed Stay Motion conflicts with the doctrines of judicial economy

18    and equity, and with established practice in the Northern District of California.

19    Judicial economy will be well-served by deferring the Remand Motion. Generally,

20    federal courts should resolve jurisdictional issues before determining whether a stay is

21    appropriate. (See *Smith v. Mail Boxes, Etc.*, 191 F.Supp.2d 1155, 1157 (E.D. Cal. 2002).

22    However, "the calculus changes somewhat when deference to a MDL court will further

23    'the uniformity, consistency, and predictability in litigation that underlies the MDL

24    system.'" (*Leeson v. Merck & Company*, 2006 WL 3230047 *1 (quoting *Conroy v. Fresh

25    *Del Monte Produce, Inc.*, 325 F.Supp.2d 1049, 1053 (N.D. Cal. 2004).)

26    Under these circumstances, the Northern District has consistently ruled that the

27    case should be stayed and the motion to remand deferred to the MDL court. In *Johnson v.

28    Merck & Company*, Hon. William Alsup ruled in virtually identical circumstances that the

1  granting of a motion to stay pending transfer of the case to an MDL obviates any need for

2  a ruling on the motion for remand. *Johnson* was one of multiple cases filed nationwide

3  against Merck & Company related to the drug VIOXX®. (See *Johnson v. Merck &*

4  *Company*, 2007 WL 754882 *2.)  As in the instant case, the plaintiff in *Johnson* also

5  named McKesson Corporation as an alleged non-diverse defendant in order to defeat

6  removal jurisdiction.   The VIOXX® defendants filed a motion to temporarily stay the

7  case pending transfer to an established MDL.  Plaintiffs sought to trump the stay issue by

8  filing a motion for remand based upon absence of diversity jurisdiction, and seeking to

9  have the remand motion heard prior to the stay motion.  (See *Id.*)

10      The Hon. William Alsup granted the motion for stay and declined to rule on the

11  motion for remand, stating:

12      Plaintiff argues that the merits of his motion to remand should be addressed
13      before a motion to stay is granted. In view of the MDL, however, doing so
        would unnecessarily duplicate work, and could lead to inconsistent
14      results....It would be an inefficient use of resources to unnecessarily
15      duplicate the efforts of the transferee judge, who will undoubtedly face
        most (if not all) of the same issues in dealing with the other pending
16      remand motions. (See *Id.*)

17      The fact that in *Johnson*, the MDL had already been established, does not

18  distinguish that case from the instant case. (See *Leeson v. Merck & Company*, 206 WL

19  3230047 *1 (E.D. Cal.) (stay granted prior to consideration of remand motion although

20  transfer to MDL had not been ordered).) With both plaintiffs and defendants generally

21  favoring  an MDL for the GBCA litigation, the remand motion in this case should await

22  the selection of an MDL judge, who can rule consistently on all remand issues. Otherwise,

23  there will be a high likelihood of inconsistent rulings, duplicative work and inefficient use

24  of resources by local district courts, including the instant Court.

25      **2.    The Removing Defendants Will Be Prejudiced if the Remand**

26          **Motion is Heard First**

27      The Removing Defendants stand to suffer some hardship and inequity if the Court

28  addresses the Remand Motion prior to the Stay Motion.  If this Court denies Plaintiffs'

1   Remand Motion, then Plaintiffs will have a "second bite at the apple" once the case is

2   transferred to the MDL court since the MDL court will necessarily address the issue of

3   fraudulent joinder of non-diverse defendants.  (See *Leeson v. Merck & Company*, 2006

4   WL 3230047 *4.)  "'Although transferee judges generally respect any orders of a

5   transferor judge,' experience teaches that this not always the case." (*Id.* (citing *Rivers v.

6   Walt Disney Co.*, 980 F.Supp. 1358, 1361 (C.D. Cal. 1997).)  The Removing Defendants

7   should not have to defend against the same motion repeatedly brought by the same

8   plaintiff.  (See *Leeson v. Merck & Company*, 206 WL 3230047 *4.)  If this Court finds

9   that the non-diverse defendants were not fraudulently joined, and the MDL court holds

10  otherwise in other cases across the country where non-diverse facilities and distributors

11  are also named, the Removing Defendants will be burdened with a contrary decision

12  because an order to remand is not appealable.  (See *Id.*)

13  ### H.    PLAINTIFFS CANNOT ASSERT A VIABLE RIGHT TO NON-

14  ### SEVERANCE OF THEIR CLAIMS

15  #### 1.    Consolidation or Severance of Claims May Occur in Either

16  #### Forum

17  Plaintiffs assert without any authority that if the Remand Motion is denied, their

18  state law claims against the fraudulently joined defendants will be severed and remanded

19  to state court, effectively bifurcating --and delaying -- the case.   To the contrary, once an

20  MDL court has been assigned, the entire action, including the causes of action against the

21  fraudulently joined defendants will be transferred to the MDL court.  (See 28 U.S.C.

22  § 1407(a).)  What rulings may be made by the MDL Panel to consolidate, sever or remand

23  claims before trial, is pure speculation and cannot serve as a basis for deciding whether

24  remand is appropriate now.

25  In any event, there is authority permitting the MDL court to keep all claims  (See

26  28 U.S.C. § 1407(a); see also *In re Food Lion, Inc.*, 73 F.3d 528, 531-532 (4th Cir. 1996)

27  ("[t]he multidistrict litigation statute was enacted as a means of conserving judicial

28  resources in situations where multiple cases involving common questions of fact were

1   filed in different judicial districts.  The statute permits the transfer of the various cases . . .

2   to a single judge for consolidated pretrial proceedings").)  "[T]ransfer under Section 1407

3   is not dependent upon a total identity of parties and issues but rather on the existence of

4   common questions of fact."  (*In re Haven Indus. Inc.*, *Sec. Litig.*, 415 F.Supp. 396, 398

5   (J.P.M.L. 1976) (citing *In re Japanese Elec. Prods. Antitrust Litig.*, 388 F.Supp. 565, 567

6   (J.P.M.L. 1975); see also *In re Gen. Motors Class E Stock Buyout Sec. Litig.*, 696 F.Supp.

7   1546, 1546-47 (J.P.M.L. 1988) (ordering transfer to avoid duplication of discovery even

8   though the cases involved different legal theories); *In re Viatron Computer Sys. Corp.*

9   *Litig.*, 86 F.R.D. 431, 433 (D.Mass. 1980) (substantial factual and legal overlap justifies

10  consolidation even where facts and liability theories are not found in another case.)

11      Moreover, questions regarding which claims should be dismissed, severed or

12  remanded are more properly addressed to the MDL court.  (See *In re Midwest Milk*

13  *Monopolization Litig.*, 386 F.Supp. 1401, 1403 (J.P.M.L. 1975) ("Although we are

14  sensitive to the arguments advanced by plaintiff, we believe that they should properly be

15  addressed to the transferee judge.  He is in the best position to determine whether claims

16  are susceptible to immediate remand or whether they are inextricably related to [the]

17  defense and counterclaim and the litigation pending . . .".).

18      Here, the claims against the fraudulently joined defendants involve questions of

19  fact and legal theories which are common to all of Plaintiffs' claims.  Similarly, all of the

20  named defendants share many affirmative defenses, including but not limited to statutes of

21  limitations defenses.  Thus, the MDL court will be in a better position to make rulings

22  which can be consistently applied in all GBCA cases where distributor and facility

23  defendants are named.

24          **2.    Plaintiffs' Claim of Prejudice is Without Foundation**

25      Plaintiffs' argument that severing their claims against the fraudulently joined

26  defendants would result in prejudice[9] is untenable.  In the unlikely event that the

27  _____

28  [9] Plaintiffs allege that Mr. Gerber is entitled to trial preference. (See *Stay Motion* 4:10-12.)  However, before the state court can confer preference, Plaintiffs must proffer evidence that "[t]he health of the party

professional negligence claims against the Facility Defendants were not dismissed at the pleading stage, the claims against the non-diverse medical provider defendants would likely be severed and tried separately under state law.  (See Cal. Code of Civil Procedure § 597.5 (mandating that action for professional negligence be bifurcated if statute of limitations defense is raised); see also *Leeson v. Merck & Company*, 2006 WL 3230047 * 4.)  Therefore, Plaintiffs' ability to pursue all of their claims against all defendants in a single proceeding is questionable in both state and federal court, and thus, there is no valid claim of prejudice.

## III.  CONCLUSION

Defendants respectfully request that this Court deny Plaintiffs' Remand Motion, or alternatively, stay this action and defer ruling on the Remand Motion.

KUTAK ROCK LLP

By: _Deborah C. Prosser_
  Deborah C. Prosser
  Stephanie A. Hingle
  Attorneys for Defendants
  GENERAL ELECTRIC
  COMPANY, GE HEALTHCARE
  INC. and GE HEALTHCARE BIO-
  SCIENCES, CORP.

Dated: December 20, 2007

DRINKER BIDDLE & REATH LLP

By: _Annette Stepanian_
  Kenneth P. Conour
  Annette Stepanian
  Attorneys for Defendants
  BAYER CORPORATION and
  BAYER HEALTHCARE
  PHARMACEUTICALS INC.

Dated: December 20, 2007

---

is such that a preference is necessary to prevent prejudicing the party's interest in the litigation." (C.C.P. § 36(a)(2).)  No such evidence has been submitted.  In fact, Plaintiffs' claim of urgency is flatly contradicted by statements made by Plaintiffs' counsel, to wit:  "[i]f they're able to keep him [Mr. Gerber] alive – his life expectancy is about 10 years – he's going to have about $10 million in medical expenses." (See Prosser Decl. ¶ 5, Exh. "B").

KUTAK ROCK LLP
ATTORNEYS AT LAW
LOS ANGELES

REMOVING DEFENDANTS' OPPOSITION
TO MOTION FOR REMAND

CASE NO. CV-07-5918-JSW