# EXHIBIT "B"

# Taking New Area of Litigation One Plaintiff Suit at a Time

Matthew Hirsch
The Recorder
10-30-2007

A chemical used to help treat diseased kidneys has plaintiffs lawyers salivating at the thought of a new arena of billion-dollar mass torts, but one San Francisco firm wants to take it one suit at a time.

"I think the work that we do [in the first case] will set the tone for other cases; and of course we're hoping to get other cases as well," said Jeffrey Kaiser, a partner at Levin Simes Kaiser & Gornick.

On Friday, fellow partner Lawrence Gornick filed a complaint in San Francisco Superior Court against Bayer Corp., General Electric Co., McKesson Corp. and other companies involved in the manufacturing and distribution of gadolinium, a heavy metal used in treating kidney disease. Gornick says the element was injected into his client to help doctors capture medical images, and the exposure caused a painful and incurable disease known as nephrogenic system fibrosis, or NSF, which hardens the skin.

The complaint also names medical facilities, including California Pacific Medical Center, where Gornick's client, San Rafael, Calif., resident Peter Jay Gerber, was allegedly exposed.

Spurred by a recent warning from the Food and Drug Administration, some East Coast plaintiffs firms, including Milberg Weiss, have identified gadolinium suits as a burgeoning area of litigation. At least a dozen firms have purchased ads on Google to attract clients who have been diagnosed with NSF.

But Levin Simes attorneys have a different strategy. While it's common to coordinate a mass of cases in federal multi-district litigation (MDL), the 15-lawyer firm wants to take its gadolinium suits to trial one at a time.

In addition to the suit filed Friday, the firm has seven other clients who have been diagnosed with NSF, Kaiser said.

Several of Levin Simes' product liability suits against drug companies have been swept into federal MDLs, including litigation over the anti-psychotic drug Seroquel, which was consolidated in a Florida federal court, and an anti-psychotic called Zyprexa, which was consolidated in a New York federal court.

Those cases have exposed drug makers AstraZeneca and Eli Lilly to massive liabilities, but their complexity has helped bog them down in the courts.

Gornick said his elderly client doesn't have that kind of time. "I don't know if we're going to get a call [saying] he has taken a turn for the worse next week or a year and a half from now," the attorney said.

Gerber "is hardening to death," Gornick said. "Just in the last month or so, it appears the disease has progressed to his abdomen."

Gornick said he will be racing to get gadolinium cases before juries as quickly as possible. In the California state courts, he can invoke a rule that puts cases involving a severely ill plaintiff on a fast track.

Even against a single plaintiff, Gornick said, gadolinium suits could be very expensive litigation for defendants. He said Gerber's treatment for NSF -- doctors "take all the blood out, scrub it, then put it back in" -- costs $30,000 per biweekly visit.

"If they're able to keep him alive -- his life expectancy is about 10 years -- he's going to have about $10 million in medical expenses," Kaiser said.

One plaintiffs attorney who does pharmaceutical litigation knows the fast-track strategy doesn't always work, despite a plaintiffs attorney's best effort to stay out of consolidated federal litigation.

"More and more, what you are seeing is when you have companion federal cases and state cases, there is an attempt to coordinate both the federal and state litigation," said Cotchett, Pitre & McCarthy's Frank Pitre.

In litigation over the pain medication called Bextra, Pitre said, U.S. District Judge Charles Breyer has worked cooperatively with state court judges in New York and New Jersey to keep all the litigation on the same track.

"Where you have a good group of people on the plaintiff side and defense side who are working together to make sure discovery is proceeding efficiently, then it works well," Pitre said.

# EXHIBIT "C"

# California Business Portal

## Secretary of State DEBRA BOWEN

| SECRETARY OF STATE | ELECTIONS & VOTER INFO | POLITICAL REFORM | CA BUSINESS PORTAL | ARCHIVES & MUSEUM | OTHER SERVICES |

**Business Search**
**Corporations**

**Printer Friendly Page**

New Search

Search Tips

Field Definitions

Status Definitions

Name Availability

Corporate Records

**Business Entities**
**Records Order Form**
  Certificates
  Copies
  Status Reports

FAQS

Corporations Main Page

Site Search

# Corporations

The information displayed here is current as of "DEC 14, 2007" and is updated weekly. It is not a complete or certified record of the Corporation.

| Corporation | | |
|---|---|---|
| BMC DIAGNOSTICS, INC. | | |
| **Number:** C2067246 | **Date Filed:** 1/21/1998 | **Status:** converted-out |
| **Jurisdiction:** California | | |
| **Address** | | |
| 2000 POWELL STREET STE 1050 | | |
| EMERYVILLE, CA 94608 | | |
| **Agent for Service of Process** | | |
| AVA CHACKERIAN | | |
| 2000 POWELL STREET STE 1050 | | |
| EMERYVILLE, CA 94608 | | |

Printer Friendly

**New Search**

- For information about certification of corporate records or for additional corporate information, please refer to **Corporate Records**.
- Blank fields indicate the information is not contained in the computer file.
- If the status of the corporation is "Surrender", the agent for service of process is automatically revoked. Please refer to California Corporations Code **Section 2114** for information relating to service upon corporations that have surrendered.

Copyright ©2001 California Secretary of State. **Privacy Statement**.

# EXHIBIT "D"

Westlaw.

Slip Copy                                                                    Page 1

Slip Copy, 2007 WL 754882 (N.D.Cal.)
(Cite as: Slip Copy)

Johnson v. Merck & Co., Inc.
N.D.Cal.,2007.
Only the Westlaw citation is currently available.
United States District Court,N.D. California.
Stanford JOHNSON, Plaintiff,
v.
MERCK & COMPANY, INC., a corporation;
McKesson Corporation, a corporation;
Amerisourcebergen Drug Corporation, a
corporation; Does 1 to 100; Pharmaceutical
Defendant Does 101 to 200, and Distributor Does
201 to 300, inclusive, Defendants.
No. C 07-00067 WHA.

March 8, 2007.

Bruce C. Fishelman, Geoffrey S. Wells, Attorney at
Law, Timothy J. Wheeler, Greene Broillet &
Wheeler LLP, Santa Monica, CA, Brian J. Panish,
Kevin R. Boyle, Panish Shea & Boyle, LLP, Los
Angeles, CA, Pete Kaufman, Rachael Raymon
Gilmer, Troy Alan Rafferty, Levin Papantonio
Thomas Mitchell Echsner & Proctor P.A.,
Pensacola, FL, for Plaintiff.
Amanda Jane Murray, Steven J. Boranian, Tiffany
Renee Thomas, Reed Smith LLP, San Francisco,
CA, Michael Kevin Brown, Thomas Joonyul Yoo,
Reed Smith LLP, Los Angeles, CA, for Defendants.

### ORDER GRANTING DEFENDANT'S MOTION TO STAY PROCEEDINGS
WILLIAM ALSUP, United States District Judge.

### INTRODUCTION

*1 In this pharmaceutical products-liability case,
defendant Merck & Co., Inc. moves to stay this
action pending a potential transfer to a multi-district
litigation proceeding. Plaintiff Stanford Johnson
moves to remand this action to state court for lack
of subject-matter jurisdiction due to the absence of
complete diversity. This order **GRANTS**

defendant's motion for a temporary stay and defers
ruling on plaintiff's motion to remand.

### STATEMENT

This is one of two motions for a stay pending
transfer to an MDL proceeding currently before the
Court. Although arising in different actions, the
facts pertinent to the motions to stay are nearly
identical. Indeed, counsel for defendants and
plaintiffs are the same in both actions, as were the
briefs submitted.

Defendant Merck is a pharmaceutical company that
manufactured the anti-inflammatory drug known
commonly as VIOXX®. This products-liability
case is one of a large number of actions filed after
Merck voluntarily withdrew the drug from the
market in September 2004. On February 15, 2005,
an MDL panel transferred 149 actions pending at
the time to the United States District Court for the
Eastern District of Louisiana for coordinated or
consolidated pretrial proceedings before the
Honorable Judge Eldon E. Fallon. *In re VIOXX
Products Liability Litigation,* 360 F.Supp.2d 1352
(J.P.M.L.2005). Conditional transfer orders have
since been issued for tag-along cases (Thomas Decl.
¶ 5). Approximately 2500 VIOXX®-related
actions have been stayed in federal district courts
across the country. Of these, over 350 have pending
motions to remand (Thomas Reply Decl. ¶ 2).
Merck notified the MDL panel that the
above-captioned case was a potential tag-along
action on January 12, 2007 (*id.* at ¶ 3). A
conditional transfer order issued on February 1,
2007 (*ibid.*). Merck now moves for a temporary
stay of this action.

Plaintiff Stanford Johnson was prescribed VIOXX®
by his physicians, Dr. Louise Nurre and Dr. M.
Lewandowski. He alleges that he has suffered
myocardial infarction and related problems as a
result of ingesting the drug (Compl.¶ 4). Johnson

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 754882 (N.D.Cal.)
**(Cite as: Slip Copy)**

commenced this action on September 21, 2006, by filing a notice of adoption of the master complaint in California state court. In it, he alleges claims of (1) strict liability for failure to warn; (2) negligence; (3) negligence per se; (4) breach of implied warranty; (5) breach of express warranty; (6) deceit by concealment; (7) negligent misrepresentation; (8) violation of California Business and Professions Code Sections 17200 and 17500; and (9) violation of California Civil Code Section 1750. Plaintiff asks for general and punitive damages, as well as medical monitoring costs, injunctive relief, and disgorgement of defendants' profits from the drug.

Johnson filed a motion to remand the action for lack of subject matter jurisdiction because of the absence of complete diversity of parties. His motion was filed on February 1, 2007, but was improperly noticed for hearing. It was later renoticed for March 22, 2007, but plaintiff asks that it be heard on an expedited basis in light of the pending conditional transfer order. Plaintiff is a resident of California, as is defendant McKesson Corporation. Merck is headquartered elsewhere, while AmerisourceBergen's citizenship is uncertain.

**\*2** A hearing on defendant's motion to stay proceedings was held on March 8, 2007. Plaintiff did not appear.

### ANALYSIS

The power to grant a temporary stay "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."*Landis v. N. Am. Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936). Plaintiff argues that the Court should rule on his motion for remand before deciding to stay this action despite its being filed later. Whether a motion to remand or a motion to stay should be decided first, however, is "extremely sensitive to the facts of the case."*Burse v. Purdue Pharma Co.,* 2004 WL 1125055 at \*1 (N.D.Cal.2004). In these actions, the MDL panel correctly noted that a remand motion can just as easily be presented to and decided by the transferee judge (Thomas Decl.

Exh. C. at 2). There are a large number of VIOXX® -related actions that have been stayed by other federal district courts despite pending motions to remand (*id.* at ¶ 6). Of the actions stayed, a number of the actions from California have faced the same issue raised here by plaintiff: whether the distributor defendants were fraudulently joined to defeat diversity. *See, e.g. Johnson v. Merck & Co., Inc.,* Case No. C-05-02881 (N.D.Cal. Oct. 4, 2005) (Patel, J.); *Leeson v. Merck & Co., Inc.,,* Case No. C-05-02240-WBS-PAN (E.D.Cal. Jan, 27, 2006).

Plaintiff argues that the merits of his motion to remand should be addressed before a motion to stay is granted. In view of the MDL, however, doing so would unnecessarily duplicate work, and could lead to inconsistent results. Plaintiff also argues at length in his memorandum in support of his motion to remand that defendant cannot show fraudulent joinder here because Judge Chaney of the California VIOXX Coordinated Proceeding in California Superior Court ruled that pharmaceutical distributors, such as McKesson, could be held liable for failure to warn (Woodruff Decl. Exh. A). This result will likely be taken into consideration in deciding similar motions to remand, however, to prevent inconsistent results, this should be done by the MDL panel.

It would be an inefficient use of resources to unnecessarily duplicate the efforts of the transferee judge, who will undoubtedly face most (if not all) of the same issues in dealing with the other pending remand motions. Staying the proceedings will best serve the interests of judicial economy. Moreover, granting Merck's motion for a temporary stay avoids the possibility of inconsistent rulings, which is particularly important here, because a decision to remand is not subject to appeal. 28 U.S.C. 1447(d). Finally, plaintiff has not shown that he would be unduly prejudiced by the stay. His conclusory statement regarding his deteriorating helath is insufficient. The MDL panel has already been notified of this potential tag-along action, and a conditional transfer order issued on February 1, 2007. Any delay will be minimal.

### CONCLUSION

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                              Page 3

Slip Copy, 2007 WL 754882 (N.D.Cal.)
**(Cite as: Slip Copy)**

**\*3** For all the above-stated reasons, defendant's motion for a temporary stay pending the potential transfer of this action is **GRANTED.** In the interim, this order declines to rule on plaintiff's motion to remand.

**IT IS SO ORDERED.**

N.D.Cal.,2007.
Johnson v. Merck & Co., Inc.
Slip Copy, 2007 WL 754882 (N.D.Cal.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT "E"

Westlaw.

Not Reported in F.Supp.2d
Page 1

Not Reported in F.Supp.2d, 2004 WL 5392660 (C.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

Black v. Merck & Co., Inc.
C.D.Cal.,2004.
Only the Westlaw citation is currently available.
United States District Court,C.D. California.
Timothy BLACK, et. al., Plaintiffs,
v.
MERCK & COMPANY, INC., a corporation;
McKesson Corporation, a corporation; and Does
1-100, inclusive, Defendants.
No. CV 03-8730 NM (AJWx).

March 3, 2004.

Joy Lynn Robertson, Walter J. Lack, Engstrom
Lipscomb & Lack, Thomas V. Girardi, Girardi &
Keese, Los Angeles, CA, for Plaintiffs.
Michael K. Brown, Thomas J. Yoo, Reed Smith
Crosby & Heafey, Los Angeles, CA, Norman C.
Kleinberg, Theodore V. H. Mayer, Hughes
Hubbard & Reed, New York, NY, for Defendants.

ORDER GRANTING PLAINTIFFS' MOTION TO
REMAND
NORA M. MANELLA, United States District
Judge.

I. INTRODUCTION

*1 On November 25, 2003, 35 plaintiffs residing in
20 states, including California but not including
New Jersey ("Plaintiffs"), sued Merck & Company,
Inc. ("Merck"), McKesson Corporation ("McKesson
"), and Does 1-100, inclusive (collectively, "
Defendants"), in Los Angeles Superior Court.[FN1]
Thirty-two of the Plaintiffs allege they were injured
by taking VIOXX, a prescription drug; the
remaining three plaintiffs allege loss of consortium.
Compl. ¶¶ 13-47.[FN2]

FN1. Local Rule 19-1 provides that "[n]o
complaint or petition shall be filed that

includes more than ten (10) Doe or
fictitiously named parties."

FN2. Plaintiffs allege thirteen claims: (1)
strict liability for failure to warn; (2)
negligence; (3) negligence per se; (4)
breach of implied warranty; (5) breach of
express warranty; (6) deceit by
concealment; (7) negligent
misrepresentation; (8) violation of Cal.
Bus. & Prof.Code § 17200; (9) violation of
Cal. Bus. & Prof.Code § 17500; (10)
violation of Cal. Civ.Code § 1750; (11)
wrongful death; (12) survival action; and
(13) loss of consortium.

On December 1, 2003, Merck removed the case
based on diversity. Merck is incorporated in and has
its principal place of business in New Jersey. Id. ¶
49.McKesson is incorporated in Delaware and has
its principal place of business in California. Notice
of Removal ¶ 12; Mot. at 1. Merck asserts that
diversity jurisdiction exists because the only
non-diverse defendant named in the Complaint,
McKesson, was fraudulently joined. Notice of
Removal ¶ 8; Mot. at 1. In the alternative, Merck
argues the court should extend the doctrine of
fraudulent joinder to apply where plaintiffs were
misjoined. Mot. at 11-12. Merck contends that
because the four California plaintiffs were
misjoined, the court should disregard their
citizenship and sever them from the case. Id. Now
pending is Plaintiffs' Motion to Remand on the
grounds that: (1) diversity jurisdiction is lacking,
and (2) Merck's request to sever the California
plaintiffs is contrary to law and to standards of
efficiency.

II. FACTS

Merck, a pharmaceutical company, tested,
manufactured, marketed, labeled, and distributed
VIOXX. Compl. ¶¶ 48-49. Merck sells VIOXX

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2004 WL 5392660 (C.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

to wholesale distributors, hospitals, pharmacies, and other suppliers of prescription drugs. Layton Decl. ¶¶ 2-3. McKesson, a wholesale distributor, promoted and distributed VIOXX. *Id.* ¶ 3; Compl. ¶ 50. Currently, Merck sells VIOXX to approximately 33 wholesalers (including McKesson), 1,000 hospitals, 1,500 small pharmacies, and three warehouse chain pharmacies. Layton Decl. ¶ 3.

VIOXX is a prescription drug used for the treatment of painful menstrual cramps, the management of acute pain in adults, and the relief of signs and symptoms of osteoarthritis. Compl. ¶ 55. VIOXX has allegedly been linked to several severe and life threatening medical disorders including, but not limited to, edema, changes in blood pressure, heart attacks, strokes, seizures, kidney and liver damage, pregnancy complications, and death.*Id.* ¶ 58.Plaintiffs allege these risks were not disclosed to them. *Id.* Plaintiffs further allege Defendants aggressively marketed their product through advertisements and other promotional materials while misleading potential users and failing to protect consumers from serious dangers of which Defendants knew or should have known. *Id* . ¶¶ 59-64.

### III. DISCUSSION

#### A. *Fraudulent Joinder*

For removal based on diversity, 28 U.S.C. § 1332 requires complete diversity of citizenship. *Morris v. Princess Cruises, Inc.,* 236 F.3d 1061, 1067 (9th Cir.2001) (citation omitted). Even if the complete diversity requirement is met, removal is not allowed where one of the defendants is a "citizen of the State in which such action is brought."28 U.S.C. § 1441(b).[FN3] But if the plaintiff "fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent."*McCabe v. Gen. Foods Corp.,* 811 F.2d 1336, 1339 (9th Cir.1987) (citation omitted). " Fraudulent joinder" is a term of art and does not impugn the integrity of plaintiffs or their counsel

and does not refer to an intent to deceive.*Id.; DaCosta v. Novartis AG,* 180 F.Supp.2d 1178, 1181 (D.Or.2001) (citation omitted). Where joinder of a non-diverse defendant is deemed fraudulent, the defendant's presence in the lawsuit is ignored for purposes of determining diversity. *Morris,* 236 F.3d at 1067.

> FN3. A corporation is deemed a citizen of its state of incorporation and its principal place of business. *See*28 U.S.C. § 1332(c) (1).

**\*2** "There is a presumption against finding fraudulent joinder, and defendants who assert that [the] plaintiff has fraudulently joined a party carry a heavy burden of persuasion."*Plute v. Roadway Package Sys., Inc.,* 141 F.Supp.2d 1005, 1008 (N.D.Cal.2001) (citations omitted); *see also, Nishimoto v. Federman-Bachrach & Assocs.,* 903 F.2d 709, 712 n. 3 (9th Cir.1990) ("removal statute is strictly construed against removal jurisdiction"); *Emrich v. Touche Ross & Co.,* 846 F.2d 1190, 1195 (9th Cir.1988) (same). Courts have denied claims of fraudulent joinder when there is any possibility that a plaintiff may prevail on the cause of action against the in-state defendant. *Plute,* 141 F.Supp.2d at 1008, 1012;*see Cavallini v. State Farm Mut. Auto Ins. Co.,* 44 F.3d 256, 259 (5th Cir.1995) ("The burden of proving a fraudulent joinder is a heavy one. The removing party must prove that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the in-state defendant in state court") (citation and internal quotations omitted)."In determining whether a defendant was joined fraudulently, the court must resolve 'all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party.' " *Plute,* 141 F.Supp.2d at 1008 (quoting *Dodson v. Spiliada Maritime Corp.,* 951 F.2d 40, 42-43 (5th Cir.1992) ); *Little v. Purdue Pharma, LP,* 227 F.Supp.2d 838, 849 (S.D.Ohio 2002) ("a federal court should hesitate before pronouncing a state claim frivolous, unreasonable, and not even colorable in an area yet untouched by the state courts").

Furthermore, any doubts concerning the sufficiency

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2004 WL 5392660 (C.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

of a cause of action due to inartful, ambiguous, or technically defective pleading must be resolved in favor of remand; a lack of clear precedent does not render the joinder fraudulent. *Plute,* 141 F.Supp.2d at 1008 (citation omitted); *see Peloza v. Capistrano Unified Sch. Dist.,* 37 F.3d 517, 521 (9th Cir.1994) (courts must interpret general allegations to " embrace whatever specific facts might be necessary to support them"); *Little,* 227 F.Supp.2d at 847 n. 12 ("in light of the heavy burden on defendants to show the non-diverse defendants were fraudulently joined, it seems to this Court that a finding of fraudulent joiner should not be based on factual deficiencies within the pleadings which are correctable by amendment").

Merck contends that McKesson was fraudulently joined on two grounds: (1) Plaintiffs have failed to allege an actual connection between their purported injuries and McKesson's conduct, and (2) Plaintiffs have failed to state a viable claim against McKesson. With respect to the first ground, Merck argues Plaintiffs must allege the VIOXX they ingested was distributed by McKesson to the pharmacies from which Plaintiffs purchased VIOXX . Opp. at 5-6. Merck argues that McKesson is one of numerous distributors and Plaintiffs have failed to plead that McKesson received a benefit from the sale of the product, that its role was integral to the business of the manufacturer, or that McKesson had control over or ability to influence the manufacturing or distribution process. *Id.* at 7.

**\*3** Plaintiffs, however, allege McKesson "was in the business of promoting and distributing the pharmaceutical Vioxx."Compl. ¶ 50. Plaintiffs also allege they have "been prescribed and supplied with, received, and [have] taken and ingested and consumed the prescription drug Vioxx, as ... distributed, marketed, labeled, promoted, packaged . .. or otherwise placed in the stream of interstate commerce by Defendants Merck & Company, Inc., McKesson, and Defendants Does 1 through 100."*Id.* ¶ 1.[FN4]

> FN4. Most of the remaining allegations are against "Defendants," including McKesson. General allegations against "

Defendants" are sufficient to charge McKesson with the alleged wrongful conduct. *See Plute,* 141 F.Supp.2d at 1007, 1010 n. 4 (any doubts concerning the sufficiency of a cause of action due to inartful, ambiguous, or technically defective pleading must be resolved in favor of remand); *Peloza,* 37 F.3d at 521 (courts must interpret general allegations to "embrace whatever specific facts might be necessary to support them").

Next, Merck contends Plaintiffs have failed to state a viable claim against McKesson. Plaintiffs argue they have stated a claim against McKesson for strict liability for failure to warn. Under California law, manufacturers can be held strictly liable for failure to warn. *Brown v. Superior Court,* 44 Cal.3d 1049, 1065, 245 Cal.Rptr. 412, 751 P.2d 470 (1988). Generally, such liability extends beyond manufacturers to retailers and wholesalers. *Johnson v. Standard Brands Paint Co.,* 274 Cal.App.2d 331, 337, 79 Cal.Rptr. 194 (1969); *Soule v. Gen. Motors Corp. .,* 8 Cal.4th 548, 560, 34 Cal.Rptr.2d 607, 882 P.2d 298 (1994). A retailer includes anyone involved in the sale of a product short of "the housewife who, on occasion, sells to her neighbor a jar of jam or a pound of sugar."*Pan-Alaska Fisheries. Inc. v. Marine Constr. & Design Co.,* 565 F.2d 1129, 1135 (9th Cir.1977) (citations omitted).

In contrast to manufacturers of prescription drugs who are subject to strict liability for failure to warn, pharmacists cannot be held strictly liable for failure to warn. *See Murphy v. E.R. Squibb & Sons, Inc.,* 40 Cal.3d 672, 679, 221 Cal.Rptr. 447, 710 P.2d 247 (1985); *Carlin v. Superior Court,* 13 Cal.4th 1104, 1117, 56 Cal.Rptr.2d 162, 920 P.2d 1347 (1996)."Courts have traditionally maintained a distinction between those rendering services and those selling products, holding that those providing services are not subject to strict liability[.]"*San Diego Hosp. Ass'n v. Superior Court,* 30 Cal.App.4th 8, 13, 35 Cal.Rptr.2d 489 (1994). As the California Supreme Court has explained: "A key factor is that the pharmacist who fills a prescription is in a different position from the ordinary retailer because he cannot offer a prescription for sale except by order of the doctor.... [H]e is providing a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2004 WL 5392660 (C.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

service to the doctor."*Murphy,* 40 Cal.3d at 679, 221 Cal.Rptr. 447, 710 P.2d 247.

Although California case law has carved out an exception for service providers such as pharmacists, it has not addressed whether distributors of prescription drugs can be strictly liable for failure to warn. Because state law is unsettled as to whether a distributor of prescription drugs could be strictly liable for failure to warn, the court cannot rule that there is "absolutely no possibility" Plaintiffs could prevail on this claim against McKesson. *See Plute,* 141 F.Supp.2d at 1008, 1012;*Cavallini,* 44 F.3d at 259. Thus, Merck has not met its "heavy burden" of demonstrating that a non-diverse defendant was fraudulently joined. *See Plute,* 141 F.Supp.2d at 1012;*Little,* 227 F.Supp.2d at 849.

*4 Merck argues the rationale for exempting pharmacists from strict liability applies equally to distributors. Citing case law from Pennsylvania, Maryland, and Mississippi, Merck contends courts have not held pharmacists strictly liable because to do so would interfere with the doctor-patient relationship. Obviously, McKesson is not a pharmacist, and there is no potential for interference with any doctor-patient relationship. Moreover, the California Supreme Court has distinguished pharmacists from others in the chain of distribution on the ground that pharmacists provide services. *See Murphy,* 40 Cal.3d at 679, 221 Cal.Rptr. 447, 710 P.2d 247. Unlike a pharmacist, McKesson provides no service.

Next, Merck argues that under the "learned intermediary" doctrine, distributors have no duty to warn and thus cannot be held strictly liable, citing two unpublished district court cases where the court concluded that a distributor of a prescription drug is not subject to liability. *See Barlow v. Warner-Lambert Co.,* CV 03-1647-R, slip op. at 2 (C.D.Cal.2003); *Skinner v. Warner-Lambert Co.,* CV 03-1643-R, slip op. at 2 (C.D.Cal.2003).[FN5] However, both cases relied solely on comment k of the Restatement (Second) of Torts, which does not exempt distributors from strict liability. Rather, comment k states that a seller of pharmaceuticals is not strictly liable *if* the products are properly prepared and marketed, and proper warning is given. [FN6]

FN5. Under the "learned intermediary" doctrine, a drug manufacture has no duty to warn the ultimate consumer, the patient, so long as adequate warnings are given to the doctor. *Carlin,* 13 Cal.4th at 1108-09,1116, 56 Cal.Rptr.2d 162, 920 P.2d 1347;*Carmichael v. Reitz,* 17 Cal.App.3d 958, 994, 95 Cal.Rptr. 381 (1971).

FN6. A "seller" of a product is "any person engaged in the business of selling products for use or consumption. It therefore applies to any ... wholesale or retail dealer or distributor[.]"Restatement (Second) Torts § 402A, cmt. f.

Finally Merck argues that "Plaintiffs cite no case holding a pharmaceutical supplier like McKesson liable for distributing an FDA-approved medication [.]" Opp. at 10. However, it is Merck's "heavy burden" to show "absolutely no possibility" that Plaintiffs could prevail on their strict liability claim against McKesson. *See Plute* 141 F.Supp.2d at 1008;*Cavallini,* 44 F.3d at 259;*Little,* 227 F.Supp.2d at 849. As Merck has not meet this burden, it has failed to demonstrate that McKesson was fraudulently joined.[FN7]Thus, this matter must be remanded because complete diversity of citizenship is lacking. *See Morris,* 236 F.3d at l067.

FN7. In light of the court's determination that Plaintiffs may have a cause of action against McKesson based on strict liability for failure to warn, the court need not address the viability of the remaining claims against McKesson.

**B. Misjoinder of Plaintiffs**

The Eleventh Circuit has held that misjoinder of plaintiffs may be just as fraudulent as the fraudulent joinder of a defendant against whom a plaintiff has no claim. *Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353, 1360 (11th Cir.1996), *overruled on*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2004 WL 5392660 (C.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

*other grounds, Cohen v. Office Depot. Inc.,* 204
F.3d 1069, 1072 (11th Cir.2000). In *Tapscott,* the
court explained that while "mere misjoinder" is not
fraudulent joinder, a party's attempt to misjoin
parties may be "so egregious as to constitute
fraudulent joinder."*Tapscott,* 77 F.3d at 1360.[FN8]
However, the Ninth Circuit "has not found occasion
to address *Tapscott,* and no other circuit has
adopted its rationale."*Brazina v. Paul Revere Life
Ins. Co.,* 271 F.Supp.2d 1163, 1172 (N.D.Cal.2003)
. Because the Ninth Circuit has not adopted this
novel theory, the court declines to do so here.[FN9]

> FN8.*Tapscott*"concerned two groups of
> plaintiffs that sued separate groups of
> defendants on almost entirely separate
> legal grounds."*Brazina v. Paul Revere Life
> Ins. Co.,* 271 F.Supp.2d 1163, 1172
> (N.D.Cal.2003) (citing *Tapscott,* 77 F.3d
> at 1360).

> FN9. Even under the *Tapscott* theory, it is
> unclear whether the joinder of the
> California plaintiffs is "so unrelated as to
> constitute egregious misjoinder."*See
> Brazina,* 271 F.Supp.2d at 1172;*Tapscott,*
> 77 F.3d at 1360;*In re Norplant
> Contraceptive Prods. Liab. Litig.,* 168
> F.R.D. 579, 581 (E.D.Tex.1996) (finding
> joinder of plaintiffs proper where
> defendants failed to adequately warn
> plaintiffs of risks and severity of side
> effects of prescription contraceptives, even
> though plaintiffs had different doctors).

### IV. CONCLUSION

*5 Accordingly, the court **GRANTS** Plaintiffs'
Motion to Remand.

IT IS SO ORDERED.

C.D.Cal.,2004.
Black v. Merck & Co., Inc.
Not Reported in F.Supp.2d, 2004 WL 5392660
(C.D.Cal.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT "F"**

Westlaw.

Slip Copy

Slip Copy, 2006 WL 3230047 (E.D.Cal.)
(Cite as: Slip Copy)

Page 1

**C**
Leeson v. Merck & Co., Inc.
E.D.Cal.,2006.
Only the Westlaw citation is currently available.
United States District Court,E.D. California.
Christopher LEESON, Plaintiff,
v.
MERCK & COMPANY, INC., Pfizer, Inc.,
McKesson Corporation, and Does 1 through 100,
inclusive, Defendants.
**No. S-05-2240 WBS PAN.**

Jan. 27, 2006.

Clifford Lee Carter, Clayeo C. Arnold, A
Professional Law Corporation, Sacramento, CA, for
Plaintiff.
Andrea L. McDonald-Hicks, Kevin Michael Hara,
Reed Smith LLP, Oakland, CA, Dana A. Blanton,
Rosalie Euna Kim, Reed Smith LLP, San Francisco,
CA, Peter Edward Schnaitman, Tae-Yoon Kim,
Tucker Ellis and West, Los Angeles, CA, for
Defendants.

*MEMORANDUM AND ORDER RE: MOTION TO
REMAND AND MOTION TO STAY*
SHUBB, J.
*1 Plaintiff Christopher Leeson brought this action
in the Superior Court in and for the County of Los
Angeles for damages related to a myocardial
infarction allegedly caused by the drugs Vioxx and
Celebrex. The action was removed to this court on
November 4, 2005.[FN1] Plaintiff now seeks a
remand to state court and attorneys' fees incurred in
connection with that motion. Defendants Merck and
Pfizer oppose plaintiff's motion to remand and
Merck moves the court to stay this case pending
transfer to the Eastern District of Louisiana
pursuant to 28 U.S.C. § 1407.

> FN1. Pursuant to the instructions of the
> state court, plaintiff filed his case in the

Superior Court in and for the County of
Los Angeles and designated Placer County
as the "county of origin", which is
controlling for removal purposes in the
state Coordination Proceeding involving
Vioxx products liability claims.

*I. Factual and Procedural Background*

Defendant Merck is a pharmaceutical company
incorporated and having its principal place of
business in New Jersey. Prior to September, 2004,
Merck manufactured and marketed Vioxx, a
nonsteroidal anti-inflammatory drug ("NSAID")
used to treat arthritis and acute pain. However, on
September 30, 2004, Merck voluntarily withdrew
Vioxx from the market in light of evidence that
patients taking the drug experienced cardiovascular
complications.

Defendant Pfizer is also a pharmaceutical company,
incorporated in Delaware and having its principal
place of business in New York. Pfizer manufactures
Celebrex, another NSAID that competes with Vioxx
and allegedly presents similar risks to
cardiovascular health. Celebrex, however, is still
commercially available.

Multidistrict litigation ("MDL") against both
companies, arising from consumption of these
drugs, is currently pending in the federal courts. On
February 16, 2005, the Judicial Panel on
Multidistrict Litigation ("JPML") consolidated 138
federal cases involving Vioxx and transferred them
to the Eastern District of Louisiana. *See* MDL Panel
Docket Nos. 1657 and 1699, CTO-35 and CTO-11
(Dec. 21, 2005). At last count, 2,680 additional
Vioxx cases had been transferred there. *Id.* On
September 6, 2005, the JPML similarly
consolidated cases against Pfizer involving Celebrex
and Bextra and transferred them to the Northern
District of California. *Id.* Three hundred and
forty-nine additional Celebrex/Bextra cases have
since been added to that proceeding. *Id.* In cases

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                      Page 2

**Slip Copy, 2006 WL 3230047 (E.D.Cal.)**
**(Cite as: Slip Copy)**

such as the instant action, where the plaintiff brings claims against both companies, the JMPL has elected to sever the claims and, with the permission of the particular district court, assign them to their respective MDL proceeding. *Id.*

Plaintiff's suit is, however, further complicated by plaintiff's inclusion of a third defendant. In addition to Merck and Pfizer, the manufacturer defendants, plaintiff is suing the McKesson Corporation, a California corporation allegedly serving as the state's primary distributor of pharmaceuticals. (Pl.'s Opp'n to Def.s' Mot. to Stay Ex. 1 (Wolden Decl. at 7).) Plaintiff, also a citizen of California, contends that McKesson's involvement in this suit rendered Merck's removal of this action improper. Accordingly, he moves to remand the case to Los Angeles Superior Court where Judge Chaney is presiding over a Coordination Proceeding (JCCP No. 4247) for Vioxx lawsuits in California. In response, defendant Merck moves to stay this action [FN2] in light of Conditional Transfer Order 35, which marked this case as potentially transferrable to the MDL proceedings.[FN3] Merck argues that after the transfer is complete, the MDL courts will be in the best position to provide a uniform answer to the question presented here: whether McKesson was fraudulently joined for the purpose of defeating diversity jurisdiction.

FN2. Defendant Pfzier only filed an opposition to plaintiff's motion to remand and touched on the stay issue in that brief. Defendant McKesson has not filed papers since the case was removed.

FN3. Plaintiff opposed transfer of this matter, as conditionally ordered in MDL-1657 CTO-35 and MDL-1699 CTO-11, on January 3, 2006. Consequently, actual transfer of this action has been delayed and may yet be defeated. However, according to Merck, "to date, the Panel has rejected each and every motion to vacate a conditional transfer order that it has taken under consideration." (Def.'s Mot. to Stay 5 n. 1.)

## II. *Discussion*

**\*2** For a federal court to have jurisdiction based on diversity, there must be complete diversity between the parties. *Morris v. Princess Cruises, Inc.,* 236 F.3d 1061, 1067 (9th Cir.2001). Complete diversity only exists when no defendant is a citizen of the same state as any plaintiff. *Caterpillar, Inc. v. Lewis,* 519 U.S. 61, 68, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996). Therefore, because McKesson is, like plaintiff, a citizen of California, complete diversity does not exist on the face of the complaint.

However, an exception to the requirement of complete diversity exists where a non-diverse defendant has been fraudulently joined. *Morris,* 236 F.3d at 1067. " 'Fraudulent joinder' is a term of art [and] it does not reflect on the integrity of plaintiff or counsel but is merely the rubric applied when a court finds either that no cause of action is stated against the nondiverse defendant, or in fact no cause of action exists."*Lewis v. Time Inc.,* 83 F.R.D. 455, 460 (E.D.Cal.1979) (citation omitted)."[I]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state," then the defendant's joinder is deemed fraudulent and is ignored for purposes of diversity.*Morris,* 236 F.3d at 1067 (quoting *McCabe v. Gen. Foods Corp.,* 811 F.2d 1336, 1339 (9th Cir.1987)).

### A. *Order of Pending Motions*

As an initial matter, though, the court must determine which motion-plaintiff's motion to remand or Merck's motion to stay-to entertain first. Generally, jurisdiction is a preliminary matter that should be resolved before all others. *Smith v. Mail Boxes, Etc.,* 191 F.Supp.2d 1155, 1157 (E.D.Cal.2002) ("[J]urisdictional issues should be resolved before the court determines if a stay is appropriate."); *see also*Villarreal v. Chrysler Corp., No. C-95-4414, 1996 WL 116832, at \*1 (N.D.Cal. Mar.12, 1996) ("Judicial economy will best be served by addressing the remand issue [before a party's motion to stay] because a determination on this issue will facilitate litigation in the appropriate forum."). However, the calculus changes somewhat

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Slip Copy, 2006 WL 3230047 (E.D.Cal.)**
**(Cite as: Slip Copy)**

when deference to a MDL court will further "the uniformity, consistency, and predictability in litigation that underlies the MDL system."*Conroy v. Fresh Del Monte Produce Inc.,* 325 F.Supp.2d 1049, 1053 (N.D.Cal.2004). Resolution of a motion to remand can be left to the transferee court when " the motion raises issues likely to arise in other actions pending in [the consolidated action]."*Id.;see alsoIn re Vioxx Prods. Liability Litigation,* 360 F.Supp.2d 1352, 1354 (J.P.M.L.2005) ("[M]otions to remand ... can be presented to and decided by the transferee judge.").

More specifically, several courts have applied the following methodology when considering simultaneous motions to remand and stay in the MDL context. "First, the court should [scrutinize] the merits of the motion to remand" and consider it in full if "this preliminary assessment suggests that removal was improper."*Conroy,* 325 F.Supp.2d at 1053. "Second, if the jurisdictional issue appears factually or legally difficult, the court should determine whether identical or similar jurisdictional issues have been raised in other cases that have been or may be transferred to the MDL proceeding." *Id.* If the second inquiry is answered affirmatively, the court should consider staying the action. *Id.;see alsoMeyers v. Bayer AG,* 143 F.Supp.2d 1044, 1048-49 (E.D.Wis.2001); *Quincy Cmty. Servs. Dist. v. Atl. Richfield Co.,* No. S-03-2582, slip op. (E.D.Cal. Mar. 24, 2004) (quoting *Meyers* ).

*\*3* Applying this methodology here, the court finds that a stay is in order. First, in light of Merck's fraudulent joinder arguments, removal was not *plainly* improper. In numerous cases, Merck has challenged plaintiff's inclusion of McKesson, arguing that (1) California law does not charge distributors with a duty to warn consumers of the hazards associated with prescription drugs <sup>FN4</sup> and (2) plaintiff has failed to sufficiently allege a connection between the drugs distributed by McKesson and those consumed by the plaintiff. *See, e.g.,Martin v. Merck & Co.,* No. S-05-750, slip op. (E.D.Cal. Aug. 15, 2005). Yet only a handful of judges have found that California law does not clearly exempt distributors from strict liability for failure to warn. *See, e.g.,Black v. Merck & Co.,* No. 03-8730, slip op. (C.D.Cal. Mar. 3, 2004) (holding

that Merck failed "to show 'absolutely no possibility ' that Plaintiffs could prevail on their strict liability claim against McKesson"); *Martin,* No. S-05-750.

> FN4. As part of its attack on distributor liability under California law, defendants argue that state law does not recognize such a claim, and that, even if it does, federal requirements that govern the content of warning labels preempt state laws that might hold distributors liable for failure to warn. (Def. Merck's Opp'n to Pl.'s Mot. to Remand 14-15.)

Additionally, only Judge Karlton has held that evidence that a plaintiff purchased his drugs from an outlet (e.g., Safeway) whose primary supplier was McKesson demonstrates a sufficient connection between the plaintiff and the distributor.<sup>FN5</sup>*Martin,* No. S-05-750.In contrast, the undersigned has denied a similar motion to remand when the plaintiff failed to allege "that McKesson ... handled the specific pills that were allegedly the cause of her injuries."*Aronis v. Merck & Co.,* No. S-05-0486, slip op. (E.D.Cal. May 3, 2005).<sup>FN6</sup> The preliminary assessment is supposed to be a limited inquiry, undertaken only if removal was clearly improper. With just a few examples of how to handle this issue and outcomes on both sides, Merck's fraudulent joinder arguments are not clearly baseless.

> FN5. Significantly though, in the Central District, Judge Walter, who has related the cases involving Merck for that region, has held that alleging that McKesson " distributed and sold Vioxx in and throughout California ... which was ingested by plaintiffs," is sufficient. *See, e.g.,Aaroe v. Merck & Co.,* No. 05-5559, slip op. at 2 (C.D.Cal. Sept. 1, 2005); *Aaron v. Merck & Co.,* No. 05-4073, slip op. at 2 (C.D.Cal. July 26, 2005). (*Cf.* Compl. ¶¶ 1, 13, 15 ("Plaintiff ingested and consumed the prescription drugs Vioxx ® and Celebrex®, as ... distributed, marketed, ... [or] sold ['in California'] or

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Page 4

Slip Copy, 2006 WL 3230047 (E.D.Cal.)
**(Cite as: Slip Copy)**

otherwise placed in the stream of interstate commerce by ... Defendant McKesson Corporation....").)

FN6. Admittedly though, *Aronis* was based on a skimpy form complaint that differed significantly from the Master Complaint used by plaintiff's counsel in more recent cases like this one.

Second and perhaps more importantly, in the majority of cases submitted for this court's consideration, cases that have already been transferred to the MDL court or are awaiting transfer, courts have either (1) issued a stay and left the motion to remand for the MDL court to decide or (2) avoided the issue all together because the case was transferred before such motions were heard or even filed.[FN7] In October, 2005, Judge Patel of the Northern District of California noted that "there are presently more than 25 California cases that involve precisely the same fraudulent joinder of the McKesson defendants already pending before the MDL judge."*Johnson v. Merck & Co.,* No. 05-02881, slip op. at 2 (N.D.Cal. Oct.3, 2005) (granting defendant's motion to stay); *see also In re Vioxx Prod. Liability Cases,* No. 05-0943, slip op. at 5 (S.D. Cal. July 11, 2005) (staying 18 consolidated cases and denying without prejudice plaintiff's motion to remand; these cases were transferred to the MDL court in late 2005); *Love v. Merck & Co.,* No. 05-2140 (E.D. Cal. filed Oct. 24, 2005) (naming McKesson as a defendant; case transferred before a motion to remand was filed); *Lagden v. Merck & Co.,* No. 05-0656 (E.D. Cal. filed Apr. 4, 2005) (same). Consequently, "identical or similar jurisdictional issues have been raised in other cases that have been or may be transferred to the MDL proceeding."[FN8]*Conroy,* 325 F.Supp.2d at 1053.

FN7. The glaring exception to this practice has been the Central District of California, where the court has routinely remanded cases involving Vioxx and McKesson. Defendants explained at oral argument that the Central District, following an approach adopted in cases before the MDL panels

were created, has remanded approximately 12 cases involving McKesson. *See, e.g., Black,* No. 03-8730, slip op. As discussed in more detail above, this approach differs from that in the Northern and Southern Districts, where at least twice as many cases have been stayed.

FN8. Although the various outstanding motions to remand in cases transferred to the MDL court all rest on the particular law of the state and circuit where the case originated, Judge Fallon, who is presiding over the Vioxx MDL, has already taken steps to group like cases. (Def.'s Reply to Mot. to Stay (Kim Decl. Ex. I (Hr'g Tr. 21, June 23, 2005)).) It is therefore safe to assume that the McKesson cases will all be considered at once and under applicable California and Ninth Circuit law.

**\*4** The MDL court will therefore necessarily need to rule on the alleged fraudulent joinder of McKesson. The *Conroy* methodology suggests, then, that the court should first consider Merck's motion to stay.

### B. *Merck's Motion to Stay*

The power to issue a stay, as the Supreme Court has noted, "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."*Landis v. N. Am. Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936). Primarily, the court is concerned with balancing competing interests and thus should consider: "(1) potential prejudice to the non-moving party; (2) hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation if the cases are in fact consolidated."*Rivers v. Walt Disney Co.,* 980 F.Supp. 1358, 1360 (C.D.Cal.1997); *see also Landis,* 299 U.S. at 254-55;*CMAX, Inc. v. Hall,* 300 F.2d 265, 268 (9th Cir.1962).

Here, plaintiff argues that it will suffer prejudice as

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 3230047 (E.D.Cal.)
**(Cite as: Slip Copy)**

a result of a stay because (1) it will be forced to litigate the remand motion in a "foreign forum ... before a judge who might be less sympathetic to the plaintiff's cause" and (2) its case may be needlessly "carved ... in half" and shipped off to separate MDL proceedings for the purpose of determining that federal courts never had jurisdiction in the first place. (Pl.'s Opp'n to Def.'s Mot. to Stay 3, 13.) Plaintiff's first argument is without merit, as plaintiffs from up to 49 states in every MDL case are routinely forced to litigate pretrial motions in a foreign forum. His second argument is likewise flawed because it is based on his erroneous assumption that the Los Angeles Coordination Proceeding for Vioxx will allow him to pursue his claims against all defendants in a single litigation, at least until separate trials for the Vioxx and Celebrex / Bextra claims begin. Judge Chaney, who is presiding over JCCP 4247, determined at a status conference on October 14, 2005 that the claims against Merck and Pfizer will, as in the federal litigation, be severed in the state litigation. (Def. Pfizer's Opp'n to Pl.'s Mot. to Remand Exs. G-H (Notice of Ruling Re: Oct. 14, 2005 Status Conference).) Therefore, plaintiff's ability to pursue his claims against all defendants in a single proceeding exists, at best, only temporarily.[FN9]

> FN9. Judge Chaney intended to make a more definite ruling regarding the relationship between claims against Merck and Pfizer on November 19, 2005. This proceeding was, however, continued by the court. *See* http:// www.lasuperio rcourt.org/civilCaseSummar y/index.asp?CaseType=Civil (search term: "JCCP 4247").

On the other hand, Merck stands to suffer some hardship and inequity if the court instead addresses plaintiff's motion to remand.[FN10] If this court considers and denies plaintiff's motion to remand, plaintiff will have a second bite at the apple before the MDL court, which, as explained, will necessarily address the fraudulent joinder of McKesson in the several cases already transferred from California district courts. "Although transferee judges should generally respect any orders of a

transferor judge," experience teaches that this is not always the case. *Rivers,* 980 F.Supp. at 1361 (citing examples where MDL courts have vacated or modified previous rulings). Merck should not have to defend against the same motion repeatedly brought by the same plaintiff. Alternatively, if this court determines that McKesson was not fraudulently joined and the MDL court holds otherwise, Merck would be stuck with a decision that is contrary to the decision applicable in a majority of the other similar cases against it because an order to remand is not appealable. *Kunzi v. Pan Am. World Airways, Inc.,* 833 F.2d 1291, 1293 (9th Cir.1987) ( "Remand orders ... are immune from appellate review ... even if the district court's jurisdictional decision was erroneous."). Therefore the legitimate prejudice considerations here seem to favor staying this action.

> FN10. The court's analysis of the motion to stay, like the parties' briefs, largely focuses on Merck's arguments. Perhaps because the Pfizer MDL is located in plaintiff's home state of California, plaintiff has not contested, and does not plan to challenge, Pfizer's removal of cases that do not involve Merck. (Def. Pfizer's Opp'n to Pl.'s Mot. to Remand Ex. D. (Letter from Clifford Carter to Peter Schnaitman).) Consequently, although five to six cases involving McKesson are part of MDL-1699 (according to Pfizer), it is unlikely that Judge Breyer (who is presiding over the Celebrex/Bextra MDL) will have to consider the fraudulent joinder issue since the plaintiffs do not plan to move to remand those cases. Nevertheless, should plaintiffs change their approach or tactics, Pfizer would face the same hardships that Merck will inevitably face.

**\*5** Moreover, the third factor, which discourages duplicative litigation, obviously favors a stay in this instance. Dozens of cases with outstanding motions to remand, which specifically contend that McKesson has not been fraudulently joined, are before the Vioxx MDL judge and thus will be disposed of uniformly. It follows then that, in the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 3230047 (E.D.Cal.)
**(Cite as: Slip Copy)**

interest of judicial economy and to further the consistency that MDL proceedings aim to provide, this court should stay proceedings in this matter until a definitive transfer order issues.[FN11]

> FN11. Although Judge Breyer does not face the same volume of cases presenting a fraudulent joinder question as Judge Fallon, a stay of plaintiff's claims against Pfizer, as well as his claims against Merck, is still likewise in the interests of judicial economy. As observed in note 10, in a handful of the Pfizer cases before Judge Breyer, the plaintiffs could challenge federal jurisdiction, but have declined to do so. In the event that plaintiffs change their approach to the Celebrex litigation, another California district court would be just as well equipped as this court to address the fraudulent joinder question. Moreover, Judge Breyer, unlike the undersigned, could resolve this issue in several cases at once.

IT IS THEREFORE ORDERED that:

(1) defendant Merck's motion to stay be, and the same hereby is, GRANTED;

(2) plaintiff's motion to remand be, and the same hereby is, DENIED WITHOUT PREJUDICE; and

(3) plaintiff's motion for attorneys' fees and costs be, and the same hereby is, DENIED.[FN12]

> FN12. An order directing "payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal" is only warranted when the motion to remand is granted. *See*28 U.S.C. § 1447(c).

E.D.Cal.,2006.
Leeson v. Merck & Co., Inc.
Slip Copy, 2006 WL 3230047 (E.D.Cal.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.