LEWIS BRISBOIS BISGAARD & SMITH LLP
DANIEL J. MEAGHER, SBN 66821
CAROL SLEETH, SBN 111460
One Sansome St., Suite 1400
San Francisco, CA 94104
Tel: 415.362.2580
Fax: 415.434-0882

Attorneys for Defendant
CALIFORNIA PACIFIC MEDICAL CENTER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER JAY GERBER and MIRIAM GOLDBERG,<br><br>Plaintiffs,<br><br>v,<br><br>BAYER CORPORATION AND BAYER HEALTHCARE PHARMACEUTICALS, INC.; BMC DIAGNOSTICS, INC.; CALIFORNIA PACIFIC MEDICAL CENTER; GENERAL ELECTRIC COMPANY; GE HEALTHCARE, INC.; GE HEALTHCARE BIO-SCIENCES CORP.;McKESSON CORPORATION; MERRY X-RAY CHEMICAL CORP., and Does 1 through 35,<br><br>Defendants | CASE NO. 3:07-CV-05918 JSW<br><br>**DECLARATION OF CAROL SLEETH**<br><br>DATE:      January 11, 2008<br>TIME;       9:00 a.m.<br>COURTROOM:  2 |

I, CAROL SLEETH, declare as follows:

1. I am attorney licensed to practice before this Court and in the State of California. I am employed by Lewis Brisbois Bisgaard and Smith LLP, attorneys of record for defendant California Pacific Medical Center. I make this Declaration of my own personal knowledge.

2. On behalf of California Pacific Medical Center, I prepared a demurrer to each cause of action of plaintiffs' complaint. It was filed with the Superior Court of California, County of San Francisco on December 10, 2007. Attached to this Declaration as Exhibit A is a true and correct

4820-2830-0290.1                                                1

GERBER v. BAYER, DECLARATION OF CAROL SLEETH

copy of the Memorandum of Points and Authorities in Support of California Pacific Medical Center's Demurrer to Complaint.

3. Attached as Exhibit B are true and correct copies of CPMC's two Radiology Consultation Reports related to Peter Gerber. The first report indicates that a MRI Angio Abdomen was administered on 7/29/03, with and without contrast. The second report shows that a MRI Head was performed on 7/17/04; it states that "intravenous contrast was not administered secondary to patient's request." These records indicate that Mr. Gerber did not have a contrast-enhanced MRI and/or MRA performed at CPMC after 7/29/03.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct. I executed this Declaration on December 19, 2007 in San Francisco, CA.

_____
CAROL SLEETH

LEWIS BRISBOIS BISGAARD & SMITH LLP
ONE SANSOME ST., SUITE 1400
SAN FRANCISCO, CA 94104
TEL: 415.362.2580

4820-2830-0290.1                                  2
GERBER v. BAYER, DECLARATION OF CAROL SLEETH

# EXHIBIT A

LEWIS BRISBOIS BISGAARD & SMITH LLP
DANIEL J. MEAGHER, SBN 66821
CAROL SLEETH, SBN 111460
One Sansome St., Suite 1400
San Francisco, CA 94104
Tel:  415.362.2580
Fax: 415.434.0882

Attorneys for Defendant
CALIFORNIA PACIFIC MEDICAL CENTER

ENDORSED
FILED
San Francisco County Superior Court

DEC 1 0 2007

GORDON PARK-LI, Clerk
BY: _____MICHAEL RAYRAY_____
                              Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

CITY AND COUNTY OF SAN FRANCISCO

PETER JAY GERBER and MIRIAM GOLDBERG,

Plaintiffs,

v.

BAYER CORPORATION AND BAYER HEALTHCARE PHARMACEUTICALS, INC.; BMC DIAGNOSTICS, INC.; CALIFORNIA PACIFIC MEDICAL CENTER; GENERAL ELECTRIC COMPANY; GE HEALTHCARE, INC.; GE HEALTHCARE BIO-SCIENCES CORP.; McKESSON CORPORATION; MERRY X-RAY CHEMICAL CORP., and Does 1 through 35,

Defendants

CASE NO. CGC07 468577

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CALIFORNIA PACIFIC MEDICAL CENTER'S DEMURRER TO COMPLAINT

ACTION FILED: October 26, 2007
TRIAL DATE:    None Set

DATE: January 14, 2008
TIME: 9:30 a.m.
DEPT: 301

## I. INTRODUCTION

Defendant California Pacific Medical Center [CPMC] hereby demurs to the following causes of action in plaintiff's complaint for damages:

(1) the third cause of action for negligence;

(2) the fourth cause of action for breach of express warranty;

(3) the fifth cause of action for breach of implied warranty;

(4) the ninth cause of action for violation of the Consumer Legal Remedies Act; and,

(5) the tenth cause of action for loss of consortium

Plaintiffs' complaint erroneously assumes that California Pacific Medical Center [CPMC] practices medicine. Because California law rejects this assumption, plaintiffs' entire complaint against CPMC is erroneous. CPMC respectfully requests that this court sustain its demurrer to the complaint without leave to amend. CPMC concurrently moves to strike the punitive damage prayer and allegations pursuant to C.C.P.§ 425.13.

## II. STATEMENT OF THE CASE

Plaintiff Peter Jay Gerber (Mr. Gerber) alleges that he developed nephrogenic systemic fibrosis ("NSF") as a result of receiving MRIs and MRAs that used contrast agents containing gadolinium. [Complaint, ¶1.] At the time of the MRIs and MRAs, he had impaired kidney function. [¶ 55] Plaintiff Miriam Goldberg (Ms. Goldberg) is Mr. Gerber's wife.

According to the Complaint, the contrast agents are Magnevist, allegedly manufactured by the Bayer defendants, and Omniscan, allegedly manufactured by the GE defendants. [¶2 and 8] In addition to these manufacturing defendants, plaintiffs have sued the Merry X-Ray Chemical Corp., the distributor of Magnevist, and McKesson Corp., the distributor of Omniscan. [¶20 and 24] Finally, plaintiffs have sued two imaging facilities which "provided professional medical services to Mr. Gerber" by administering the MRIs and/or MRAs – i.e., California Pacific Medical Center and BMC Diagnostics, Inc. [¶32, 36 and 81]

According to plaintiffs' complaint, gadolinium-based contrast agents present risks, including NSF, to individuals with impaired kidney function. [Complaint, ¶ 52, 56, 57.] Mr. Gerber alleges that he had impaired kidney function when he received his first injection of gadolinium-based contrast agent in 1997. [Complaint, ¶ 55.] Plaintiffs allege that Mr. Gerber developed NSF as a result of receiving injections of gadolinium-based contrast agents. [¶59.]

These basic facts give rise to ten causes of action – four of which are against the "imaging facility defendants," including CPMC. The Third Cause of Action alleges negligence – i.e.,

- that CPMC provided "professional medical services to Mr. Gerber" through the administration of MRIs and MRAs using gadolinium-based contrast agents, [¶81]

- that the CPMC knew or should have known that the administration of these gadolinium-based contrast agents during MRIs and/or MRAs posed a serious risk of harm to patients with impaired renal function, [¶82]
- that defendants were negligent in "examining, treating, and caring for Plaintiff," [¶84],
- that defendants breached their duty of care by failing to "correctly ascertain, assess and account for plaintiff's renal function ... and by failing to adequately communicate to Plaintiff the warnings, instructions, risks, dangers, and side effects." [¶85]

The Fourth Cause of Action against the Imaging Facility Defendants is for Breach of Express Warranty. Plaintiffs allege that defendants "expressly warranted that their MRI and MRA services were safe and effective," [¶90] yet did not conform to these express representations. [¶91]

The Fifth Cause of Action against the Imaging Facility Defendants is for Breach of Implied Warranty. Plaintiffs claim that defendants impliedly warranted that their MRI and MRA machines, and associated gadolinium-based contrast agents, were of merchantable quality and safe for use." [¶94] Plaintiffs claim that Mr. Gerber relied upon this 'implied warranty,' but that the MRI and MRA machines, and associated gadolinium-based contrast agents, were not merchantable or safe for the intended use. [¶¶95-97]

In the Ninth Cause of Action against all defendants, plaintiffs alleged that the conduct violated the Consumer Legal Remedies Act. In particular, plaintiffs claim that "defendants' acts and business practices constitute unlawful methods of competition and unfair or deceptive acts." [¶121] Plaintiffs specify various acts constituting violations of the CLRA – none of which specifically or even generally apply to CPMC. [See ¶121(a) - (d)] Plaintiffs seek to recover the statutory damages available under the CRLA, including punitive damages and attorneys fees from all defendants - even health care providers.

In the tenth cause of action, Peter Gerber's wife seeks to recover for loss of consortium.

///
///
///
///

## III. LEGAL ARGUMENT

### A. Standard For Demurrer

Pursuant to California Code of Civil Procedure §§430.30 and 430.50, a defendant may demur to a complaint if a defect appears on the face thereof. California Code of Civil Procedure section 430.10 states in pertinent part:

> The party against whom the complaint or cross-complaint has been filed may object by demurrer . . . to the pleading on any one of the following grounds: (e) the pleading fails to state facts sufficient to constitute a cause of action; (f) the pleading is uncertain. As used in this subdivision, "uncertain" includes ambiguous and unintelligible.

It is well settled that a plaintiff must set forth specific facts in a complaint so that defendants can respond intelligently and responsively to the pleading without having to guess or speculate as to the central facts. *Ankeny v. Lockheed Missile and Space Co.* (1979) 88 Cal.App.3d 531. A demurrer for uncertainty may lie if the defendant cannot reasonably determine what issues must be admitted or denied, or what counts or claims are directed against him. *Khoury v. Maly's of California, Inc.* (1993) 14 Cal. App. 4th 612, 616.

In examining a complaint for its legal sufficiency to withstand a demurrer, a demurrer admits all material and issuable facts properly pled. However, while it is true that a demurrer admits all material facts that are properly plead, California courts have consistently held that, "conclusions of law or fact alleged are not considered in judging its sufficiency." *C&H Food Co. v. Hartford Ins. Co.* (1984) 163 Cal.App.3d 1055, 1062 (emphasis added); *Gruenberg v. Aetna Insurance Co.* (1973) 9 Cal.3d 566, 572; *Meggeff v. Donald* (1981) 123 Cal.App.3d 251, 258. As set forth below, each of the following causes of action asserted by plaintiffs fail to state facts sufficient to constitute a valid cause of action and/or are uncertain pursuant to C.C.P. 430.10(e) and 430.10(f).

### B. The Third Cause of Action: Negligence

Plaintiff has alleged that CPMC is a California corporation. [¶ 36] California law prohibits lay corporations from practicing medicine. [Bus. & Prof. C. §§ 2052, 2400.] The practice of medicine in California requires a physician or surgeon's certificate. [Bus. & Prof. C. §2051] Only

natural persons may be licensed under the Medical Practice Act. [Bus. & Prof. C. §2032] It is unlawful to practice medicine without a license except as authorized by law. [Bus. & Prof. C. §2052, 2053] Under Bus. & Prof. C. §2400, "corporations and other artificial entities shall have no professional rights, privileges or powers."

California courts recognize this long-standing proscription against the corporate practice of medicine. In 1936, California's Supreme Court stated, "It is an established doctrine that a corporation may not engage in the practice of such professions as law, medicine or dentistry." *People v. Pacific Health Corp.*, (1938) 12 Cal.2d 506, 509. More recently, in *Marik v. Superior Court* (1987) 191 Cal.App.3d 1136, the court reiterated California's prohibition against the corporate practice of medicine. With the following apt example, the *Marik* court explained that it is not always possible to divide the 'business' side of the corporation from the 'professional' side:

> The prospective purchase of a piece of radiological equipment could be impacted by business considerations (cost, gross billings to be generated, space and employee needs) medical considerations (type of equipment needed, scope of practice skill levels required by operators of the equipment, medical ethics), or by an amalgam of factors emanating from both business and medical areas. The interfacing of these variables may also require medical training, experience, and judgment. (*Id.*, at 1140, fn. 4.)

Thus, as a California corporation, CPMC cannot practice medicine.

Plaintiff seeks to recover for negligence against CPMC. It claims that this California corporation "provided professional medical services" to Mr. Gerber, including "subject[ing] Mr. Gerber to MRIs and MRAs using gadolinium-based contrast agents." [¶ 81] The complaint alleges that CPMC knew or should have known that these imaging studies posed a serious risk to patients with impaired renal function, such as Mr. Gerber [¶ 82]. The complaint alleges that CPMC was negligent in "examining, treating, and caring" for Mr. Gerber. [¶84] Finally, the complaint alleges that CPMC failed "to correctly ascertain, assess and account for Plaintiff's renal function" and failed to communicate the warnings, instructions, risks, dangers and side effects to Mr. Gerber about the prior to the MRIs and/or MRAs. [¶85]

Pursuant to Health & Safety Code §1250(a), CPMC is a general acute care hospital. Pursuant to this provision, it has an organized medical staff that provides 24-hour inpatient care,

including radiology services. The Medical Staff is a separate legal entity - i.e., self-governing and independently responsible from the hospital for its own duties and for its member physicians. See, e.g., Health & Saf.Code, §§ 1250, subd. (a); Cal.Code Regs., tit. 22, § 70701, subds. (a)(1)(D), (a)(1)(F).

Because CPMC cannot practice medicine, it was a physician who examined, treated and cared for Mr. Gerber and assessed his renal function. It was a physician who, knowing of Mr. Gerber's renal function, ordered the MRIs and/or MRAs. Likewise, it was a physician who determined whether the MRIs and/or MRAs required a contrast agent and, if so, which contrast agent to use. As the *Malek* court noted, these are medical considerations performed by individuals with a medical license – separate from the business considerations performed by a health facility such as CPMC.

Thus, while the complaint alleges that the MRI and/or MRA was performed *at* CPMC, as a matter of law, the MRI and/or MRA was not performed *by* CPMC. As a matter of law, this court should sustain CPMC's demurrer to the third cause of action without leave to amend.

C.     **The Fourth and Fifth Cause of Action: There is No Breach of Express or Implied Warranties.**

In the fourth cause of action, plaintiff alleges that CPMC expressly warranted that its MRI and MRA services were safe and effective, and that, because of the serious injury to individuals with renal insufficiency, it breached its express representations. [¶¶90, 91] In the fifth cause of action, plaintiffs allege that CPMC impliedly warranted that the MRI and MRA machines, and associated contrast agents, were of merchantable quality and safe for use. [¶94] Plaintiffs claim to have relied upon the implied warranties. [¶ 95, 96]

There are a variety of reasons why these causes of action fail as to CPMC. First, there are no allegations that gadolinium-based contrast agents are defective, or unsafe to anyone other than individuals with impaired kidney function. [see, e.g., ¶52, 54, 55-57] Put another way, there is no breach of warranty when individuals with normal kidney function receive galodinium-based contrast agents with MRIs and/or MRAs. CPMC cannot be liable for breach of warranty unless there was a defective product.

1  Second, because CPMC does not practice medicine, it did not (and could not) assess Mr. Gerber's kidney function. Without knowledge of Mr. Gerber's kidney function, CPMC could not warrant – much less breach the alleged warranty – that galodinium-based contrast agents were safe and effective, or of merchantable quality. CPMC cannot be liable for breach of warranty unless it knew of his impaired kidney function.

Finally, a sale is an essential element of any warranty, express or implied. *Fogo v. Cutter Laboratories, Inc.* (1977) 68 Cal. App.3d 744, 759. CPMC did not 'sell' a product to Mr. Gerber; it filled the orders of Mr. Gerber's physicians by providing the MRI and/or MRA, and by providing the ordered contrast agents – galodinium-based or not. It provided a service specifically ordered by physicians. CPMC cannot be liable for breach of warranty because there was no sale.

**D.    The Ninth Cause of Action: There is No Violation of the Consumer Legal Remedies' Act.**

Plaintiffs allege that all defendants violated subsections of Civil Code §1770(a) of the California Legal Remedies Act [CRLA] – i.e., Subdivision (5), representing that the goods or services have the sponsorship, approval, characteristics, ingredients, uses, benefits or quantities which they do not have; Subdivision (7), representing that the goods or services are of a particular standard, quality or grade; and Subdivision (9), advertising goods or services with the ntent not to sell them as advertised. Through this cause of action, plaintiffs seek an injunction, punitive damages and attorneys fees.

This statute does not apply to CPMC. The CRLA "protects consumers against unfair and deceptive business practices." [Civ. C. §1760] A "consumer" is "an individual who seeks or acquired, by purchase or lease, any goods or services for personal, family, or household purposes." [Civ. C. §1761(d).] Mr. Gerber was not a 'consumer' under Civ. C. §1761(d) when he underwent a physician-ordered MRI and/or MRA with a gadolinium-based contrast.

Further, only 'consumers' who suffer damage *"as a result of the use or employment"* of the proscribed act or practice may sue under Civ. C. §1780(a). Thus, plaintiff must allege and establish not only that a defendant's conduct was deceptive, but also that he relied upon the deception and that the deception caused him harm. *Buckland v. Threshold Enterprises, Ltd.* (2007) 155

Cal.App.4th 798. Plaintiff's injuries occurred, according to the complaint, because of the administration of gadolinium-based contrast agents to an individual with impaired kidney function during the MRI and/or MRA – not because of CPMC's alleged 'marketing, promoting, or selling' of contrast agents.

Finally, the complaint does not allege that CPMC's alleged conduct involved a transaction intended to result in the sale or lease of *goods* or *services*. 'Goods' and 'services,' both statutorily defined, do not encompass medical care ordered by a physician for administration in a hospital. This defendant is unaware of any California court that has applied the CRLA to medical care provided by health care providers.

### E. The Tenth Cause of Action: Miriam Goldman has No Loss of Consortium Claim against CPMC Without A Valid Claim by Peter Gerber.

A spouse may bring a loss of consortium cause of action for damages suffered by that spouse as a result of the bodily injury to the other spouse, caused by a defendant's negligence. CACI 3920; *Rodriguez v. Bethlehem Steel Corp.* (1974) 12 Cal.3d 382, 408.

However, a loss of consortium action is derivative of other negligent torts, and arises out of the defendant's breach of some other duty. "An unsuccessful personal injury suit by the physically injured spouse acts as an estoppel that bars the spouse who would claim damages as loss of consortium." *Meighan v. Shore* (1995) 34 Cal.App.4th 1025, 1035-1046. Where a plaintiff can state no cause of action sounding in negligence or intentional tort, the plaintiff's spouse has no cause of action for loss of consortium. *Blain v. Doctors Co.,* (1990) 222 Cal.App.3d 1048, 1067.

In this case, because Peter Gerber cannot establish a claim against CPMC on any theory, his wife, Miriam Goldman, cannot establish a loss of consortium claim. To the extent that this Court sustains CPMC's demurrer to the preceding causes of action without leave to amend, CPMC respectfully requests that this Court sustain its demurrer to Ms. Goldman's loss of consortium claim without leave to amend.

///

///

///

## IV. CONCLUSION

California law does not support plaintiffs' causes of action against CPMC – a hospital and health care provider pursuant to Health & Safety Code §1250. This court should sustain CPMC's demurrer to the third, fourth, fifth, ninth and tenth causes of action without leave to amend.

Dated: December 10, 2007

LEWIS BRISBOIS BISGAARD & SMITH LLP

By: *Carol Sleeth*
Daniel J. Meagher
Carol Sleeth
Attorneys for Defendant
CALIFORNIA PACIFIC MEDICAL CENTER

# EXHIBIT B

California Pacific Medical Center-San Francisco, California
Pacific Campus (415) 600-3232   California Campus (415) 750-6025
Davies Campus (415) 565-6180

## RADIOLOGY CONSULTATION REPORT

Name: GERBER, PETER J
Indication: NEUROPATHY
Report Status: Archived
Location: OUTPAP
ACCT#: 04294562   Exam: MRI BRAIN W/O CONT

DOB: 07/13/1935   MR#: 01368115
Term Loc: PDREC1
Exam Date: 07/17/2004
Exam Code: M07015   Order#: CPM0408445

MR: 01368115   Patient: GERBER, PETER J
Exam Date: 07/17/2004
Exam:   MRI Head

Indication: NEUROPATHY

CLINICAL INFORMATION: Tremor. Neuropathy.

No prior studies for comparison.

TECHNIQUE: Sagittal T1, axial dual echo FSE T2, coronal FLAIR, axial DW-EP, coronal GRE T2. Intravenous contrast was not administered secondary to patient's request.

FINDINGS:

There is no evidence of intraparenchymal mass or hemorrhage. No evidence of restricted diffusion to suggest acute infarct.

Ventricles, sulci and basilar cisterns are mildly enlarged commensurate with age-related involutional changes. There are multiple foci of T2 prolongation present in the periventricular and subcortical white matter bilaterally somewhat confluent at the centrum semiovale. Findings are most severe in the periventricular white matter at the atria of the lateral ventricles. These lesions fail to demonstrate evidence of restricted diffusion and are nonspecific in appearance, but likely reflects small vessel ischemic disease. All major intracranial flow voids, including those of the dural sinuses are normal in appearance.

Paranasal sinuses and mastoid air cells are clear where visualized. The orbits are unremarkable.

---

T:  07/19/2004 DA
Physician(s):   Sweet, Diana
                Saitowitz, Kevin
                Chertow, Glenn
                Amend, William J

Ord. MD: Kitt, Donald C

RADIOLOGY CONSULTATION REPORT

Name: GERBER, PETER J.       DOB: 07/13/1935   MR#: 01368115
Report Status: Archived
Location: OUTPAP       Exam Code: M07015   Order#: CPM0408445
ACCT#: 04294562

IMPRESSION:
Mild age-related involutional changes with moderate to moderately severe small vessel ischemic disease.

Dictated By:
William Harvey, MD
da
D: 07/19/04

Electronically Signed
07/20/2004 18:24

T: 07/19/2004 DA
Physician(s):  Sweet, Diana
               Saitowitz, Kevin        Ord. MD: Kitt, Donald C
               Chertow, Glenn
               Amend, William J

California Pacific Medical Center-San Francisco, California
Pacific Campus (415) 600-3232   California Campus (415) 750-6025
Davies Campus (415) 565-6180

RADIOLOGY CONSULTATION REPORT

Name: GERBER, PETER J
Indication: KIDNEY TRANSPLANT NEXT MONTH
Report Status: Archived
Location: DIALY
ACCT#: 03770165   Exam: MRA ABDOMEN W-W/O CONT
DOB: 07/13/1935   MR#: 01368115
Term Loc: PMSCAN
Exam Date: 07/29/2003
Exam Code: M07162   Order#: CPM0306511

MR: 01368115   Patient: GERBER, PETER J
Exam Date: 07/29/2003
Exam: MRI Anglo Abdomen Complete

Indication: KIDNEY TRANSPLANT NEXT MONTH

CLINICAL INFORMATION: 68 year-old male for kidney transplant.

TECHNIQUE: Sagittal T1, axial T1, post-gadolinium fat sat T1 and contrast enhanced MR angiography of the abdomen was performed. In addition, 3D time of flight MRA and MRV of the pelvis was obtained.

FINDINGS:
Visualized portions of the liver, spleen, pancreas, and adrenal glands are normal in appearance.

The kidneys are severely atrophied bilaterally with multiple small cysts. No definite renal mass identified.

There is no evidence of abdominal or pelvic ascites or lymphadenopathy appreciated.

There is mild tortuosity of the abdominal aorta and common iliac arteries, most prominent at the left common iliac artery. There is no evidence of aneurysmal dilatation of the abdominal aorta, common iliac arteries, internal/external iliac arteries, or femoral arteries bilaterally. There is mild fusiform aneurysmal dilatation of the celiac artery approximately 3.4 cm from its origin measuring up to 1.4 cm in greatest dimension (at the origin it measures 7.5 mm). The superior and inferior mesenteric arteries are normal in appearance.

Patient has an IVC filter in place in an infrarenal location. There is loss of signal at the level of the filter, most likely secondary to magnetic susceptibility artifact, although thrombus cannot be

T: 07/29/2003 MM
Physician(s): Non Staff Physician          Ord. MD: Non Staff
Physician

RADIOLOGY CONSULTATION REPORT

Name: GERBER, PETER J          DOB: 07/13/1935    MR#: 01368115

Report Status: Archived
Location: DIALY          Exam Code: M07162    Order#: CPM0306511
ACCT#: 03770165

entirely excluded at this level. There is flow related enhancement both inferior as well as superior to this level, consistent with non-occlusion. The greater saphenus veins are not identified. The common iliac, internal and external iliac, and femoral veins are normal in appearance and widely patent.

The prostate is mildly enlarged measuring up to 5.1 cm in greatest axial dimension.

IMPRESSION:

1. Moderate tortuosity of the abdominal aorta and iliac arteries, without evidence of aneurysmal dilatation.
2. IVC filter in place with loss of signal at the level of the filter. Question thrombus versus magnetic susceptibility artifact. Flow is demonstrated both proximally and distally within the IVC. No evidence of occlusion.
3. Native kidneys markedly atrophic with multiple renal cysts identified. There is no evidence of renal mass.

Dictated By:
William Harvey, MD

D: 08/13/03

CC WILLIAM AMEND MD, UCSF, Fax# 353-8708
CC GARY MILECHMAN MD
CC DIANA SWEET MD
CC KEVIN SIDEOWITZ MD
CC GWEN CHERTOW MD
CC PETER GERBER

T: 07/29/2003 MM
Physician(s): Non Staff Physician          Ord. MD:Non Staff Physician

RADIOLOGY CONSULTATION REPORT

Name: GERBER, PETER J          DOB: 07/13/1935    MR#: 01368115
Report Status: Archived
Location: DIALY          Exam Code: M07162   Order#: CPM0306511
ACCT#: 03770165

Electronically Signed
08/14/2003 15:52

T: 07/29/2003 MM
Physician(s): Non Staff Physician          Ord. MD: Non Staff Physician