# EXHIBIT "B"

# SUMMONS
## *(CITACION JUDICIAL)*

SUM-100

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Bayer Corporation and Bayer Healthcare
Pharmaceuticals, Inc.; BMC Diagnostics, Inc.;
California Pacific Medical Center; General Electric
Company; GE Healthcare, Inc.; GE Healthcare Bio-
Sciences Corp.; McKesson Corporation; Merry X-Ray
Chemical Corp; and Does 1 through 35

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Peter Jay Gerber and Miriam Goldberg

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

---

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

---

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>San Francisco Superior Court<br>400 McAllister Street<br><br>San Francisco, CA 94102 | CASE NUMBER<br>*(Número del Caso):*   07-468577 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Lawrence J. Gornick (SBN 136290)          (415) 646-7160   (415) 981-1270
Levin Simes Kaiser & Gornick
44 Montgomery Street, Suite 3600
San Francisco, CA 94104

DATE: OCT 2 6 2007        Gordon Park-Li    Clerk, by _____ P. NATT _____ , Deputy
*(Fecha)*                                    *(Secretario)*                      *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.

2. ☐ as the person sued under the fictitious name of *(specify)*:

3. ☐ on behalf of *(specify)*:

    under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
         ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
         ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
         ☐ other *(specify)*:

4. ☐ by personal delivery on *(date)*:

Page 1 of 1





[SEAL] SUPERIOR COURT OF CALIFORNIA COUNTY OF SAN FRANCISCO

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Legal Solutions Plus

Code of Civil Procedure §§ 412.20, 465

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Lawrence J. Gornick (SBN 136290)<br>Debra DeCarli (SBN 237642)<br>Levin Simes Kaiser & Gornick<br>44 Montgomery Street, Suite 3600<br>San Francisco, CA 94104 | **FILED**<br>San Francisco County Superior Court<br>OCT 2 6 2007<br>GORDON PARK-LI, Clerk<br>BY: _Param Natt_<br>Deputy Clerk |
| TELEPHONE NO: (415) 646-7160    FAX NO: (415) 981-1270 | |
| ATTORNEY FOR (Name): Plaintiffs | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME:

CASE NAME: Gerber v Bayer Corporation, et al

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER CGC-07-468577 |
|---|---|---|
| [X] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT: |

*Items 1-6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | (Cal. Rules of Court, rules 3.400-3.403) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03) |
| Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort | [ ] Other collections (09) | [ ] Construction defect (10) |
| [ ] Asbestos (04) | [ ] Insurance coverage (18) | [ ] Mass tort (40) |
| [X] Product liability (24) | [ ] Other contract (37) | [ ] Securities litigation (28) |
| [ ] Medical malpractice (45) | Real Property | [ ] Environmental/Toxic tort (30) |
| [ ] Other PI/PD/WD (23) | [ ] Eminent domain/Inverse condemnation (14) | [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| Non-PI/PD/WD (Other) Tort | [ ] Wrongful eviction (33) | Enforcement of Judgment |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | [ ] Enforcement of judgment (20) |
| [ ] Civil rights (08) | Unlawful Detainer | Miscellaneous Civil Complaint |
| [ ] Defamation (13) | [ ] Commercial (31) | [ ] RICO (27) |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] Other complaint (not specified above) (42) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | Miscellaneous Civil Petition |
| [ ] Professional negligence (25) | Judicial Review | [ ] Partnership and corporate governance (21) |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Other petition (not specified above) (43) |
| Employment | [ ] Petition re: arbitration award (11) | |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [ ] is [X] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties     d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel     e. [ ] Coordination with related actions pending in one or more courts issues that will be time-consuming to resolve     in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence     f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [X] monetary b. [X] nonmonetary; declaratory or injunctive relief c. [X] punitive

4. Number of causes of action (specify): 10

5. This case [ ] is [X] is not a class action suit.

6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: October 26, 2007

Lawrence J. Gornick (SBN 136290)
(TYPE OR PRINT NAME)                                        
                                                           (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Legal Solutions Plus

Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10

1  Lawrence J. Gornick (SBN 136290)
   Debra DeCarli (SBN 237642)
2  **LEVIN SIMES KAISER & GORNICK LLP**
   44 Montgomery Street, 36th Floor
3  San Francisco, CA 94104
   Telephone: (415) 646-7160
4  Fax: (415) 981-1270
   lgornick@lskg-law.com
5  ddecarli@lskg-law.com

6

7  Bruce W. Blakely (SBN 106832)
   **FLAXMAN & BLAKELY, AN ASSOCIATION**
8  591 Redwood Highway, Suite 2275
   Mill Valley, CA 94941
9  Telephone: (415) 381-6650
   Fax: (415) 381-4301
10 bruce@brucewblakely.com

11 Attorneys for Plaintiffs

SUMMONS ISSUED
**F I L E D**
San Francisco County Superior Court

OCT 2 6 2007

GORDON PAHX-LI, Clerk
BY: _____
Deputy Clerk
P. NATT

CASE MANAGEMENT CONFERENCE SET

MAR 2 8 2008 -9:00 AM

DEPARTMENT 212

12          **SUPERIOR COURT OF CALIFORNIA, UNLIMITED JURISDICTION**

13                       **COUNTY OF SAN FRANCISCO**

| | |
|---|---|
| 14  PETER JAY GERBER AND MIRIAM GOLDBERG, | Case No: **C G C -07- 4 6 8 5 7 7** |
| 16                  Plaintiffs, | **COMPLAINT FOR DAMAGES DUE TO:** |
| 16      vs. | |
| 17  BAYER CORPORATION AND BAYER HEALTHCARE PHARMACEUTICALS, INC.; BMC DIAGNOSTICS, INC.; CALIFORNIA PACIFIC MEDICAL CENTER; GENERAL ELECTRIC COMPANY; GE HEALTHCARE, INC.; GE HEALTHCARE BIO-SCIENCES CORP.; McKESSON CORPORATION; MERRY X-RAY CHEMICAL CORP.; and DOES 1 through 35          Defendants. | 1) **STRICT LIABILITY: FAILURE TO WARN** (Manufacturing and Distributor Defendants); 2) **NEGLIGENCE** (Manufacturing and Distributor Defendants); 3) **NEGLIGENCE** (Imaging Facility Defendants) 4) **BREACH OF EXPRESS WARRANTY** (Imaging Facility Defendants); 5) **BREACH OF IMPLIED WARRANTY** (Imaging Facility Defendants); 6) **FRAUD: MISREPRESENTATION** (Manufacturing Defendants); 7) **FRAUD: CONCEALMENT, SUPPRESSION OR OMISSION OF MATERIAL FACTS** (Manufacturing Defendants); 8) **NEGLIGENT MISREPRESENTATION** (Manufacturing Defendants); |

27

28

                                 - 1 -
                **COMPLAINT FOR DAMAGES AND JURY DEMAND**

9) **VIOLATION OF CONSUMER LEGAL REMEDIES ACT** (All Defendants); and
10) **LOSS OF CONSORTIUM** (All Defendants)

Plaintiffs, Peter Jay Gerber and Miriam Goldberg, (hereinafter "Plaintiffs") allege as follows:

## PARTIES

### *Plaintiffs*

1.      Peter Jay Gerber ("Mr. Gerber") and his wife, Miriam Goldberg ("Ms. Goldberg"), are residents of the State of California. Mr. Gerber has nephrogenic systemic fibrosis ("NSF"). NSF is an incurable, painful and deadly disease. It causes thickening and hardening of the skin. The disease frequently immobilizes afflicted individuals and can cause fibrosis of various organs and muscles. It is a progressive disease with no known cure. Mr. Gerber contracted NSF as a result of receiving MRIs and MRAs using intravenous injections of gadolinium-based contrast agents.

### *Manufacturing Defendants*

2.      Defendants Bayer Corporation and Bayer HealthCare Pharmaceuticals, Inc. (jointly referred to as "Bayer") manufacture and sell Magnevist, a gadolinium-based contrast agent that was injected into Mr. Gerber.

3.      Defendant Bayer Corporation is an Indiana business entity with its principal place of business in Robinson Township, Allegheny County, Pennsylvania.

4.      Bayer Corporation is duly authorized to conduct business in the State of California and does business in California and in San Francisco County.

5.      Defendant Bayer HealthCare Pharmaceuticals, Inc., a subsidiary of Bayer Corporation, is a Delaware business entity with its principal place of business in Montville, New Jersey and/or in Wayne, New Jersey.

6.      Bayer HealthCare Pharmaceuticals, Inc. is duly authorized to conduct business in the State of California and does business in California and in San Francisco County.

- 2 -

COMPLAINT FOR DAMAGES AND JURY DEMAND

7.    At all times relevant to this complaint, Bayer advertised, promoted, and sold Magnevist in California and San Francisco County.

8.    Defendants General Electric Company, GE Healthcare, Inc., and GE Healthcare Bio-Sciences Corp. (collectively referred to as "GE") manufacture and sell Omniscan, a gadolinium-based contrast agent that was injected into Mr. Gerber.  GE also manufactures and sells the MRI and MRA machines used in conjunction with gadolinium-based contrast agents.  One or more of Peter Gerber's MRIs and/or MRAs was performed using a GE machine.

9.    Defendant General Electric Company is a New York business entity with its principal place of business at 3135 Easton Turnpike, Fairfield, Connecticut 06431.

10.    General Electric Company is duly authorized to conduct business in the State of California and does business in California and in San Francisco County.

11.    Defendant GE Healthcare, Inc. is a Delaware corporation with its principal place of business at 101 Carnegie Center, Princeton, New Jersey.

12.    GE Healthcare, Inc. is duly authorized to conduct business in the State of California and does business in California and in San Francisco County.

13.    Defendant GE Healthcare Bio-Sciences Corp. is a Delaware corporation with its principal place of business at 800 Centennial Avenue, Piscataway, New Jersey 08854.

14.    GE Healthcare Bio-Sciences Corp. is duly authorized to conduct business in the State of California and does business in California and in San Francisco County.

15.    At all times relevant to this complaint, GE advertised, promoted, and sold Omniscan and its MRI and MRA machines in California and San Francisco County.

16.    The true names and capacities of those Defendants designated as Does 1-10 are unknown to Plaintiffs.  Plaintiffs allege on information and belief that Does 1-10 manufactured gadolinium-based contrast agents that were injected into Mr. Gerber and/or manufactured MRI and MRA machines with which MRIs and/or MRAs were performed on Mr. Gerber using gadolinium-based contrast agents.  Plaintiffs allege on information and belief that each of these fictitiously named defendants bears legal responsibility for the events and damages set forth in this complaint.

- 3 -

COMPLAINT FOR DAMAGES AND JURY DEMAND

17.     Plaintiffs allege on information and belief that Does 1-10 were and are companies authorized to do and doing business in the State of California and have regularly conducted business in the County of San Francisco, State of California.

18.     Plaintiffs will amend this Complaint to show the identity of each fictitiously named Defendant when they have been ascertained.

19.     The Bayer and GE Defendants, along with Does 1-10, are collectively referred to as the Manufacturing Defendants.

***Distributor Defendants***

20.     Defendant McKesson Corporation distributes Omniscan.  Plaintiffs allege on information and belief that McKesson distributed the Omniscan that was injected into Mr. Gerber.

21.      Defendant McKesson Corporation is a Delaware corporation with its principal place of business at One Post Street, San Francisco, California 94104.

22.     McKesson Corporation is duly authorized to conduct business in the State of California and does business in California and in San Francisco County.

23.     At all times relevant to this complaint, McKesson sold Omniscan in California and San Francisco County.

24.     Defendant Merry X-Ray Chemical Corporation distributes Magnevist.  Plaintiffs allege on information and belief that Merry X-Ray distributed the Magnevist that was injected into Mr. Gerber.

25.      Defendant Merry X-Ray Chemical Corporation is a California corporation with its principal place of business at 4444 Viewridge Avenue, San Diego, California 92123.

26.     Merry X-Ray Chemical Corporation is duly authorized to conduct business in the State of California and does business in California and in San Francisco County.

27.     At all times relevant to this complaint, Merry X-Ray sold Magnevist in California and San Francisco County.

28.     The true names and capacities of those Defendants designated as Does 11-25 are unknown to Plaintiffs.  Plaintiffs allege on information and belief that Does 11-25 distributed

- 4 -

COMPLAINT FOR DAMAGES AND JURY DEMAND

1    gadolinium-based contrast agents that were injected into Plaintiff Peter Gerber and/or distributed MRI

2    and MRA machines with which MRIs and/or MRAs were performed on Mr. Gerber using gadolinium-

3    based contrast agents. Plaintiffs allege on information and belief that each of these fictitiously named

4    Defendants bears legal responsibility for the events and damages set forth in this Complaint.

5         29.    Plaintiffs allege on information and belief that Does 11-25 were and are companies

6    authorized to do and doing business in the State of California and have regularly conducted business in

7    the County of San Francisco, State of California.

8         30.    Plaintiffs will amend this Complaint to show the identity of each fictitiously named

9    defendant when they have been ascertained.

10         31.    McKesson and Merry X-Ray, along with Does 11-25, are collectively referred to as the

11    Distributor Defendants.

12    *Imaging Facility Defendants*

13         32.    Mr. Gerber received one or more MRIs and/or MRAs at a facility of Defendant BMC

14    Diagnostics, Inc. ("BMC").

15         33.    Defendant BMC Diagnostics, Inc. is a California Corporation with its principal place of

16    business at 2000 Powell Street, Suite 1050, Emeryville, California 94608.

17         34.    BMC Diagnostics, Inc. is duly authorized to conduct business in the State of California

18    and does business in California.

19         35.    Mr. Gerber received one or more MRIs and/or MRAs at a facility of Defendant

20    California Pacific Medical Center ("CPMC").

21         36.    California Pacific Medical Center is a California Corporation with its principal place of

22    business at 2333 Buchanan Street, San Francisco, California 94115.

23         37.    California Pacific Medical Center is duly authorized to conduct business in the State of

24    California and does business in California and in San Francisco County.

25         38.    The true names and capacities of those Defendants designated as Does 26-35 are

26    unknown to Plaintiffs. Plaintiffs allege on information and belief that Does 26-35 are facilities at

27    which MRIs and/or MRAs were performed on Mr. Gerber using gadolinium-based contrast agents.

28

- 5 -

COMPLAINT FOR DAMAGES AND JURY DEMAND

1  Plaintiffs allege on information and belief that each of these fictitiously named defendants bears legal
2  responsibility for the events and damages set forth in this complaint.

3      39.    Plaintiffs allege on information and belief that Does 26-35 were and are corporations
4  authorized to do and doing business in the State of California and have regularly conducted business in
5  the County of San Francisco, State of California.

6      40.    Plaintiffs will amend this Complaint to show the identity of each fictitiously named
7  Defendant when they have been ascertained.

8      41.    BMC and CPMC, along with Does 26-35, are jointly referred to as the Imaging Facility
9  Defendants.

10      42.    The Manufacturing Defendants, Distributor Defendants, and Imaging Facility
11  Defendants are collectively referred to as All Defendants.

12                                          **FACTS**

13      43.    Mr. Gerber has nephrogenic systemic fibrosis ("NSF"). NSF is an incurable, painful
14  and potentially fatal disease.

15      44.    NSF is predominantly characterized by discoloration, thickening, tightening, and
16  swelling of the skin after receiving a gadolinium-based contrast agent injection. These fibrotic and
17  edematous changes produce muscular weakness and inhibit flexion and extension of joints, resulting in
18  contractures. NSF often progresses to painful inhibition of the ability to use the arms, legs, hands,
19  feet, and other joints. The skin changes that begin as darkened patches or plaques progress to a
20  "woody" texture and are accompanied by burning, itching, or severe pain in the areas of involvement.
21  NSF also progresses to a fibrotic or scarring condition of other body organs such as the lungs, heart,
22  liver, and musculature, and that can inhibit their ability to function properly and may lead to death.
23  NSF is a progressive disease for which there is no known cure. The clinical entity known as NSF has
24  been described in the medical literature since at least 1997.

25      45.    NSF is a man-made disease. It only occurs in patients who have received a gadolinium-
26  based contrast agent for an MRI or an MRA.

27

28

COMPLAINT FOR DAMAGES AND JURY DEMAND

46.     Gadolinium is a highly toxic heavy metal. It does not occur naturally in the human body. The only known route for gadolinium to enter the human body is injection of a gadolinium-based contrast solution. The toxicity of gadolinium to humans has been known since at least 1965. Gadolinium is detectable within the tissue of patients with NSF.

47.     Because gadolinium is toxic, it has to be coated to keep it from coming in contact with human tissue when used in connection with MRIs or MRAs. This coating process is called chelation.

48.     Gadolinium is eliminated from the body by the kidneys. Gadolinium-based contrast solutions are not safe if the chelate separates from the gadolinium, which is what happens over time if kidneys are not functioning properly. The Manufacturing Defendants never tested the safety of their gadolinium-based contrast agents in individuals with kidney impairment.

49.     Mr. Gerber received MRIs and MRAs utilizing gadolinium-based contrast agents manufactured by the Manufacturing Defendants and distributed by the Distributor Defendants. The FDA has never approved the use of gadolinium-based contrast agents for MRAs, which requires a dose approximately three times stronger than the dose recommended by the FDA for MRIs.

50.     Gadolinium-based contrast agents with a linear or chain chemical structure are less stable than gadolinium-based contrast agents with a cyclic or ring structure. The greater stability of the ring structure has been known since at least 1991.

51.     Both Magnevist and Omniscan are chelated utilizing a linear or chain chemical structure, despite the fact that the instability of linear structures has been known since 1991.

52.     Individuals with impaired kidney function risk dechelation and cannot efficiently or quickly eliminate gadolinium from their bodies. The risk of gadolinium-based contrast agents to individuals with impaired kidney function has been known since at least 1994.

53.     In pre-clinical studies during which gadolinium-based contrast agents were injected into laboratory animals, consistent patterns of toxicity including nephrogenic fibrotic changes in the kidneys and other body organs occurred.

- 7 -
COMPLAINT FOR DAMAGES AND JURY DEMAND

54.    Both Magnevist and Omniscan were sold, distributed and used on Mr. Gerber, in a GE MRI machine designed to be used with gadolinium-based contrast agents, well after 1994, despite the known risk to individuals with impaired kidney function.

55.    Mr. Gerber had impaired kidney function at the time he received his first injection of gadolinium-based contrast agent in 1997 and continued to have impaired kidney function at the time he received each subsequent injection of gadolinium-based contrast agent.

56.    During the years that Defendants have manufactured, marketed, distributed, sold and administered gadolinium-based contrast agents, there have been numerous case reports, studies, assessments, papers, and other clinical data that have described and/or demonstrated NSF in connection with the use of gadolinium-based contrast agents.

57.    During the time period when Mr. Gerber received injections of the Manufacturing Defendants' gadolinium-based contrast agents, Defendants knew or should have known that the use of gadolinium-based contrast agents created a risk of serious bodily injury and death in patients with renal insufficiency.

58.    Defendants failed to warn Mr. Gerber and his prescribing physicians about the serious health risks associated with gadolinium-based contrast agents, and failed to disclose the fact that there were safer alternatives to Magnevist and Omniscan.

59.    As a direct and proximate result of receiving injections of gadolinium-based contrast agents manufactured, distributed, sold and/or administered by Defendants, Mr. Gerber developed NSF.

60.    Although the disease appears to be ultimately incurable, Mr. Gerber endures costly photopheresis treatment in an attempt to slow the inevitable deadly spread of NSF.

61.    Defendants have repeatedly and consistently failed to advise consumers and/or their doctors of the causal relationship between gadolinium-based contrast agents and NSF in patients with renal insufficiency.  Defendants knew or should have known of the risk of NSF posed by gadolinium-based contrast agents to individuals with impaired kidney function years before they finally issued warnings.

COMPLAINT FOR DAMAGES AND JURY DEMAND

62.    It was not until September 2007 that Bayer and GE sent letters to healthcare providers warning them of the risk of NSF to kidney impaired individuals who received MRIs using gadolinium-based contrast agents.

63.    Had Mr. Gerber and/or his doctors been warned about the risks associated with gadolinium-based contrast agents, he would not have been administered gadolinium-based contrast agents and would not have been afflicted with NSF.

64.    As a direct and proximate result of Mr. Gerber being administered gadolinium-based contrast agents, he has suffered severe physical injury, pain and suffering, including, but not limited to, the effects of NSF. Mr. Gerber's physical injuries, pain and suffering will inevitably worsen over time and will in all likelihood lead to death.

65.    As a direct and proximate result of being administered gadolinium-based contrast agents, Mr. Gerber suffered and continues to suffer significant mental anguish and emotional distress and will continue to suffer significant mental anguish and emotional distress in the future.

66.    As a direct and proximate result of being administered gadolinium-based contrast agents, Mr. Gerber has also incurred medical expenses and other economic damages and will continue to incur such expenses in the future,

## DISCOVERY RULE & FRAUDULENT CONCEALMENT

67.    The discovery rule should be applied to toll the running of the statute of limitations until Plaintiffs knew or through the exercise of reasonable care and diligence should have known of the existence of their claims against all Defendants. The nature of Plaintiffs' injuries and damages, and their relationship to gadolinium-based contrast agents used in conjunction with MRIs and MRAs, was not discovered, and through reasonable care and due diligence could not have been discovered, by Plaintiffs, until a time less than two years before the filing of this Complaint. Therefore, under

- 9 -

appropriate application of the discovery rule, Plaintiffs' suit was filed well within the applicable statutory limitations period.

68.    All Defendants are estopped from asserting a statute of limitations defense because all Defendants fraudulently concealed from Plaintiffs the nature of Plaintiffs' injury and the connection between the injury and all Defendants' tortious conduct.

**FIRST CAUSE OF ACTION**
(Against Manufacturing and Distributor Defendants)
**STRICT LIABILITY: FAILURE TO WARN**

69.    Plaintiffs incorporate by reference and reallege each paragraph set forth above.

70.    The Manufacturing Defendants' gadolinium-based contrast agents, and MRI and MRA machines designed to be used in conjunction with gadolinium-based contrast agents, were defective due to inadequate warnings or instruction for use, both prior to marketing and post-marketing. Manufacturing Defendants knew or should have known that their products created significant risks of serious bodily harm and death to consumers. Manufacturing Defendants failed to adequately warn consumers and their healthcare providers of such risks.

71.    Because of Manufacturing Defendants' failure to provide adequate warnings with their products, Mr. Gerber was injected with gadolinium-based contrast agents which the Manufacturing Defendants manufactured, designed, sold, supplied, marketed and introduced into the stream of commerce. Those gadolinium-based contrast agents are the legal cause of Mr. Gerber's serious physical injuries, harm, damages and economic loss. Mr. Gerber will continue to suffer such harm, damages and economic loss in the future.

**SECOND CAUSE OF ACTION**
(Against Manufacturing and Distributor Defendants)
**NEGLIGENCE**

72.    Plaintiffs incorporate by reference and reallege each paragraph set forth above.

73.    Manufacturing and Distributor Defendants had a duty to exercise reasonable care in the design, formulation, testing, manufacture, labeling, marketing, sale and/or distribution of gadolinium-

- 10 -

COMPLAINT FOR DAMAGES AND JURY DEMAND

1    based contrast agents and the MRI and MRA machines designed to be used in conjunction with
2    gadolinium-based contrast agents. In particular, they had a duty to assure that their products did not
3    pose an unreasonable risk of bodily harm and adverse events.

4        74.    Manufacturing and Distributor Defendants failed to exercise reasonable care in the
5    design, formulation, manufacture, sale, testing, marketing, or distribution of gadolinium-based contrast
6    agents and the MRI and MRA machines designed to be used in conjunction with gadolinium-based
7    contrast agents in that they knew or should have known that the products could cause significant
8    bodily harm or death and were not safe for use by certain types of consumers.

9        75.    Manufacturing and Distributor Defendants failed to exercise ordinary care in the
10   labeling of gadolinium-based contrast agents and the labeling of MRI and MRA machines designed to
11   be used in conjunction with gadolinium-based contrast agents and failed to issue to consumers and
12   their health care providers adequate warnings concerning the risks of serious bodily injury or death
13   due to the use of gadolinium-based contrast agents and the MRI and MRA machines designed to be
14   used in conjunction with gadolinium-based contrast agents.

15       76.    Despite the fact that Manufacturing and Distributor Defendants knew or should have
16   known that gadolinium-based contrast agents and the MRI and MRA machines designed to be used in
17   conjunction with gadolinium-based contrast agents posed a serious risk of bodily harm to consumers,
18   Manufacturing and Distributor Defendants unreasonably continued to manufacture and market
19   gadolinium-based contrast agents and the MRI and MRA machines designed to be used in conjunction
20   with gadolinium-based contrast agents for administration to MRI and MRA patients with renal
21   insufficiency and failed to exercise reasonable care with respect to post-sale warnings and instructions
22   for safe use.

23       77.    At all relevant times, it was foreseeable to Manufacturing and Distributor Defendants
24   that consumers like Mr. Gerber would suffer injury as a result of their failure to exercise ordinary care
25   as described above.

26

27

28

- 11 -

COMPLAINT FOR DAMAGES AND JURY DEMAND

78.     As a direct and proximate result of the Manufacturing and Distributor Defendants'
negligence, Mr. Gerber has suffered serious physical injuries, harm, damages and economic loss and
will continue to suffer such harm, damages and economic loss in the future.

79.     The foregoing acts, conduct and omissions of Manufacturing and Distributor
Defendants were vile, base, willful, malicious, wanton, oppressive and fraudulent, and were done
with a conscious disregard for the health, safety and rights of Plaintiffs and other users of
Manufacturing and Distributor Defendants' products, and for the primary purpose of increasing
Manufacturing and Distributor Defendants' profits.  As such, Plaintiff is entitled to exemplary
damages.

## THIRD CAUSE OF ACTION
### (Against Imaging Facility Defendants)
### NEGLIGENCE

80.     Plaintiffs incorporate by reference and reallege each paragraph set forth above.

81.     The Imaging Facility Defendants provided professional medical services to Mr. Gerber.
Specifically, the Imaging Facility Defendants subjected Mr. Gerber to MRIs and MRAs using
gadolinium-based contrast agents.

82.     The Imaging Facility Defendants knew or should have known that administering MRIs
and MRAs using gadolinium-based contrast agents to patients with impaired renal function, such as
Plaintiff, posed a serious risk of bodily harm to such patients.

83.     The Imaging Facility Defendants held themselves out to be knowledgeable in the
safety, efficacy and use of MRIs and MRAs.

84.     The Imaging Facility Defendants negligently failed to exercise the proper degree of
knowledge and skill in examining, treating, and caring for Plaintiff.

85.     The Imaging Facility Defendants breached their duty of care to Plaintiff by failing to
correctly ascertain, assess and account for Plaintiff's renal function prior to subjecting Plaintiff to
MRIs and MRAs and by failing to adequately communicate to Plaintiff the warnings, instructions,
risks, dangers and side effects of receiving MRIs and MRAs using gadolinium-based contrast agents.

- 12 -

86.     Despite the fact that Imaging Facility Defendants knew or should have known that gadolinium-based contrast agents and the MRI and MRA machines designed to be used in conjunction with gadolinium-based contrast agents posed a serious risk of bodily harm to consumers, Defendants continued to promote and sell their MRI and MRA services, which utilized gadolinium-based contrast agents, to patients with renal insufficiency.

87.     Imaging Facility Defendants knew or should have known that consumers such as Mr. Gerber, who have renal insufficiency, would suffer injury as a result of their failure to exercise ordinary care as described above.

88.     As a direct and proximate result of Imaging Facility Defendants' negligence, Mr. Gerber has suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

**FOURTH CAUSE OF ACTION**
**(Against Imaging Facility Defendants)**
**BREACH OF EXPRESS WARRANTY**

89.     Plaintiffs incorporate by reference and reallege each paragraph set forth above.

90.     The Imaging Facility Defendants expressly warranted that their MRI and MRA services were safe and effective.

91.     The Imaging Facility Defendants' MRI and MRA services did not conform to these express representations because they caused serious injury to consumers with renal insufficiency when administered with a gadolinium-based contrast agent in recommended dosages.

92.     As a direct and proximate result of the Imaging Facility Defendants' breach of warranty, Mr. Gerber has suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

**FIFTH CAUSE OF ACTION**
**(Against Imaging Facility Defendants)**
**BREACH OF IMPLIED WARRANTY**

93.     Plaintiffs incorporate by reference and reallege each paragraph set forth above.

- 13 -

COMPLAINT FOR DAMAGES AND JURY DEMAND

94.     At the time the Imaging Facility Defendants marketed and sold their MRI and MRA services, they impliedly warranted that their MRI and MRA machines, and associated gadolinium-based contrast agents, were of merchantable quality and safe for use.

95.     Mr. Gerber reasonably relied upon the skill and judgment of the Imaging Facility Defendants as to whether their MRI and MRA machines, and associated gadolinium-based contrast agents, were of merchantable quality and safe for their intended use.

96.     Mr. Gerber reasonably relied upon the Imaging Facility Defendants' implied warranty that their MRI and MRA machines, and associated gadolinium-based contrast agents, were of merchantable quality and safe for their intended use.

97.     Contrary to the implied warranties, the Imaging Facility Defendants' MRI and MRA machines, and associated gadolinium-based contrast agents, were not of merchantable quality or safe for their intended uses because Defendants' gadolinium-based contrast agents and their MRI and MRA machines were unreasonably dangerous to customers like Mr. Gerber who suffer from renal insufficiency.

## SIXTH CAUSE OF ACTION
### (Against Manufacturing Defendants)
### FRAUD

98.     Plaintiffs incorporate by reference and reallege each paragraph set forth above.

99.     Manufacturing Defendants knowingly and intentionally made materially false and misleading representations to Mr. Gerber's physicians and to the public that gadolinium-based contrast agents were safe for use and that their labeling, marketing and promotional materials fully described all known risks associated with their product.

100.     Manufacturing Defendants' representations were in fact false.  Gadolinium-based contrast agents are not safe for use and Defendants' labeling, marketing and promotional materials did not fully describe all known risks of the products.

- 14 -

101.   Manufacturing Defendants had actual knowledge based upon studies, published reports and clinical experience that gadolinium-based contrast agents created an unreasonable risk of serious bodily injury and death to consumers, especially patients with renal impairment.

102.   Manufacturing Defendants knowingly and intentionally omitted this information from their labeling, marketing, and promotional materials and instead, labeled, promoted and marketed their products as safe for use in order to increase and sustain sales.

103.   When Manufacturing Defendants made representations that gadolinium-based contrast agents were safe for use, they knowingly and intentionally concealed and withheld from Mr. Gerber, his physicians and the public, the fact that their gadolinium-based contrast agents are not safe for use in consumers with renal insufficiency.

104.   Manufacturing Defendants had a duty to disclose that gadolinium-based contrast agents are not safe for use in patients with renal insufficiency.   Manufacturing Defendants had superior knowledge of these facts that were material to Mr. Gerber and his physicians' decisions to use gadolinium-based contrast agents.

105.   Mr. Gerber and his physicians reasonably and justifiably relied on the Manufacturing Defendants' representations that gadolinium-based contrast agents were safe for human use and that Manufacturing Defendants' labeling, marketing and promotional materials fully described all known risks associated with the products.

106.   Mr. Gerber did not know, and could not have learned of the facts that the Defendants omitted and suppressed.  The facts suppressed and concealed by the Defendants are material.  Had Mr. Gerber and his physicians known that gadolinium-based contrast agents are not safe for use in patients with renal insufficiency, Mr. Gerber would not have been injected with gadolinium-based contrast agents.

107.   As a direct and proximate result of Manufacturing Defendants' misrepresentations and concealment, Mr. Gerber was administered gadolinium-based contrast agents and has suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

- 15 -

108. The foregoing acts, conduct and omissions of Manufacturing Defendants were vile, base, willful, malicious, wanton, oppressive and fraudulent, and were done with a conscious disregard for the health, safety and rights of Mr. Gerber and other users of Manufacturing Defendants' products, and for the primary purpose of increasing Manufacturing Defendants' profits. As such Mr. Gerber is entitled to exemplary damages.

## SEVENTH CAUSE OF ACTION
### (Against Manufacturing Defendants)
## FRAUD: CONCEALMENT, SUPPRESSION OR OMISSION OF MATERIAL FACTS

109. Plaintiffs incorporate by reference and reallege each paragraph set forth above.

110. Manufacturing Defendants omitted, suppressed, or concealed material facts concerning the dangers and risk associated with the use of their gadolinium-based contrast agents, including but not limited to the risks to patients with kidney impairment of developing NSF, and the fact that safer alternatives were available. Further, Manufacturing Defendants purposely downplayed and understated the serious nature of the risks associated with use of their gadolinium-based contrast agents in order to increase and sustain sales.

111. As a direct and proximate result of Manufacturing Defendants' concealment of material facts, Mr. Gerber was administered gadolinium-based contrast agents and has suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

112. The foregoing acts, conduct and omissions of Manufacturing Defendants were vile, base, willful, malicious, wanton, oppressive and fraudulent, and were done with a conscious disregard for the health, safety and rights of Mr. Gerber and other users of Manufacturing Defendants' products, and for the primary purpose of increasing Manufacturing Defendants' profits. As such Mr. Gerber is entitled to exemplary damages.

- 16 -

### EIGHTH CAUSE OF ACTION
#### (Against Manufacturing Defendants)
### NEGLIGENT MISREPRESENTATION

113.    Plaintiffs incorporate by reference and reallege each paragraph set forth above.

114.    Manufacturing Defendants supplied the public and Mr. Gerber's physicians with materially false and incomplete information with respect to the safety of their gadolinium-based contrast agents.

115.    The false information supplied by Manufacturing Defendants was that gadolinium-based contrast agents were safe.

116.    In supplying this false information, Manufacturing Defendants failed to exercise reasonable care.

117.    The false information communicated by Defendants to Mr. Gerber and his physicians was material and Mr. Gerber justifiably relied in good faith on the information to his detriment.

118.    As a direct and proximate result of Defendants' misrepresentations, Mr. Gerber was administered gadolinium-based contrast agents and has suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

### NINTH CAUSE OF ACTION
#### (Against All Defendants)
### CONSUMER LEGAL REMEDIES ACT

119.    Plaintiffs incorporate by reference and reallege each paragraph set forth above.

120.    This Complaint is filed and these proceedings are instituted, pursuant to California Civil Code section 1750, *et seq*, commonly referred to as the Consumers Legal Remedies Act ("CLRA"), to obtain injunctive relief, restitution, any other relief this Court deems proper, and attorneys' fees from Defendants.

121.    Among others, Defendants' conduct is in violation of California Civil Code section 1770(5), 1770(7) and 1770(9). Defendants' acts and business practices constitute unlawful methods of

- 17 -

competition and unfair or deceptive acts within the meaning of California Civil Code section 1750, *et seq*, including but not limited to the following:

    a.  Marketing, promoting or selling Magnevist or Omniscan for use with MRAs by impliedly representing that such products are approved for use with MRAs, when in fact there is no such approval;

    b.  Marketing, promoting or selling Magnevist or Omniscan as safer or superior to other brands of gadolinium-based contrast agents;

    c.  Marketing, promoting or selling Magnevist or Omniscan as inert or with words to that effect; and

    d.  Marketing, promoting or selling Magnevist or Omniscan for use with MRAs by expressly or impliedly representing that they are safe for such use.

122.    Plaintiffs are entitled to injunctive relief, restitution, any other relief this Court deems proper, and attorneys' fees from Defendants as a result of such acts or practices.

123.    The illegal conduct alleged herein is continuing and there is no indication that Defendants will refrain from such activity in the future.

## TENTH CAUSE OF ACTION
### (Against all Defendants)
### LOSS OF CONSORTIUM

124.    Ms. Goldberg incorporates by reference and realleges each paragraph set forth above.

125.    Ms. Goldberg is the wife of Mr. Gerber.

126.    As a direct and proximate result of Defendants conducts, Ms. Goldberg has been deprived of her husband's love, society, companionship and services and has otherwise suffered loss, the extent of which will be more fully adduced at the trial of this matter.

WHEREFORE, Plaintiffs pray for relief as follows:

1.    For an injunction prohibiting Defendants from engaging in the following conduct which violates the CLRA:

    a.  Marketing, promoting or selling Magnevist or Omniscan for use with MRAs;

- 18 -

COMPLAINT FOR DAMAGES AND JURY DEMAND

b.  Marketing, promoting or selling Magnevist or Omniscan in any way which implies that those products are safer or superior to other brands of gadolinium-based contrast agents.

c.  Marketing, promoting or selling Magnevist or Omniscan as inert or with words to that effect;

2.   Compensatory damages in excess of the jurisdictional amount, including, but not limited to pain, suffering, emotional distress, loss of enjoyment of life, loss of consortium, and other non-economic damages in an amount to be determined at trial of this action;

3.   Past and future medical expenses, income, and other economic damages in an amount to be determined at trial of this action;

4.   Punitive damages in an amount to be determined at trial of this action;

5.   Pre- and post-judgment interest;

6.   Attorneys' fees, expenses, and costs; and

7.   Such further relief as this Court deems necessary, just, and proper.


Respectfully submitted this 26th day of October 2007.

LEVIN SIMES KAISER & GORNICK LLP


By: _____
    Lawrence J. Gornick, Esq.

- 19 -

COMPLAINT FOR DAMAGES AND JURY DEMAND

# EXHIBIT "C"

# California Business Portal

**Secretary of State DEBRA BOWEN**

SECRETARY OF STATE | ELECTIONS & VOTER INFO | POLITICAL REFORM | CA BUSINESS PORTAL | ARCHIVES & MUSEUM | OTHER SERVICES

## Corporations

**Business Search Corporations**

- Printer Friendly Page
- New Search
- Search Tips
- Field Definitions
- Status Definitions
- Name Availability
- Corporate Records
- **Business Entities Records Order Form**
  - Certificates
  - Copies
  - Status Reports
- FAQS
- Corporations Main Page
- Site Search

The information displayed here is current as of "DEC 14, 2007" and is updated weekly. It is not a complete or certified record of the Corporation.

| Corporation |
|---|
| BMC DIAGNOSTICS, INC. |
| **Number:** C2067246   **Date Filed:** 1/21/1998   **Status:** converted-out |
| **Jurisdiction:** California |
| **Address** |
| 2000 POWELL STREET STE 1050 |
| EMERYVILLE, CA 94608 |
| **Agent for Service of Process** |
| AVA CHACKERIAN |
| 2000 POWELL STREET STE 1050 |
| EMERYVILLE, CA 94608 |

**Printer Friendly**

**New Search**

- For information about certification of corporate records or for additional corporate information, please refer to **Corporate Records**.
- Blank fields indicate the information is not contained in the computer file.
- If the status of the corporation is "Surrender", the agent for service of process is automatically revoked. Please refer to California Corporations Code **Section 2114** for information relating to service upon corporations that have surrendered.

Copyright ©2001 California Secretary of State. **Privacy Statement**.

.

# EXHIBIT "D"

Westlaw.

Slip Copy

Slip Copy, 2006 WL 2536627 (E.D.Cal.)
**(Cite as: Slip Copy)**

C
Kelly v. Qualitest Pharmaceuticals, Inc.
E.D.Cal.,2006.
Only the Westlaw citation is currently available.
United States District Court,E.D. California.
Candy KELLY, an individual, Plaintiffs,
v.
QUALITEST PHARMACEUTICALS, INC., a
domestic corporation, and Does 1-10, inclusive,
Defendants.
**No. CIV-F-06-116 AWI LJO.**

Aug. 31, 2006.

Laura Kristine Kail, Attorney at Law, Encinitas,
CA, for Plaintiffs.
Carolyn Taylor, Morris Polich & Purdy, San Diego,
CA, for Defendants.

### ORDER ON DEFENDANT'S RULE 12 MOTIONS AND TRANSFERRING CASE TO THE FEDERAL NORTHERN DISTRICT OF ALABAMA, NORTHEASTERN DIVISION

ANTHONY W. ISHII, District Judge.
**\*1** This case stems from the tragic dual suicide of a mother (Leisa Kelly) and son (Ryan Kelly) after they obtained an anti-depressant, Elavil, from an on-line pharmacy. Plaintiff Candy Kelly ("Plaintiff") was Leisa' mother and Ryan's grandmother. In 2005, Plaintiff brought suit in this Court [FN1] against Qualitest Pharmaceuticals ("Defendant"), Dr. Everett Echols, Tom Chapman, EZ RX, RX Medical Services, and Frank and Amanda Hernandez. On August 30, 2005, this Court granted Qualitest Pharmaceutical's motion to dismiss and dismissed Qualitest because of improper venue. *See* Court's Docket of Case Number CV F 05-0118 AWI SMS at Document No. 32. After the 2005 partial dismissal, Plaintiff filed suit against Defendant in the Superior Court of Calaveras County and alleged state law claims for negligence and emotional distress; these claims are practically identical to the claims made in *Kelly 1.* Defendant

removed to this Court and now moves to dismiss due to improper venue, failure to state a claim, and lack of standing, and also moves to strike various portions of the complaint. For the reasons that follow, the Court will grant Defendant' s motion in part and will transfer this case to the Northern District of Alabama.

> FN1. The Court will refer to the prior suit, CV F 05-118 AWI SMS, as *"Kelly 1."*

### FACTS

According to Plaintiff's complaint, Leisa and Ryan Kelly were both residents of California and under the care of a California licensed physician at all relevant times. Leisa and Ryan were being professionally treated for depression and their physician carefully monitored their intake of psychotherapeutic drugs, never allowing them to obtain the drugs in lethal doses.

On January 21 2004, either Leisa in her own name or Ryan using his mother's name (most likely the latter) accessed the RX Medical website and requested 90-150 mg tablets of Elavil (amitriptyline).Elavil is manufactured by Defendant Qualitest, an Alabama corporation doing business in Alabama. In the questionnaire used to request the Elavil, it was asked, "What is the medical condition that you are requesting this medication for?"The answer given by either Leisa or Ryan was "severe depression." No physician employed by RX Medical examined Leisa or Ryan prior to authorizing the prescription and no prior physician-patient relationship existed.

On January 31, 2004, Leisa and Ryan used the Elavil to commit suicide in Calaveras County, California. When the California authorities discovered the bodies of Leisa and Ryan, they also found an empty bottle of Elavil which indicated that the bottle contained 90-150 mg tablets of Elavil and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 3 of 12

Slip Copy                                                          Page 2

Slip Copy, 2006 WL 2536627 (E.D.Cal.)
**(Cite as: Slip Copy)**

that the prescription had been authorized by RX Medical. The autopsy report indicated that both Leisa and Ryan had died from "amitriptyline toxicity inducing suicide." Leisa's physician has indicated that, in her condition, Leisa should never have been prescribed amitriptyline by anyone.

Physicians employed by RX Medical review on-line questionnaires submitted by individuals to RX Medical. Individuals such as Leisa and Ryan access a website operated and maintained by RX Medical and complete an on-line questionnaire in order to obtain specific prescription drugs. Employees of RX Medical reviewed the questionnaires and, based upon their review, authorize a prescription for the individual for the drug sought. The prescription is then transmitted electronically to the on-line pharmacy associated with RX Medical, in this case EZ RX, which then fills the prescription and ships the prescription drugs to the individual who requested the drugs in whatever quantity requested in the on-line questionnaire.

**\*2** On-line pharmacies, such as EZ RX, are able to purchase virtually unlimited supplies of controlled substances from manufacturers such as Defendant, which employ specific distributors to market the manufacturer's products. The distributors, with the authority of the manufacturer, allow drugs which are governmentally regulated because of the dangers the drugs present if improperly used, to enter the stream of commerce unrestrained. Defendant's products were sold to EZ RX in unlimited amounts without requiring EZ RX to demonstrate that its distribution of the substances was according to law.

Plaintiff alleges that Defendant was negligent in the sales, distribution, and control of the dangerous and controlled substance Elavil. Specifically, Plaintiff alleges that Defendant approved the sale of Elavil to on-line "rogue" pharmacies without reasonable investigation into the business practices of the pharmacy in that Defendant's distributors did not require proof of proper licensing of the business, its pharmacists or physicians, or proof of insurance coverage for negligence. Based on Plaintiff's belief, Plaintiff alleges that Qualitest knew that controlled substances were being sold by the "rogue" on-line

pharmacies for "other than legitimate medical purposes;" this violated of California Health and Safety Code § 11153.5.

### QUALITEST'S MOTION[FN2]

> FN2. Defendant has filed a motion for judicial notice and requests that this Court take judicial notice of Plaintiff's complaint from her case, CV F 05-118 AWI SMS. There is no objection, and the Court may take judicial notice of its own records. *See* 201; *United States v. Wilson,* 631 F.2d 118, 119 (9th Cir.1980). Defendant's motion is granted.

### 1. Standing of Candy Kelly

*Defendant's Argument*

Defendant argues that California Code of Civil Procedure § 377.60 in tandem with Probate Code § 6402 establish who has standing under the wrongful death statute. Defendant argues that these statutes establish three categories of persons with standing: (1) surviving spouse or partner and children (or if none, the children's issue); or (2) if no surviving children, then persons entitled to the decedent's property through intestate succession {successively: (a) issue of decedent, or if none; (b) decedent's parents, or if none; (c) issue of decedent's parents, or if none; (d) to grandparents}; or (3) a putative spouse, children of the putative spouse, stepchildren, or dependent parents.

Defendant argues that Plaintiff has merely alleged that she is the mother of Leisa and the grandmother of Ryan. The complaint does not mention whether Leisa has surviving issue and does not mention whether Ryan has or does not have surviving issue, siblings, a father, or a spouse. Because Plaintiff has not alleged that those "higher up" than her on the intestate succession ladder do not exist, she has failed to show to properly allege standing.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                          Page 3

Slip Copy, 2006 WL 2536627 (E.D.Cal.)
**(Cite as: Slip Copy)**

*Plaintiffs' Opposition*

Plaintiff argues that she has alleged that she is the heir of Leisa and Ryan and has submitted a declaration in support of her assertion. The declaration states that Plaintiff is the mother of Leisa and grandmother of Ryan, that Leisa and Ryan had no spouses or surviving children, and that the identity and whereabouts of Ryan's father is unknown. The motion should be denied or amendment should be permitted.

*Defendant's Reply*

**\*3** Defendant argues that the Court should not consider Plaintiff's declaration and that review is limited to the complaint and judicially noticeable facts. However, if the declaration is considered, the declaration establishes that Plaintiff does not have standing to bring a wrongful death suit for the death of Ryan. The declaration merely states that Ryan's father's location is unknown, it does not show that Ryan's father is deceased.

*Standing Under The California Wrongful Death Act*

In California, the cause of action for wrongful death is "a pure creature of the statute" and " 'exists only so far and in favor of such person as the legislative power may declare.' " *Justus v. Atchison,* 19 Cal.3d 564, 575 (1977); *Rosales v. Battle,* 113 Cal.App.4th 1178, 1182 (2003); *Chavez v. Carpenter,* 91 Cal.App.4th 1433, 1438-1440 (2001); *Fraizer v. Velkura,* 91 Cal.App.4th 942, 945 (2001). Standing to sue is governed by California Code of Civil Procedure § 377.60, and the category of persons eligible to bring wrongful death actions is strictly construed. Cal.Code Civ. Pro. § 377.60; *Steed v. Imperial Airlines,* 12 Cal.3d 115, 119-20 (1974); *Bouley v. Long Beach Memorial Medical Center,* 127 Cal.App.4th 601, 606 (2005); *Chavez,* 91 Cal.App.4th at 1438;*Fraizer,* 91 Cal.App.4th at 945; *Marks v. Lyerla,* 1 Cal.App. 4th 556, 559-60 (1991) . The legislative determination as to how far to extend a statutorily created right of action "is conclusive, unless it appears beyond rational doubt that an arbitrary discrimination between persons or classes similarly situated has been made without any reasonable cause therefor." *Justus,* 19 Cal.3d at 581;*Holguin v. Flores,* 122 Cal.App.4th 428, 437-38 (2004).

Section 377.60 establishes the wrongful death cause of action and delineates who may avail themselves of the action. In relevant part, it reads:
A cause of action for the death of a person caused by the wrongful act or neglect of another may be asserted by any of the following persons or by the decedent's personal representative on their behalf:
(a) The decedent's surviving spouse, domestic partner, children, and issue of deceased children, or, if there is no surviving issue of the decedent, the persons, including the surviving spouse or domestic partner, who would be entitled to the property of the decedent by intestate succession.
(b) Whether or not qualified under subdivision (a), if they were dependent on the decedent, the putative spouse, children of the putative spouse, stepchildren, or parents. As used in this subdivision, "putative spouse" means the surviving spouse of a void or voidable marriage who is found by the court to have believed in good faith that the marriage to the decedent was valid.

Cal.Code Civ. Pro. § 377.60.

Probate Code § 6402 sets the order of intestate succession under § 377.60. *See Chavez,* 91 Cal.App.4th at 1440;*Frazier,* 91 Cal.App.4th at 946 . When there is no surviving spouse or domestic partner, § 6402, in relevant part, provides the following succession:
**\*4** (a) To the issue of the decedent, the issue taking equally if they are all of the same degree of kinship to the decedent, but if of unequal degree those of more remote degree take in the manner provided in Section 240.
(b) If there is no surviving issue, to the decedent's parent or parents equally.
(c) If there is no surviving issue or parent, to the issue of the parents or either of them, the issue taking equally if they are all of the same degree of kinship to the decedent, but if of unequal degree those of more remote degree take in the manner provided in Section 240.
(d) If there is no surviving issue, parent or issue of a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                          Page 4

**Slip Copy, 2006 WL 2536627 (E.D.Cal.)**
**(Cite as: Slip Copy)**

parent, but the decedent is survived by one or more grandparents or issue of grandparents, to the grandparent or grandparents equally, or to the issue of those grandparents if there is no surviving grandparent, the issue taking equally if they are all of the same degree of kinship to the decedent, but if of unequal degree those of more remote degree take in the manner provided in Section 240.

Cal. Prob.Code § 6402(a)-(d). A plaintiff who brings a wrongful death suit as an heir must establish the absence of issue by the decedent and the entitlement or propriety of the heir to seek recovery under § 377.60, i. e. that the heir actually has standing under § 377.60. *See Nelson v. County of Los Angeles,* 113 Cal.App.4th 783, 789 (2004); *Coats v. K-Mart Corp.,* 215 Cal.App.3d 961, 969-70 (1989); *Jolley v. Clemens,* 28 Cal.App.2d 55, 74-75 (1938).

### a. Standing For The Alleged Wrongful Death Of Leisa Kelly

The Supreme Court has addressed the determination of standing through a motion to dismiss. The Supreme Court has explained:
For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party. *E.g., Jenkins v. McKeithen,* 395 U.S. 411, 421-422 (1969).*At the same time, it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact* deemed supportive of plaintiff's standing. If, after this opportunity, the plaintiff's standing does not adequately appear from all materials of record, the complaint must be dismissed.

*Warth v. Seldin,* 422 U.S. 490, 501-02 (U.S.1975) (emphasis added); *see also Communities for a Great Northwest v. Clinton,* 112 F.Supp.2d 29, 32-33 (D.D.C.2000); *National Coalition Gov't of Burma v. Unocal, Inc.,* 176 F.R.D. 329, 337-38 (C.D.Cal.1997); *Reese v. United States,* 930 F.Supp. 1537, 1539-40 (S.D.Ga.1995); *Alabama*

*Freethought Ass'n v. Moore,* 893 F.Supp. 1522, 1531 n. 19 (M.D.Ala.1995).

A parent is not the "surviving spouse, domestic partner, children, [or] issue of deceased children." *See*Cal.Code Civ. Pro. § 377.60(a). For purposes of § 377.60(a), Plaintiff would have to establish the absence of surviving issue and standing through the intestate succession statute. *See id.*For purposes of intestate succession, parents may recover as heirs if there is no issue of the decedent. *See*Cal. Prob.Code § 6402(b); *Chavez,* 91 Cal.App.4th at 1438. If Leisa Kelly had no other issue, then Candy Kelly has standing to bring a wrongful death cause of action. [FN3]*See*Cal.Code Civ. Pro. § 377.60(a); Cal. Prob.Code § 6402(b); *Chavez,* 91 Cal.App.4th at 1438.

> FN3. Irrespective of § 377.60(a) and the law of intestate succession, if Plaintiff was dependent upon Leisa, then Plaintiff would have standing under § 377.60(b).*See* Cal.Code Civ. Pro. § 377.60(b).

**\*5** In addition to alleging that she is Leisa's mother, Plaintiff expressly alleges that she is the heir of Leisa. *See* Plaintiff's Complaint at ¶ 23. Besides a general objection, Defendant's response to the declaration focuses exclusively on Ryan; there is no response to Plaintiff's declaration that Leisa had no surviving spouse or issue. The Court has the discretion to allow Plaintiff's declaration in order to supplement the allegation that Plaintiff is Leisa's heir. *See Warth,* 422 U.S. at 501-02;*Clinton,* 112 F .Supp.2d at 32-34;*Unocal, Inc.,* 176 F.R.D. at 337-38;*Reese,* 930 F.Supp. at 1539-40;*Moore,* 893 F.Supp. at 1531 n. 9. The allegations in the complaint, the supplemental declaration filed by Plaintiff, and Defendant's response thereto show that there is really no dispute as to the standing of Plaintiff regarding Leisa. The general allegation that Plaintiff is the heir of Leisa, considered with the more specific information provided in the supplemental declaration, is more than sufficient to establish Plaintiff's standing under § 377.60 for purposes of this motion. Defendant's motion is denied.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2006 WL 2536627 (E.D.Cal.)
**(Cite as: Slip Copy)**

### b. Standing For The Alleged Wrongful Death Of Ryan Kelly

Grandparents are not the "surviving spouse, domestic partner, children, [or] issue of deceased children."*See*Cal.Code Civ. Pro. § 377.60(a). For purposes of § 377.60(a), Plaintiff would have to establish the absence of surviving issue and standing through the intestate succession statute. *See id.*For purposes of intestate succession, grandparents may recover as heirs if there is no issue of the decedent, no surviving parents of the decedent, and no surviving issue of the decedent's parents. *See*Cal. Prob.Code § 6402(d).

The complaint expressly alleges that Plaintiff is the heir of Ryan, but has no specific allegations concerning the existence of any spouse, issue, surviving parents, or issue of parents Ryan Kelly. Plaintiff's supplemental declaration states that the identity and whereabouts of Ryan's father is unknown. The parties have not adequately briefed the issue of the proper course when the identity of a parent is unknown. However, for a parent to recover through the intestate succession provision of California Code of Civil Procedure § 377.60 for the wrongful death of a child who was born out of wedlock, the parent must have (1) acknowledged the child and (2) contributed to the support or the care of the child. *See Lozano v. Scalier,* 51 Cal.App.4th 843, 846-49 (1996) (interpreting California Code of Civil Procedure § 377.60 and California Probate Code § 6452). If the identity of Ryan's father is unknown, it is unlikely that Ryan's father acknowledged Ryan or contributed to Ryan's support and care. *Cf. Reese,* 930 F.Supp. at 1540 (holding that plaintiff had standing under Georgia law for the death of a child where, *inter alia,* the identity of the father was unknown). Given these considerations, the Court will not dismiss Plaintiff's claim for the death of Ryan. However, the burden of establishing standing remains on Plaintiff throughout this case, *see Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992), and further briefing and factual development may compel a different result at a later stage. For now, Defendant's motion to dismiss is denied.

### 2. Improper Venue

#### Defendant's Arument

**\*6** Defendant argues that this Court in *Kelly 1* determined that venue was not appropriate in the Eastern District of California. However, Plaintiff refiled in Calaveras County, which is in the Eastern District. As was the case before, the only events alleged to have occurred in the Eastern District of California are: (1) accessing a computer website; (2) delivery of the drugs to the decedents; and (3) the suicides. However, the claim being made against Defendant is negligence, but each of the Defendant's actions occurred outside the Eastern District of California. From the complaint in *Kelly 1,* Echols and Chapman, citizens of North Carolina, reviewed and approved the request for Elavil on behalf of a Nevada corporation doing business in Florida (RX Medical). RX Medical approved the order and forwarded a prescription to EZ RX, a business located in New Jersey. EZ RX then shipped the Elavil to Leisa and Ryan. Qualitest does its business in Alabama and is alleged to have failed to supervise the New Jersey, Florida, and North Carolina activities from its location in Alabama. The events and omissions giving rise to the claim occurred outside of this district and venue is improper.

#### Plaintiffs' Opposition

Citing 29 U.S.C. § 185(a), (c), Plaintiff argues that venue is proper in any district in which "a substantial part of the events or omissions giving rise to the claim occurred."Here, the decedents both died within the district, the decedents accessed a website in this district, the decedents "accessed a website belonging to defendants," the decedents filled out and e-mailed the questionnaire from this district, the Elavil was mailed to this district, all subsequent investigations of the suicide occurred in this district, and a majority of the witnesses reside in California.

Further, Plaintiff argues that the California long arm statute authorizes jurisdiction to the full limits of the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2006 WL 2536627 (E.D.Cal.)
**(Cite as: Slip Copy)**

Constitution. Plaintiff argues that Qualitest markets its product in virtually every drug store in California and that it directly conducted business with RX Medical, which is headquartered in California. Further, Defendant sold its products to an internet pharmacy, it is well known that internet pharmacies sell their products interstate. Plaintiff argues that Qualitest purposefully avails itself of the privilege of conducting business in California and therefore, reasonably subjects itself to the jurisdiction of California. Plaintiff argues that Qualitest does extensive business in California and has purposefully availed itself of the economic benefits of California and jurisdiction over Qualitest is appropriate.

*Reply*

Defendant argues that Plaintiff is misstating facts. There are no allegations in the complaint, nor has Plaintiff provided any evidence, that Defendant markets its products in "virtually every drug store in California."Further, Defendant did not do business directly with RX Medical, rather, as alleged in the complaint, Defendant sold Elavil to EZ RX. Further, Plaintiff has pled no facts that indicate that it is subject to jurisdiction in California based on extensive business dealings. Plaintiff has not shown that venue is proper in this district.

*Rule of Civil Procedure 12(b)(3)*

**\*7** Federal Rule of Civil Procedure 12(b)(3) allows a defendant to move for dismissal on the basis of improper venue. *See*Fed.R.Civ.P. 12(b)(3); *Abrams Shell v. Shell Oil Co.,* 165 F.Supp.2d 1096, 1102 (C.D.Cal.2001). The plaintiff bears the burden of showing that venue is proper in the chosen district.[FN4]*Koresko v. Realnetworks, Inc.,* 291 F.Supp.2d 1157, 1160 (E.D.Cal.2003); *McCaskey v. Continental Airlines, Inc.,* 133 F.Supp.2d 514, 523 (S.D.Tex.2001); *American Homecare Fed'n v. Paragon Sci. Corp.,* 27 F.Supp.2d 109, 112 (D.Conn.1998); *Delta Air Lines, Inc. v. Western Conference of Teamsters,* 722 F.Supp. 725, 727 (N.D.Ga.1989); *see also Piedmont Label Co. v. Sun Garden Packing Co.,* 598 F.2d 491, 496 (9th

Cir.1979) (holding that plaintiff bears the burden to show proper venue in context of summary judgment). Unlike a motion to dismiss for failure to state a claim under Rule 12(b)(6), the pleadings need not be accepted as true and the court may consider supplemental written materials and consider facts outside of the pleadings in deciding the Rule 12(b)(3) motion. *Murphy v. Schneider Nat'l, Inc.,* 362 F.3d 1133, 1337 (9th Cir.2004); *Argueta v. Banco Mexicano, S.A.,* 87 F.3d 320, 324 (9th Cir.1996) (holding that "the pleadings are not accepted as true" and that "facts outside of the pleadings" may be considered in a 12(b)(3) motion); *Walker v. Carnival Cruise Lines,* 107 F.Supp.2d 1135, 1137 n. 2 (N.D.Cal.2000) (noting that in resolving previous 12(b)(3) motion, "the Court did not assume the truth of the pleadings and considered facts not contained therein."). Accordingly, "venue issues [ordinarily] are resolved on affidavits and declarations."Schwarzer, Tashima & Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro. Before Trial ¶ 4:254 at 4-70 (The Rutter Group 2004); *e.g., Murphy,* 362 F.3d at 1140-43 (deciding venue issue through allegations made in affidavits/declarations). If genuine contested factual issues are presented, the court is obligated to draw all reasonable inferences and resolve the factual conflicts in favor of the non-moving party. *Murphy,* 362 F.3d at 1138-1140 (explaining in part that although "it was error not accept Murphy's version of the facts, and all reasonable inferences thereon, we will examine whether Murphy presented sufficient evidence to survive Schneider's Rule 12(b)(3) motion under the standard we have announced"). Alternatively, the district court may hold a pre-trial evidentiary hearing on the disputed facts or may deny the motion with leave to re-file if further development of the record would eliminate any genuine factual issues. *Id.* at 1139.

> FN4. Some courts hold that the burden rests with the defense. *E.g., Myers v. American Dental Ass'n,* 695 F.2d 812, 816 (3d Cir.1982).

Where venue is improper, the district court has the discretion to dismiss the case under Rule 12(b)(3) or transfer the case in the interests of justice to an

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                      Page 7

**Slip Copy, 2006 WL 2536627 (E.D.Cal.)**
**(Cite as: Slip Copy)**

appropriate jurisdiction under 28 U.S.C. § 1406(a). *See Minnette v. Time Warner,* 997 F.2d 1023, 1026 (2d Cir.1993); *King v. Russell,* 963 F.2d 1301, 1304 (9th Cir.1992); *Kawamoto v. CB Richard Ellis, Inc.,* 225 F.Supp.2d 1209, 1212 (D.Haw.2002); *Citizens For A Better Environment v. Union Oil Co.,* 861 F.Supp. 889, 897 (N.D.Cal.1994). In determining whether to transfer or dismiss a case, the court may consider: the applicable statute of limitations, the relative injustice imposed on the parties, whether the suit was filed in bad faith or for harassment, whether the plaintiff has requested or shown an interest in a transfer, and whether the chosen venue was clearly or obviously improper. *See Nichols v. G.D. Searle & Co.,* 991 F.2d 1195, 1201-02 (4th Cir.1993); *King,* 963 F.2d at 1304-05;*Johnson v. Payless Drug Stores Northwest, Inc.,* 950 F.2d 586, 588 (9th Cir.1992); *Wood v. Santa Barbara Chamber of Commerce,* 705 F.2d 1515, 1523 (9th Cir.1983)."A determination of improper venue does not go to the merits of the case and therefore must be without prejudice."*See In re Hall, Bayoutree Assocs., Ltd.,* 939 F.2d 802, 804 (9th Cir.1991); Schwarzer, Tashima, Cal. Prac. Guide: Fed. Civ. Pro. Before Trial ¶ 9:145.1 at 9-40.

*28 U.S.C. § 1391-Venue In Diversity Cases*

**\*8** In relevant part, 28 U.S.C. § 1391 reads:
(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.
...........
(c) For purposes of venue under this chapter [28 USCS §§ 1391 et seq.], a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. In

a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

28 U.S.C. § 1391(a), (c).

Under this statute, "it is possible for venue to be proper in more than one judicial district."*Mitrano v. Hawes,* 377 F.3d 402, 405 (4th Cir.2004). Under 28 U.S.C. § 1391(a)(2), it is not necessary that a majority of the events occurred in the district where suit is filed, that the events in that district predominate, or that the chosen district is the "best venue," rather plaintiffs must show that a " substantial part" of the events giving rise to their claims occurred in the chosen district. *See Pecoraro v. Sky Ranch for Boys, Inc.,* 340 F.3d 558, 563 (8th Cir.2003); *First of Mich. Corp. v. Bramlet,* 141 F.3d 260, 264 (6th Cir.1998); *Bates v. C & S Adjusters, Inc.,* 980 F.2d 865, 867 (2d Cir.1992); *Rodriguez v. California Highway Patrol,* 89 F.Supp.2d 1131, 1136 (N.D.Cal.2000). In other words, "significant events or omissions material to the plaintiff's claim must have occurred in the district in question."*Gulf Ins. Co. v. Glasbrenner,* 417 F.3d 353, 357 (2d Cir.2005) (citing *Jenkins Brick Co. v. Brick,* 321 F.3d 1366, 1372 (11th Cir.2003) and *Cottman Transmission,* 36 F.3d at 294)); *see also Engel v. CBS, Inc.,* 886 F.Supp. 728, 732 (C.D.Cal.1995). In determining whether events or omissions are sufficiently substantial to support venue under § 1391(a)(2), the court should review the entire sequence of events underlying the claim. *Mitrano,* 377 F.3d at 405;*Bramlet,* 141 F.3d at 264;*Cottman Transmission,* 36 F.3d at 294. However, because venue is a privilege of the defendant,[FN5] and venue must be appropriate as to each defendant, [FN6] the court should generally focus on activities of the defendant and not the activities of plaintiff. *Jenkins Brick,* 321 F.3d at 1371-72;*Woodke v. Dahm,* 70 F.3d 983, 985 (8th Cir.1995); *Gaines, Enhof, Metzler & Kriner v.*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2006 WL 2536627 (E.D.Cal.)
**(Cite as: Slip Copy)**

*Nisberg,* 843 F.Supp. 851, 854 (W.D.N.Y.1994); 17 Moore's Federal Practice, § 110.04[1] (3d ed.). Events or omissions that might only have some tangential connection with, or no real relationship to, the claims in litigation are not sufficiently " substantial" to support venue. *See Gulf Ins.,* 417 F.3d at 357;*Cottman Transmission,* 36 F.3d at 293-94;*see also Engel,* 886 F.Supp. at 732. In a tort action, the locus of the injury or harm suffered by plaintiffs is a relevant factor in determining venue under § 1391(a)(2).*Myers v. Bennett Law Offices,* 238 F.3d 1068, 1075-76 (9th Cir.2001); *Miracle v. N.Y.P. Holdings,* Inc., 87 F.Supp.2d 1060, 1072-73 (D.Haw.2000).

FN5.*See Cottman Transmission,* 36 F.3d at 296.

FN6.*See Bearse v. Main St. Inv.,* 170 F.Supp.2d 107, 116 (D.Mass .2001); *McCaskey,* 133 F.Supp.2d at 523;*Hickey v. St. Martins Press,* 978 F.Supp. 230, 240-41 (D.Md.1997).

*Discussion*

**\*9** The complaint in this case identifies Defendant as an Alabama corporation. *See* Plaintiff's Complaint at ¶ 2. The complaint does not mention Everret Echols or Tom Chapman nor does it indicate where EZ RX or RX Medical conduct business. However, this Court has granted Defendant's motion to take judicial notice of the original complaint in *Kelly 1.* In the *Kelly 1* complaint, Echols and Chapman are alleged to reside in North Carolina, *see* Request For Judicial Notice Exhibit A at ¶¶ 3-4, RX Medical is alleged to be a Nevada Corporation doing business in Florida,[FN7]*see id.* at ¶ 6, and EZ RX is alleged to be a business entity actively doing business in New Jersey, with its principal place of business in Union City, New Jersey. *See id.* at ¶ 5.

FN7. In opposition, Plaintiff states that RX Medical is headquartered in California. However, there are no allegations regarding the headquarters of RX Medical

in the complaint, and, as discussed above, the *Kelly 1* complaint does not suggest a California headquarters.

Further, the complaint in this case does not identify which statute provides for venue. The opposition lists 29 U.S.C. § 185(a), (c). This provision, however, sets venue for "suits by and against labor organizations;" it is inapplicable to this case. Instead, the Court assumes that Plaintiff is relying on 28 U.S.C. § 1391(a), (c), which sets venue for diversity cases, such as this.

Plaintiff has filed no additional affidavits, declarations, or evidence of any kind in specific opposition to Defendant's Rule 12(b)(3) motion. The claim made against Defendant is that it was negligent in the sales and distribution of Elavil in that it approved sales of Elavil to "rogue" on-line pharmacies without conducting a reasonable investigation into the practices, licensure, and insurance status of the pharmacies. Plaintiff's Complaint at ¶¶ 19-20. Thus, the claim against Defendant is negligent sale of Elavil to an improperly licensed pharmacy, EZ RX.

Plaintiff relied on 28 U.S.C. § 1391(a)(2) for venue in *Kelly 1,* and the arguments made are very similar to the arguments made in this case. Given the lack of new evidence and the similarity of allegations in this case and in *Kelly 1,* the Court believes that the same 28 U.S.C. § 1391(a)(2) venue analysis is applicable to both complaints. In resolving whether a "substantial portion of the events" giving rise to Plaintiff's negligence claim occurred in the Eastern District of California, this Court explained in *Kelly 1:*

... EZ RX is alleged to be a New Jersey on-line pharmacy. The sale of Elavil, thus would have been from an Alabama corporation (Qualitest) to a New Jersey corporation. Even if EZ RX is not properly licensed in New Jersey, the improper or negligent sale of Elavil by Qualitest would appear to involve conduct occurring in either Alabama or New Jersey. By way of example only, given the apparent agreement of the parties concerning the location of Qualitest and EZ RX, presumably sales negotiations and research into the licensure/qualifications of EZ RX occurred in either Alabama or New Jersey or

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2006 WL 2536627 (E.D.Cal.)
**(Cite as: Slip Copy)**

both. Plaintiffs have not presented any evidence of conduct by, or relating to, Qualitest that is material to their claims of negligence against Qualitest.

*10 The only identified conduct in Plaintiffs's opposition that clearly occurred in the Eastern District of California is accessing a website that was operated by a co-defendant [i.e. not Qualitest], the shipping of the Elavil to the decedents by a co-defendant [i.e. not Qualitest], and the suicides of the decedents. Assuming *arguendo* that these assertions are true, accessing a website/ordering Elavil on-line from co-defendants [i.e. not Qualitest] in this District is an act by the decedents and arguably co-defendants, but it does not relate to Qualitest. Qualitest is not a party to the transaction, and accessing a website is not material to the claim that Qualitest negligently sold Elavil to an unlicensed pharmacy. Similarly, shipping Elavil into the Eastern District of California is conduct by either EZ RX (a New Jersey on-line pharmacy) or RX Medical (a Nevada company doing business in Florida). The shipping or delivery of Elavil to decedents is not conduct by Qualitest and does not involve the negligent sale of Elavil by Qualitest to an unlicensed pharmacy. Finally, it appears that the injury/suicides did occur in this district. However, again assuming *arguendo* that Plaintiffs' allegations are true, the deaths of Leisa and Ryan Kelly appear to have been self-induced, and Leisa and Ryan appear to have obtained the Elavil through RX Medical and EZ RX after Leisa and Ryan's order was reviewed, and a prescription was issued, by Chapman and/or Echols (residents of North Carolina). The prescription itself was filled by EZ RX. It does not appear that Qualitest was a party to the on-line transaction, rather, the only apparent role that Qualitest played was manufacturing Elavil. Although the locus of a tort injury is relevant in determining "substantiality," "a substantial portion of the events or omissions giving rise to the claim" must have occurred in the Plaintiffs's chosen district. *See*28 U.S.C. § 1391(a)(2). The allegations do not indicate that a "substantial part" of the events or omissions giving rise to Plaintiffs's claim against Qualitest occurred in the Eastern District of California.

Defendant's Motion for Judicial Notice Exhibit B at p. 20-22.The Court adopts this analysis for this case.

Plaintiff also seems to rely on 28 U.S.C. § 1391(a)(1), (3) in her opposition and argues that Defendant conducts extensive economic activity in California which subjects it to California jurisdiction. However, as Defendant correctly points out, there are no allegations in the complaint that would support personal jurisdiction over Defendant (an Alabama corporation who allegedly sold Elavil to EZ RX, a New Jersey corporation) in the Eastern District of California based on extensive economic conduct. Plaintiff presents no evidence that supports venue through 28 U.S.C. § 1391(a)(1) or (a)(3) but instead relies on assertions made in her opposition. The complaints show that the chain of events from Defendant in Alabama to the decedents in California is very attenuated, and there is no showing that there is no district where this suit may otherwise be brought. *See*28 U.S.C. § 1391(a), (c).

*11 The burden was on Plaintiff to show that venue was proper in this District. *See Koresko,* 291 F.Supp.2d at 1160;*McCaskey,* 133 F.Supp.2d at 523;*American Homecare Fed'n,* 27 F.Supp.2d at 112. Plaintiff has submitted no evidence in support of her assertion that venue is appropriate in this Court, and there are no allegations or evidence that supports her argument that venue in this District is proper through 28 U.S.C. § 1391(a). Instead, the allegations indicate attenuated conduct by Defendant that occurred in Alabama that, at best, was directed towards entities in New Jersey. Plaintiff has failed to meet her burden of showing that venue is proper in the Eastern District of California.

Since Plaintiff has failed to meet her burden, the Court has the discretion to dismiss this suit or transfer it to a venue that is appropriate under 28 U.S.C. § 1406. *See Minnette,* 997 F.2d at 1026; *King,* 963 F.2d at 1304;*Kawamoto,* 225 F.Supp.2d at 1212;*Union Oil Co.,* 861 F.Supp. at 897. From the complaint, Leisa and Ryan ordered and received Elavil, and later committed suicide, all in late January 2004. The statute of limitations for California's wrongful death statute is two years. Cal.Code Civ. Pro. § 335.1. Since this is August 2006, it would appear that the statute of limitations has run. Also, the complaint alleges that Defendant is an Alabama corporation whose principal place of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                Page 10

Slip Copy, 2006 WL 2536627 (E.D.Cal.)
**(Cite as: Slip Copy)**

business is Huntsville, Alabama. Defendant does not dispute that it is an Alabama corporation headquartered in Huntsville, and, as part of its motion to dismiss for failure to state a claim, relies on an Alabama statute regarding distribution of prescription drugs. *See* Defendant's Motion to Dismiss at 9. Further, the complaint indicates that Defendant's conduct (improper sale and investigation) took place in Alabama and, in moving to dismiss Plaintiff's claim for emotional distress, Defendant states, "Qualitest's conduct occurred in Alabama." *Id.* at 13.Plaintiff has not argued for a transfer of the case to another court, but instead has simply argued that venue is appropriate in this district. Although Plaintiff has not requested a transfer, it is apparent that Plaintiff wishes to pursue her claims against Defendant since she refiled this case in this District after this Court previously dismissed it. Considering the statute of limitations problem, that Plaintiff filed this second suit against Defendant after being dismissed, that Defendant is an Alabama corporation,[FN8] and that the complaint and moving papers indicate that Defendant's conduct took place in Alabama, the Court will transfer this case to the Northern District of Alabama, Northeastern Division. [FN9]

> FN8. The website for the Alabama Secretary of State indicates that Qualitest Pharmaceuticals, Inc. is an active corporation that incorporated in Madison County Alabama in June 1986. *See* http://arc-sos.state.al.us/C GI/SOSCRP10.mbr/output?PGM=1 & P01=111203M. This Court may take judicial notice of public records, including records of state entities. *See* Fed.R.Evid. 201; *Wilbur v. Locke,* 423 F.3d 1101, 1112 (9th Cir.2006).

> FN9. The website for the Northern District of Alabama indicates that the Northeastern Division embraces Huntsville. *See* http:// www.alnd.uscourts.gov/Local /Alabama_Northern_District_ Divisions_and_ Counties.pdf.

### *CONCLUSION*

Defendant Qualitest has brought motions to dismiss for failure to state a claim, lack of standing, and improper venue.

With respect to standing, the Court has the discretion to consider supplemental affidavits that provide more particularity to the allegations. Here, the complaint alleges that Plaintiff is the heir of both Leisa and Ryan. Plaintiff's supplemental declaration indicates that Leisa had no surviving spouse or issue, that Ryan had no surviving spouse or issue, and that the whereabouts and identity of Ryan's father is unknown. Given the allegation in the complaint and the further particular allegations in Plaintiff's declaration, Plaintiff has standing to bring suit for Leisa's death. With respect to Ryan, although the issue is inadequately briefed, Plaintiff's declaration and case law *(Lozano)* suggests that Ryan's unidentified father could not inherit through intestate succession, and thus, could not sue for the wrongful death of Ryan. At this stage, the Court will deny Defendant's motion to dismiss for want of standing.

**\*12** With respect to Defendant's 12(b)(3) motion, Plaintiff bears the burden of establishing that venue is proper. Here, Plaintiff submitted no declarations, affidavits, or other evidence, but instead relied on argument. Plaintiff has failed to meet her burden and has not shown that venue in the Eastern District of California is appropriate. Although Plaintiff has not requested a transfer, Plaintiff would have a statute of limitations problem if she refiled in another court, Plaintiff clearly wishes to pursue claims against Defendant, and Defendant's conduct is alleged to have occurred in Alabama, where it is incorporated. Accordingly, the Court will transfer this case under 28 U.S.C. § 1406(a) to the Northern District of Alabama, Northeastern Division.

Given the resolution of Defendant's 12(b)(3) motion, the Court will not address Defendant's 12(b)(6) and 12(f) arguments.

Accordingly, IT IS HEREBY ORDER that:
1. Defendant's motion to dismiss for lack of standing is DENIED;
2. Defendant's 12(b)(3) motion to dismiss for improper venue is GRANTED and this case is

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 11

Slip Copy, 2006 WL 2536627 (E.D.Cal.)
**(Cite as: Slip Copy)**


TRANSFERRED to the Federal Northern District
of Alabama, Northeastern Division; and
3. Defendant's 12(b)(6) and 12(f) motions are
DENIED without prejudice.

IT IS SO ORDERED.

E.D.Cal.,2006.
Kelly v. Qualitest Pharmaceuticals, Inc.
Slip Copy, 2006 WL 2536627 (E.D.Cal.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.